MONA Z. HANNA (SBN 131439)
Email: mhanna@mrllp.com
TAYLOR C. FOSS (SBN 253486)
Email: tfoss@mrllp.com
JENNIFER A. MAURI (SBN 276522)
Email: jmauri@mrllp.com
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Avenue, Suite 1000
Irvine, CA 92614
Telephone:(714) 557-7990
Facsimile: (714) 557-7991

Attorneys for Plaintiff
STRATEGIC PARTNERS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| STRATEGIC PARTNERS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>VESTAGEN PROTECTIVE TECHNOLOGIES, INC.,<br><br>Defendant. | Case No.:<br><br>Judge:<br><br>**COMPLAINT FOR:**<br><br>1. **FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a);**<br><br>2. **UNFAIR BUSINESS PRACTICES IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200;**<br><br>3. **UNTRUE AND MISLEADING ADVERTISING IN VIOLATION OF CAL. BUS. & PROF. CODE § 17500.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff STRATEGIC PARTNERS, INC. ("SPI" or "Plaintiff") hereby alleges, by the undersigned attorneys, upon personal information as to itself, and upon information and belief as to all other allegations, as follows:

## NATURE OF THE ACTION

1.     Defendant Vestagen Protective Technologies, Inc. ("Vestagen" or "Defendant") manufactures and sells scrubs, lab coats, and patient gowns using "Vestex" fabric (collectively "Vestex Products"). Vestagen claims through its advertising, marketing, and branding that these scrubs are "proven" to protect healthcare workers from serious diseases and infections, with a "99.99% reduction in MRSA," and that they protect the health of patients in ways that other scrubs cannot. Vestagen's representations are false, misleading, and reasonably likely to deceive consumers, including healthcare executives, hospital executives, retailers, and healthcare workers.

2.     Defendant has disseminated false and misleading information through online advertisements, press releases, printed materials, and sales calls, which have induced consumers into purchasing Vestex Products.

3.     Defendant sells its Vestex Products at a premium price compared to other scrubs, lab coats, and patient gowns.

4.     The claims that Vestagen makes regarding the properties and abilities of its Vestex Products amount to little more than pseudoscience intended to mislead the consumer into believing that these Vestex Products can prevent infection and transmission of disease, which is false. In multiple ways, Vestagen has taken a narrow scientific fact and misconstrued and inflated that fact to a point where it is neither scientifically true nor defensible based on the consumer protection statutes that exist to prevent such deception of consumers.

5.     Vestagen's health claims regarding its Vestex Products are misleading and unsubstantiated. Vestagen's websites are riddled with misleading and unsubstantiated health claims, which, along with its public relations efforts,

2
COMPLAINT

has in turn caused numerous media outlets to repeat Vestagen's misleading and unsubstantiated claims.

6.      Vestagen's health claims are creating an environment that could endanger healthcare workers, their patients and the public rather than protect them. Healthcare workers and employers are spending a significant amount of money on products that cannot meet the expectations created by Vestagen's misrepresentations.

7.      Vestagen's misrepresentations lack sufficient support to satisfy FTC regulations, misstate Vestagen's lack of registration with the FDA, and are contrary to EPA policies.

8.      By misrepresenting the qualities of the Vestex Products, Vestagen is not only harming consumers but also Plaintiff, who is unable to fairly compete with Vestagen's misleading claims.  Healthcare executives, retailers, and medical consumers who are exposed to Vestagen's misleading statements are led by Vestagen to believe that Vestex Products provide qualities or have capabilities that Plaintiff's goods do not or cannot.

## THE PARTIES

9.      At all times mentioned herein, Plaintiff was, and now is a resident of California, with a principal place of business at 9800 De Soto Avenue, Chatsworth, California.

10.      Vestagen is a Florida-based medical apparel company with national sales.  Vestagen's principal place of business is at 1301 W. Colonial Drive, Orlando, Florida.

## JURISDICTION AND VENUE

11.      This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 over Claim I for violations of 15 U.S.C. § 1125(a), the Lanham Act.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338 & 1367 over Claim II and III for violations of California Business and

Professions Code §§ 17200 & 17500, as the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts under Article III of the United States Constitution.

12.    This Court has federal diversity subject matter jurisdiction over the claims of this complaint under 28 U.S.C. § 1332, because Plaintiff's principal place of business is in Chatsworth, California and amount in controversy exceeds $75,000.

13.    This Court has personal jurisdiction over Defendant because Defendant has extensive contacts with, and conducts business within, the State of California and this Judicial District.

14.    Further, Defendant has intentionally made its false and misleading statements to consumers in this district, thereby harming competitors such as Plaintiff in this district, and thereby causing tortious injury to Plaintiff in this district.

15.    Venue is proper in this Court because a substantial part of the events giving rise to the claims herein occurred in this district.  Defendant has intentionally made its false and misleading statements to consumers in this venue, thereby harming competitors such as Plaintiff in this district, and thereby causing tortious injury to Plaintiff in this district.  Further, Venue is proper in this Court because this Court has personal jurisdiction over Defendant. 28 U.S.C. § 1391(b).

## BACKGROUND – ALTERNATIVE DISPUTE RESOLUTION

16.    SPI attempted to stop Vestagen's false and misleading advertising without resorting to litigation.  On March 10, 2016, SPI filed a complaint with the National Advertising Division ("NAD") of the Better Business Bureau ("BBB").  Vestagen participated in the inquiry and filed a response with NAD.

17.    NAD's mission is to review national advertising for truthfulness and accuracy and foster public confidence in the credibility of advertising.  NAD

offers a hybrid alternative dispute resolution for advertisers, wherein advertising review specialists at NAD review the advertising at issue to decide whether the claims made therein have been substantiated.  Once NAD issues its decision, compliance with NAD's findings is voluntary, however, such compliance with NAD's findings is widespread.  If the advertiser refuses to comply with NAD's findings, NAD reserves the right to refer the claims to the appropriate federal agency, usually the FTC, for further action.

18.     On July 6, 2016 NAD sent its Final Decision to Vestagen.  On July 14, 2016, NAD issued its Final Decision to the parties, and issued that decision publicly along with a press release on July 27, 2016.

19.     As reported by Healthcare Purchasing News Daily Update e-Newsletter on July 28, 2016, in its Final Decision, NAD recommended that Vestagen "discontinue," "narrow," or "modify" each of the specific advertising claims at issue.  Though persuasive, NAD's Final Decision is not binding on this Court; Plaintiff intends to present evidence and argument to prove the allegations made herein, independent of NAD's Final Decision.

20.     As further reported by the Healthcare Purchasing News article, Vestagen relied primarily on a study called "A crossover trial of antimicrobial scrubs to reduce methicillin-resistant Staphylococcus aureus burden on healthcare workers" conducted by Gonzolo Bearman, et al. ("the Bearman Study), a study that Vestagen commissioned.  According to the Healthcare Purchasing News article NAD concluded that the study "did not constitute competent and reliable evidence sufficient for advertising claim substantiation purposes—particularly the health claims made by Vestagen."

21.     Further, NAD concluded that the Bearman Study "was insufficient to substantiate Vestagen's 'clinically proven' or 'proven' (establishment) claims promising specific results from use of its products."

COMPLAINT

22.     Further, on July 14, 2016, in conjunction with NAD's issuance of its final decision to the parties, Vestagen issued an "Advertiser's Statement," in which it agreed to "comply with NAD's decision and recommendations . . . ."

23.     As of the filing of this Complaint, Vestagen has not modified its website, its advertising, or its sales materials, despite its multiple representations to NAD that it would do so.

24.     On August 3, 2016, Strategic Partners requested that NAD initiate a compliance proceeding against Vestagen.  Strategic Partners specifically noted that in the four weeks since Vestagen received NAD's recommendations, Vestagen had not yet made a single change to any of their websites.

25.     Websites are a medium where claims can be easily and quickly modified.  Vestagen has shown that it is quite capable of quickly developing new copy, by directing changes to Allheart's website, a third party retailer of Vestex Products, just three days after Vestagen's response to SPI's initial NAD complaint.  *See* attached "Vestex Research Summary" from Allheart's website dated April 1, 2016, http://i.allheart.com/pdf/vestex-lab-fabric-results.pdf.

26.     On August 4, 2016, NAD refused to commence a compliance inquiry.

27.     Strategic Partners has attempted through NAD's procedures to halt Vestagen's false and misleading advertising.  Based on Vestagen's continued refusal to cease its false and misleading advertising, Vestagen appears to have participated in the NAD process in bad faith.

## DEFENDANT'S FALSE ADVERTISING SCHEME

28.     A major concern in the Medical Health Profession is the prevention of the transmission of infectious diseases.  Healthcare workers are occupationally exposed to infectious diseases during the performance of their duties.  According to the United States Department of Labor, one of the primary routes of transmission in healthcare settings is through contact—both direct and indirect—

197855

1   which involves the transfer of infectious agents from the infected individual

2   through physical contact. (*See*  https://www.osha.gov/ SLTC/healthcarefacilities/

3   infectious_diseases.html, last visited August 5, 2016.)  Two examples of contact

4   transmissible infectious agents include Methicillin-resistant *Staphyloccoccus*

5   *aureus* ("MRSA") and Vancomycin-resistant enterococcus ("VRE").  (*Id*.)  Both

6   MRSA and VRE are strains of bacteria that are multi-drug resistant, which means

7   that they are resistant to many antibiotics and which makes infections from either

8   difficult to treat and potentially life threatening.  (*See* www.cdc.gov/mrsa, last

9   visited August 5, 2016; see also

10  http://www.cdc.gov/hai/organisms/vre/vre.html#a1, last visited August 5, 2016.)

11          29.     Healthcare workers and others in the Medical Health Profession are

12  active participants in the efforts to prevent the transmission of infectious agents.

13  The Department of Labor's Occupational Safety and Health Administration

14  ("OSHA") has several standards and directives that "are directly applicable to

15  protecting workers against transmission of infectious agents." (*See*

16  https://www.osha.gov/ SLTC/healthcarefacilities/infectious_diseases.html, last

17  visited August 5, 2016.)  Similarly, the Centers for Disease Control and

18  Prevention's Healthcare Infection Control Practices Advisory Committee

19  ("HICPAC") has guidelines that detail routine day-to-day infection control

20  measures, which "focuses primarily on interactions between patients and

21  healthcare providers."

22  (*See* http://www.cdc.gov/hicpac/pdf/isolation/Isolation2007.pdf, last visited

23  August 5, 2016.)  The purpose of these guidelines, in combination with others, is

24  to "provide comprehensive guidance on the primary infection control measures for

25  ensuring a safe environment for patients and healthcare personnel."  (*Id*.)

26          30.    The HICPAC guidelines note that indirect and direct contact are the

27  most common modes of transmission of infectious agents, and that "[c]lothing,

28  uniforms, laboratory coats or isolation gowns used as personal protective

7

COMPLAINT

197855

equipment (PPE), may become contaminated with potential pathogens after care of a patient colonized or infected with an infectious agent (e.g. MRSA, VRE, and C. *difficile*." (*Id.*)  The guidelines further note that "[a]lthough contaminated clothing has not been implicated directly in transmission, the potential exists for soiled garments to transfer infectious agents to successive patients." (*Id.*)

31.   The CDC guidelines specifically stress that the "prevention and control of [multi-drug resistant organisms] is a national priority." (*Id.*)  As stated above, MRSA is a multi-drug resistant organism.

32.   Vestagen manufactures Vestex Products—scrubs, lab coats, and patient gowns for use in the Medical Health Profession using Vestex fabric. Additionally, according to their website, Vestagen anticipates using Vestex fabric in hospital privacy curtains and patient bed linens in the future.

33.   Defendant advertises and promotes its Vestex Products online, through its product website at www.buyvestex.com and through its corporate website at www.vestagen.com.

34.   Defendant also advertises its Vestex Products online through social media websites, including Facebook® and Twitter®.

35.   Defendant makes widespread health claims regarding its Vestex Products, including that Vestex Products—because of their use of Vestex Fabric—will protect healthcare workers and their patients from dangerous contaminants.

36.   One such claim, from Vestagen's www.buyvestex.com website is reproduced below (Figure 1).  It states that "VESTEX is Antimicrobial" and "REDUCES 99.99% OF THE BACTERIA IN A HOSPITAL SETTING.[1]"  The fine print, footnoted in Vestagen's claim, states:  "Bearman GM, Rosato A, Elam K, et al. A crossover trial of antimicrobial scrubs to reduce methicillin-resistant Staphylococcus aureus burden on healthcare worker apparel. Infect Control Hosp Epidemiol. 2012;33:268-275."

(Figure 1, "VESTEX is Antimicrobial".)

37.     On its www.buyvestex.com website, Vestagen describes its Basics Unisex 1 Pocket Scrub Shirt as follows:

> Our Unisex 1 Pocket Scrub Top features an exterior fluid barrier that repels splashes and stains, **embedded antimicrobial agents to prevent microbial growth on the fabric**, plus a moisture-wicking interior to keep you dry. Made from VESTEX, the only fabric **Proven[1] in a hospital setting to inhibit bacterial growth on the fabric,** the myGuardian unisex scrub top is comfortable and breathable with a roomy fit, unisex styling, high V-neck, and left chest pocket with pen holder. The fluid repellent and antimicrobial technology is permanently bonded right to the scrub top fabric, so these essential barriers never wash out, while stains launder easily. From the moment you open the package you'll feel the durability, protection, and quality of our fabric: a crispness that softens, yet still completely protects, after just half a dozen washings. This versatile unisex 1 pocket scrub top also offers tagless comfort in all colors except white.
>
> 1. Bearman GM, Rosato A, Elam K, et al. A crossover trial of antimicrobial scrubs to reduce methicillin-resistant Staphylococcus aureus burden on healthcare worker apparel. Infect Control Hosp. Epidemiol. 2012;33:268–275.

(http://www.buyvestex.com/mens/tops/myguardian-vestex-unisex-1-pocket-scrub-top.html) (Emphasis added.)

38.     In its FAQ section of its buyvestex.com website, Vestagen makes the following claims, footnote included:

> How does VESTEX work?

9

COMPLAINT

A dual mechanism of action makes VESTEX unique. The first mechanism of action is fluid repellency which reduces the acquisition and retention of contaminants on apparel. As contaminated fluids are repelled, there are fewer germs remaining on the fabric. **The second mechanism of action is disinfectant technology which inhibits microbial growth.** VESTEX is manufactured with a quaternary ammonium (Quat) **broad spectrum**, non-leaching, highly durable, surface cleaner that is **EPA registered** and **used in FDA cleared medical devices**. Hardwick demonstrated that a dual mechanism of action provides an additive effect resulting in a **higher reduction of MRSA** on the fabric than does a fluid barrier alone.[3]

\*\*\*

3   Hardwick, et al. Fabric Challenge Assays: New Standards for the Evaluation of the Performance of Textiles Treated with Antimicrobial Agents. www.astm.org DOI:10.1520/STP155820120184

(Emphasis added.) (http://www.buyvestex.com/faq).

39.    Vestagen's FAQ section also answers the question regarding published evidence, footnote included:

Is there any published evidence-based support for VESTEX?

Yes. A primary goal of infection prevention is to use techniques that reduce bioburden to sub-clinically relevant levels. In a clinical environment (an acute care ICU setting) **VESTEX garments have been shown to reduce the bioburden on the fabric as compared to untreated traditional garments.**[4] Bearman and colleagues report: "Study scrubs (VESTEX) were associated with a **4-7 mean log (99.99%) reduction in MRSA** burden…" Additionally, the bioburden reduction results of Bearman's in vivo study strongly correlates with the in vitro work reported in Hardwick's study.

\*\*\*

4    Bearman G et al. A Crossover Trial of Antimicrobial Scrubs to Reduce Methicillin-Resistant Staphylococcus aureus Burden on Healthcare Worker Apparel. Infect Control Hosp Epidemiology. 2012; 33:268-275

(Emphasis added.) (http://www.buyvestex.com/faq).

40.    Vestagen also makes the following claims about its fabric in the FAQ section of its www.buyvestex.com website, footnotes included:

How does VESTEX differ from other antimicrobial fabrics?

VESTEX effectiveness was verified in a clinical setting and published in a peer-reviewed medical journal (Bearman, et al). Results for VESTEX are not translatable to other antimicrobial fabrics.

1. Antimicrobial fabrics that do not have fluid repellency may become saturated with contaminants making it likely that their antimicrobial agent would be overwhelmed and rendered ineffective by the amount of the contaminant saturating the fabric[5].

2. Fluid repellency results in fewer germs on the fabric and thus decreases the exposure time required to kill a bacterial inoculum. Without it, organic material from blood, secretions and other body fluids can interfere with the antimicrobial agent and reduce its activity.

3. Metals (silver and copper), chitosan and triclosan have been shown to be ineffective in a hospital setting and leach from, or leave, the fabric surface[6], be resistant to some bacteria and be slow to act (12-24 hours)

\*\*\*

5   Association of State and territorial Health Officials. HAI Policy Tool Kit: Eliminating Healthcare-Associated Infections: State Policy Options

6   Amber H. Mitchell Making the Case for Textiles with a Dual Mechanism of Action. Infect Control Hosp. Epidemiol. 2015 doi:10.1017/ice.2014.92

(Emphasis added.) (http://www.buyvestex.com/faq)

41.   Vestagen claims regarding healthcare associated infections ("HAIs") that:

Will VESTEX reduce healthcare-associated infections (HAIs)?

Not by itself. Infection prevention protocols may use VESTEX as part of a bundled multi-modal approach that also includes good hand hygiene and environmental monitoring that focus on bioburden reduction. **A study to measure a reduction in infection rates solely attributable to VESTEX, or any other single intervention, is not feasible.** Bearman states, "For settings with high rates of hospital-acquired infections with drug-resistant pathogens such as MRSA, **the use of antimicrobial apparel may be a useful adjunct to other infection prevention measures**."

(Emphasis added.) (http://www.buyvestex.com/faq)

42.   Vestagen claims in its FAQ section of its buyvestex.com website that its product is effective against organisms other than MRSA, footnote included:

Is VESTEX effective against organisms other than MRSA?

Yes. The disinfectant agent in VESTEX has demonstrated in-vitro activity against a broad spectrum of organisms as well as activity

11

COMPLAINT

against MRSA in a clinical setting. In general, according to the Centers for Disease Control and Prevention (CDC) Disinfection and Sterilization Guidelines[7], published scientific literature indicate that the agent used in VESTEX is fungicidal, bactericidal, and virucidal against lipophilic (enveloped) viruses; it is not sporicidal and generally not tuberculocidal or virucidal against hydrophilic (non-enveloped) viruses.

***

7    Association of State and territorial Health Officials. HAI Policy Tool Kit: Eliminating Healthcare-Associated Infections: State Policy Options

(Emphasis added.) (http://www.buyvestex.com/faq)

43.    Vestagen claims in its FAQ section of its www.buyvestex.com website that Vestex will not cause antimicrobial resistance:

Will VESTEX cause antimicrobial resistance?

No. The action of antibiotics and the action of disinfectants, like those used in VESTEX, differ fundamentally. Adaptation of microorganisms (pathogens) to an antimicrobial agent is facilitated by the adjustment of enzyme systems in the cell (induction) or by genetic alterations (mutation) from exposure to an antimicrobial agent at a sub-lethal dose. Each of these processes require that a chemical move into the cytoplasm of the cell where influence on these processes can take place. VESTEX is different. The polymeric nature, lack of leachability (water solubility), and mode of action of the VESTEX antimicrobial agent do not allow for these permissive conditions to occur. In short, with VESTEX, the negatively charged pathogens are mechanically pierced and obliterated. Other antimicrobial fabrics that leach (silver for example) can allow for these conditions to exist, but not VESTEX.

(Emphasis added.) (http://www.buyvestex.com/faq).

44.    Vestagen has made the following claim on its corporate website www.vestagen.com:

In a published study in the Journal of Infection Control and Hospital Epidemiology, researchers reported a statistically significant MRSA reduction of more than 99.99% on the VESTEX scrubs compared to standard uniforms. Importantly, this study also showed that the healthcare workers wearing VESTEX had lower levels of microbes present on their garments than on their hands.

(http://vestagen.com.) The link in the above claim purports to resolve to the following study:  "Role of healthcare apparel and other healthcare textiles in the transmission of pathogens: a review of the literature," A. Mitchell, M. Spencer, C.

12
COMPLAINT

Edmiston Jr.,  Journal of Hospital Infection, Aug. 2015 Vol. 90, Issue 4, pages 285-292.)  In fact, this is not what this statement originally resolved.  It should resolve to the Berman Study.  Instead it is not resolving to a study at all but rather an article written by a then senior executive of Vestgen who was not disclosed as being a senior executive of Vestagen.

45.    Vestagen has stated on its corporate website (at least as late as April 2016) as follows:

> VESTEX: Evidence-Based, Safety Enhancing Healthcare Apparel
>
> Vestagen's VESTEX fabric is the first of its innovative medical technologies designed **to enhance the safety of healthcare workers and patient**s. Healthcare professionals experience the highest rates of injury and illness of any occupation in the US. Frequent exposure to body fluid splatters and spills result in bacterial colonization of apparel, a well-documented source of pathogen transmission. Pathogen transmission is linked to worker illness and high rates of healthcare-associated infections (**HAIs**) in patients. The cost of **HAIs** is high–thousands of lost lives, millions of additional hospital days and billions of dollars annually.
>
> VESTEX garments are engineered to have robust liquid repellency and antimicrobial properties, along with breathability, comfort and durability. **VESTEX is supported with published peer-reviewed clinical data documenting the value of its active barrier technology in reducing the acquisition and retention of contaminants on clothing.**
>
> **Based on this evidence-based approach**, VESTEX is the first and only apparel product to earn the exclusive endorsement of the American Hospital Association. **VESTEX fabric is currently registered with the FDA as a Class 1 medical device and the company plans to file for FDA clearance as a Class 2 medical device in 2016.**

(http://vestagen.com, emphasis added).

46.    Vestagen also claims on its www.vestagen.com website that it "has registered VESTEX with the US Food & Drug Administration (FDA) as a medical device and intends to pursue FDA 510(k) clearance."  (http://vestagen.com, last visited August 5, 2016.)

47.    Infectious disease expert Dr. Amber Mitchell, while a Senior Executive of Vestagen, has claimed that Vestex Products can "eliminate" the "bio-

13
COMPLAINT

197855

burden" created by exposure to Ebola.  Specifically, she stated:  "For something like Ebola, because it is so rich in body fluids, that <u>a technology like this that can eliminate that bio-burden on the scrub uniform</u>, is going to be critically important." (See http://brevard-online.com/local-company-helps-ebola-relief-efforts-africa, last visited August 5, 2016; emphasis added.)  Vestagen has not cited to any study or other source to collaborate this claim.  This statement is literally false or materially misleading.

48.     Vestagen has made the implied claim about its Vestex Products that Vestex fabric has an effect on rates of healthcare professional illnesses by protecting healthcare professionals from the transmission of hospital-acquired infections.

49.     Vestagen has claimed that its Vestex Products are effective against MRSA.  Specifically, and for example, Vestagen states on their website:

> VESTEX is proven in a clinical setting to reduce the acquisition and retention of contaminants on clothing—in a peer-reviewed published study in the Journal of Infection Control and Hospital Epidemiology, **researchers reported a statistically significant MRSA reduction of more than 99.99% on the VESTEX scrubs compared to standard uniforms.** (www.vestagen.com)

(Emphasis added.)

50.     Vestagen has claimed that its Vestex Products provide protection from pathogen transmission.

51.     Vestagen has claimed that its Vestex Products are effective against a broad range of bacteria, including disease-causing bacteria.

52.     Vestagen has claimed that its Vestex Products lead to a safer environment.

53.     Vestagen operates a Facebook® account dedicated to its Vestex brand and products. (*See* https://www.facebook.com/vestexprotects, last visited August

14

**COMPLAINT**

5, 2016.)  Vestagen distributes advertisements and promotions that contain misleading statements about its Vestex Products through its Facebook® account.

54.    For example, on February 20, 2015, the following was posted by Vestagen onto its Facebook® page:



(Figure 2.)

As can be seen in the image above, the post contains a quotation and a link to an article that discusses the potential for clothes worn by healthcare workers to "serve as vehicles to carry germs from one patient to another."  (See http://www.forbes.com/sites/robertszczerba/2015/02/18/deadly-germs-may-lurk-in-your-doctors-clothing/#5a32d8e4dd10, last visited August 5, 2016.)  In the Facebook® post, Vestagen selected a quote from the article describing the

potential for "bacteria and viruses" to be "lurking" on "clothes worn by healthcare workers themselves" and combined that quote with their own advertising to not to "let contaminated uniforms and lab coats get you down!  Get #VESTEXprotection today @ vestexprotects.com."  This combination misleads the viewer, including actual and potential consumers, that Vestex will protect against bacterial and viral contamination.  This statement is literally false and materially misleading.

55.    In another example, on November 21, 2014, the following was posted by Vestagen onto its Facebook® page:



(Figure 3.)

As can be seen in the image above, the post contains a link to an article that has the subheading "In response to the immediate danger of Ebola, the Centers for Disease Control and Prevention issued tightened guidance for personal protective equipment.  The article discusses the fact that "[m]any at-risk exposures occur

under . . . unanticipated circumstances." (*See*

http://www.modernhealthcare.com/article/20141121/NEWS /141129998, last

visited August 5, 2016.)  The article further states that "[a]s any healthcare worker

can attest, body fluid splashes and splatters of blood, urine, vomit and so on can

occur when least expected. These are not only unpleasant events; these body fluid

splashes can <u>carry pathogenic organisms</u>." (*Id.*, emphasis added.)  In its Facebook

post, Vestagen states that "Vestex is designed to fill this gap [in healthcare worker

protection from unexpected exposure] with continual protection against

unanticipated exposures." (*See* Figure 3.)  The combination of Vestex's own

words and the linked article misleads the viewer, including actual and potential

consumers, that Vestex is personal protective equipment and will protect against

Ebola and unexpected and unanticipated exposure to pathogenic organisms.  This

statement is literally false and materially misleading.

**<u>Vestagen's Claims Regarding Its Vestex Products</u>**

**<u>Are Unsubstantiated, False, and Misleading</u>**

56.    The main study that Vestagen touts to support its broad health claims,

the Bearman study, does not substantiate those health claims.  The Bearman study

states that it "did not collect data on device-associated infection rates; thus, the

impact of antimicrobial scrubs on hospital-acquired infections remains unknown."

Thus, Vestagen's claim that antimicrobial scrubs reduces hospital acquired

infections is unsubstantiated, specifically contradicted by the citation Vestagen

provides, and therefore is literally false and materially misleading.  Further,

Vestagen's citation to the Bearman study for that claim is literally false and

materially misleading in that it misleads the consumer into believing the Bearman

study confirms Vestagen's claim.

57.    The Bearman study states that:  "Study limitations include a short

duration (16 weeks) and testing at a single clinical unit. Thus, our findings are

difficult to generalize beyond our study population."  Thus, Vestagen's claim that

17

COMPLAINT

the findings of the Bearman study can be used to generalize beyond the study population is unsubstantiated, specifically contradicted by the citation Vestagen provides, and therefore is literally false and materially misleading.  Further, Vestagen's citation to the Bearman study for that claim is false and misleading in that it misleads the consumer into believing that the Bearman study confirms Vestagen's claim.

58.   The Bearman study does not show a consistent reduction of MRSA, despite testing two different areas at both the beginning and end of a shift. For the leg cargo pocket, a significant reduction was only observed at the beginning of a shift and not at the end; for the abdominal area pocket, a significant reduction was only observed at the end of a shift and not the beginning.  Thus, Vestagen's claim that its Vestex Products are effective against MRSA is unsubstantiated, specifically contradicted by the citation Vestagen provides, and therefore is literally false and materially misleading.  Vestagen's citation to the Bearman study for the claim that antimicrobial scrubs are effective against MRSA is false and misleading in that it misleads the consumer into believing the Bearman study confirms Vestagen's claim.

59.   Further, because Vestagen cites to the Bearman study as evidence of its claims, it was clearly aware of the content of the study and therefore knew at the time of making the claims discussed above—that antimicrobial scrubs reduces hospital acquired infections, that the Bearman study can be used to generalize beyond the study population, and that antimicrobial scrubs are effective against MRSA—that those claims were false and misleading.

60.   The Bearman Study does not demonstrate a consistent reduction of MRSA or that the treated garments reduced MRSA in all places at all testing intervals.  The Bearman study found no statistically significant differences observed in the proportion of healthcare workers colonized with MRSA and other cultures by scrub type.

61.     Vestegen's use of only select excerpts from the Bearman study—with no disclosures as to its limitations, flaws or tentative conclusions—conveys a misleading message to healthcare workers, specifically that healthcare workers will achieve consistent HAI, MRSA, C.diff. and other bacterial reduction.  That message is not supported by the Bearman Study.

62.     As of the filing of this Complaint, Vestagen has not modified its website, its advertising, or its sales materials.

63.     The methodology of the Bearman study states that study participants were subject to once weekly, unannounced garment and hand cultures.  Further it states that there would be 6 garment cultures per week.  But, upon analyzing Table 1 in the study, only one participant averaged at least 6 garment cultures per week (6.25).  The study average was only 4.29 samples per week.  This fact calls into question the methodology of the Bearman study.

64.     Further, the methodology of the Bearman study is not clear whether on the once weekly, unannounced garment and hand culture days the participant scrubs were tested twice (once at the beginning and once at the end of the shift) or just at the beginning or the end.  If tested twice, giving the participants knowledge of that test, those participants might have changed their behaviors because they knew they were going to be tested again later in their shift.

65.     The methodology does not address home laundering of scrubs. A number of factors can affect the cleanliness of attire from water temperature and pH to use of bleach and type of laundry detergent used to dryer temperature.  Additionally, it is unknown whether study scrubs were washed individually, together, or with other personal garments.

66.     Vestagen cites no study to support its claim that fluid repellency reduces the risk of healthcare-acquired infections, or that fluid repellency prevents contamination, or that fluid repellency reduces the amount of bacteria on scrubs.  Thus, that claim is unsubstantiated and is literally false and materially misleading.

*The FTC*

67.    The FTC requires all health claims be supported by "competent and reliable scientific data."  Further, the FTC requires Defendant to be responsible for both express and implied health claims.  The claims made by Vestagen discussed above—that antimicrobial scrubs reduces hospital acquired infections, that the Bearman study can be used to generalize beyond the study population, and that antimicrobial scrubs are effective against MRSA—are not supported by competent and reliable scientific data.  Indeed, the Bearman study itself limited the applicability of its conclusions.

68.    Vestagen's "Research Summary," available in Vestagen's press kit on their corporate website refers to several additional misleading studies.

69.    One reference—"Making the Case for Textiles with a Dual Mechanism of Action"—is not a study at all, but instead a letter to the editor of the publication, and not actually original clinical research.  (Journal of Infection Control Hospital Epidemiology, February, 2015.)  This study is not "competent and reliable scientific data" as required by the FTC.

70.    Next, Vestagen cites to "In-Vitro Effectiveness of VTT-003 (Vestex) on C.Diff."  As of March 6, 2016, neither Vestex nor Semeltec (the antimicrobial technology Vestagen uses) appear on the EPA's list of Registered Antimicrobial Products Effective against Clostridium difficile Spores.  Vestagen's implied claim to the opposite is misleading.  This study is not "competent and reliable scientific data" as required by the FTC.

71.    The Bearman Study does not constitute competent and reliable evidence sufficient for advertising claim substantiation purposes.  The Bearman study is insufficient to substantiate Vestagen's "clinically proven" or "proven" claims promising specific results from use of its product.  In addition, Vestagen's implied claims regarding the health benefits of their products are false and misleading to the consumers.

### *The EPA*

72.     Products treated with an antimicrobial agent (*e.g.,* healthcare apparel made out of Vestex fabric) that make public health claims must be registered with the EPA to make those claims.  *See* EPA guidelines from Pesticide Notice (PR) 2000-1, Applicability of the Treated Articles Exemption to Antimicrobial Pesticides.

73.     The EPA provides an exemption from registration for products that contain an antimicrobial agent where the agent is solely included to protect the product from bacteria that cause odor or degrade the product.

74.     The EPA has noted a proliferation of products treated with pesticides (*e.g*., antimicrobial agents) that make implied or express public health claims for protection against bacteria.  The EPA has stated that these claims are unlawful.

75.     Defendant's use of Semeltec from Schoeller Technologies Vestagen would allow Defendant to use the Treated Articles Exemption, but not to make public health claims for protection against bacteria.

76.     The EPA has further stated that products falling under the treated articles exemption that are anticipated to be used where there are disease-causing organisms have "the potential to create the impression that the article provides protection against disease-causing organisms" and as such are required to have a qualifying statement similar to "This product does not protect users or other against disease-causing organisms. Always clean this product thoroughly after each use."

77.     Vestagen's corporate website implies that Vestex fabric is registered with the EPA, when there is no evidence to suggest that Vestex is registered.

78.     The claim that a product is registered with the EPA is material to a purchaser making a decision to purchase a product that makes health claims about protection against bacteria and other disease causing organisms.

197855

*The FDA*

79.     On the Vestagen corporate website Defendant states that "VESTEX fabric is currently registered with the FDA as a Class 1 medical device and the company plans to file for FDA clearance as a Class 2 medical device in 2016."

80.     Vestex fabric is not registered with the FDA.  Defendant's statement claiming otherwise is literally false and materially misleading.

81.     Defendant has registered a surgical suit with the FDA as a Class 1 medical device.  Defendant offers everyday scrubs, scrubs, lab coats, and patient gowns—in addition to surgical suits (also known as OR scrubs).

82.     By stating that the Vestex fabric is registered as a medical device Defendant implies that any product made from that fabric would be considered a Class 1 medical device.

83.     By stating that it intends to file for FDA clearance that the Vestex fabric is registered as a Class 2 medical device, Defendant implies that any product made from that fabric will eventually become a Class 2 medical device.

84.     Vestagen has made an implied claim that by nature of its Class 1 medical device registration for Vestex fabric and planned Class 2 registration, Vestagen is permitted to make health claims about the Vestex fabric.

85.     Vestagen's claims extend beyond the regulatory language regarding surgical apparel, stating that its product protects against "pathogens" and "dangerous contaminants."

86.     Further, Vestagen conveys the unsupported message that the described protection extends to all of Vestagen's Vestex Products.

87.     The product claims afforded to Vestagen's "surgical apparel/scrub suits" by virtue of its FDA classification, in the context presented by Vestagen in many of its advertisements, convey the unsupported message that its Vestex Products protect the health of the surgical patient and operating room personnel via its antimicrobial properties.

88.   The claim that a product registered with the FDA as a Class 1 medical device is material to a purchaser making a decision to purchase a product that makes health claims about protection against bacteria and other disease causing organisms.

### Defendant's Injured Consumers and Competition by Making
### False and Misleading Statements and thereby Inducing
### Consumers to Purchase Defendant's Vestex Product

89.   Defendant has distributed and continues to distribute advertisements and promotions that contain false and misleading statements about the qualities of its Vestex Products through, at least, its own websites and social media accounts. Due to the nature of the internet, this distribution is in interstate commerce.

90.   Defendant sells its Vestex Products online through its own website, and through online retailers.  Due to the nature of the internet, these sales are made in interstate commerce.

91.   On information and belief, Defendant has charged and is charging a premium price for its Vestex Products.

92.   Many healthcare workers wear medical scrubs as part of their daily work uniform.  The claims made by Vestagen discussed above—that Defendant's antimicrobial scrubs reduce hospital acquired infections, that the Bearman study can be used to generalize beyond the study population, and that Defendant's antimicrobial scrubs are effective against MRSA—actually deceive, or have a tendency to deceive, a substantial segment of healthcare workers, as well as other consumers and potential consumers of Defendant's goods.  This deception is material in that it concerns the antimicrobial characteristics of Defendant's Vestex Products.  Due to the serious concerns over preventing the transmission of infection diseases, Defendant's false and misleading statements are likely to influence the purchasing decisions of consumers, particularly healthcare workers

1   and others in the Medical Health Profession who actively seek to reduce the

2   transmission of infectious agents, including MRSA.

3        93.    Consumers are substantially injured by Defendant's false and

4   misleading statements in multiple ways, including the paying of a premium for the

5   Vestex Products, as well as falsely believing that they are personally protected

6   from as well as preventing the transmission of potentially deadly infectious

7   disease—which may cause healthcare workers to take less safety precautions

8   when dealing with patients.

9        94.    Plaintiff manufactures and sells antimicrobial medical scrubs, lab

10   coats, and other garments for use in the Medical Health Profession.

11        95.    Healthcare workers and others in the Medical Health Profession who

12   are actual and potential consumers of antimicrobial scrubs are and have been

13   misled by Defendant's false and misleading statements that the Vestex Products

14   offer protective qualities—reduced hospital acquired infections, that the Bearman

15   study can be used to generalize beyond the study population, and that the Vestex

16   scrubs are effective against MRSA—which are not available in Plaintiff's

17   antimicrobial garment products.

18        96.    Due to Defendant's false and misleading statements, Plaintiff is

19   unable to fairly compete with Defendant to sell antimicrobial medical scrubs.

20        97.    Due to Defendant's false and misleading statements, Plaintiff has lost

21   revenue, and will likely continue losing revenue, from the sales of antimicrobial

22   scrubs, lab coats, and other medical garments due to consumers withholding their

23   trade from Plaintiff, in favor of Defendant's falsely advertised Vestex Products.

24        98.    Defendant's false and misleading statements are causing immediate

25   and irreparable injury to Plaintiff, including injury to Plaintiff's business,

26   reputation, and goodwill.  Actual and potential consumers of antimicrobial

27   medical garments who are exposed to Defendant's false and misleading

28   statements may form the belief that Plaintiff does not, or is incapable of,

24
COMPLAINT

197855

manufacturing goods as "protective" as Defendant's products, and therefore are inferior quality.

## FIRST CAUSE OF ACTION

### False Advertising in Violation of 15 U.S.C. § 1125(a)

99.   Plaintiff re-alleges and incorporates by reference each of the numerical paragraphs both above and below as if fully set forth herein.

100.   The aforementioned acts of Defendant as set both above and in the following counts constitute false advertising in violation of the 15 U.S.C. § 1125(a).  As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.  Further, Defendant has caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to Plaintiff's business, reputation and goodwill, for which there is no adequate remedy at law.  Plaintiff is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining Defendant from engaging in future acts of false advertising and ordering removal of all of Defendant's false advertisements.

101.   The aforementioned acts of Defendant as set both above and in the following counts constitute a false or misleading representation of fact in commercial advertising or promotion, in interstate commerce in connection with goods or services, where Defendant's representation misrepresents the nature and/or qualities of Defendant's goods, and Plaintiff has been damaged and is likely to be damaged in the future by Defendant's acts.

102.   The aforementioned acts of Defendant as set forth both above and in the following counts, particularly Defendant's false and misleading misrepresentations, caused commercial injury to Plaintiff, such injury harming Plaintiff's ability to compete with the Defendant.

103.   The aforementioned acts of Defendant as set forth both above and in the following counts, particularly Defendant's false and misleading

misrepresentations in its commercial advertising and promotion of its VESTEX goods, are the proximate cause of Plaintiff's injury.  Defendant's acts deceived healthcare executives consumers which caused those consumers to withhold trade from Plaintiff.

104.   Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's acts in violation of 15 U.S.C. 1125(a).  Plaintiff is at present unable to ascertain the full extent of the monetary damages it has sustained by reason of Defendant's acts.

105.   Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendant the gains, profits, and advantages that Defendant has obtained as a result of Defendant's acts in violation of 15 U.S.C. 1125(a).  Plaintiff is at present unable to ascertain the full extent of the gains, profits, and advantages that Defendant has obtained by reason of Defendant's acts.

106.   Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover the costs of this actions.  Moreover, Defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees.

### SECOND CAUSE OF ACTION

**Unfair Business Practices**

**in Violation of CAL. BUS. & PROF. CODE § 17200**

107.   Plaintiff re-alleges and incorporates by reference each of the numerical paragraphs both above and below as if fully set forth herein.

108.   The aforementioned acts of Defendant as set both above and in the following counts constitute unfair, unlawful, and/or fraudulent business practices in violation of California Business and Professions Code § 17200.  As a result of

Defendant's actions, Plaintiff has suffered and will continue to suffer injury to its business, reputation, and goodwill.

109. The aforementioned acts of Defendant as set both above and in the following counts constitute an unlawful violation of at least the following: 15 U.S.C. § 1125(a); 15 U.S.C. § 45; and/or 15 U.S.C. § 52.

110. The aforementioned acts of Defendant as set both above and in the following counts resulted in substantial injury to both the Defendant and consumers, wherein that injury is not outweighed by any countervailing benefits to consumers or to competition, and, is not an injury that consumers themselves could reasonably have avoided.

111. The aforementioned acts of Defendant as set both above and in the following counts constitute a fraudulent misrepresentation that directly resulted in injury to Plaintiff and consumers. Consumers relied on Defendant's misrepresentations regarding the qualities of Defendant's Vestex goods when purchasing those goods, resulting in wrongful diversion of sales from Plaintiff.

112. The aforementioned acts of Defendant as set forth both above and in the following counts caused an injury to the Plaintiff and by such acts have caused Plaintiff to lose revenue as a result of the unfair competition.

113. Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendant's unfair, unlawful, and/or fraudulent business practices in an amount that is not presently not known to Plaintiff.

## **THIRD CAUSE OF ACTION**

### **Untrue And Misleading Advertising**

### **In Violation of CAL. BUS. & PROF. CODE §17500**

114. Plaintiff re-alleges and incorporates by reference each of the numerical paragraphs both above and below as if fully set forth herein.

27

197855

115.   The aforementioned acts of Defendant as set both above and in the following counts constitute untrue and misleading advertising in violation of California Business and Professions Code § 17500.  As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer injury to its business, reputation, and goodwill.

116.   The aforementioned acts of Defendant as set both above and in the following counts constitute statements in advertising that are untrue or misleading, and Defendant knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading.

117.   Defendant's statements about the qualities of its Vestex Products— that Vestex scrubs reduces hospital acquired infections, that the Bearman study can be used to generalize beyond the study population, and that Vestex scrubs are effective against MRSA—are likely to deceive a reasonable consumer of medical scrubs.

118.   At the time that Defendant made the statements about the qualities of its Vestex Products, Defendant knew, or by the exercise of reasonable care, should have known that the statements were untrue or misleading.

119.   Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendant's unfair, unlawful, and/or fraudulent business practices in an amount that is not presently not known to Plaintiff.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for Judgment against Defendants as follows:

1.   A preliminary and permanent injunction requiring Defendant to discontinue advertising, marketing, packaging and otherwise representing that Vestex Products have benefits they do not have, including:

197855

- Garments made with Vestex fabric protect healthcare workers and their patients from dangerous contaminants.

- Vestex transforms healthcare garments into apparel that helps guard workers and patients from pathogens and other contaminants.

- Vestex is effective against MRSA.

- Vestex provides protection from pathogen transmission.

- Vestex is effective against a broad range of bacteria, including disease-causing bacteria.

- Garments with Vestex fabric lead to a safer environment.

- Vestex fabric is registered with the FDA as a Class 1 medical device.

- Vestex is clinically proven to prevent or reduce the acquisition and retention of contaminants on clothing, reducing methicillin-resistant Staphylococcus aureus (MRSA), by 99.99% (a 4-7 log reduction) compared to traditional uniforms.

2.   Compensatory damages;

3.   Statutory damages pursuant to 15 U.S.C. § 1117;

4.   Punitive damages;

5.   Exemplary damages;

6.   Restitution;

7.   Actual damages;

8.   Disgorgement of profits;

9.   Interest at the legal rate per annum;

10.   All costs of suit;

11.   Such other and further relief as this Court deems just and proper;

12.   Attorneys' fees as permitted by law.

///

///

///

///

///

29

COMPLAINT

197855

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to FED. R. CIV. P. 38, Plaintiff hereby demands a trial by jury on

3   its claims.

4

5   Dated:  August 8, 2016                **MICHELMAN & ROBINSON, LLP**

6

7                                        By: /s/  Mona Z. Hanna
                                             Mona Z. Hanna

8                                            Taylor C. Foss
                                             Jennifer A. Mauri

9                                            Attorneys for Plaintiff
                                             STRATEGIC PARTNERS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

197855