**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

**HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE**

– – – –

| | |
|---|---|
| STRATEGIC PARTNERS, INC.,                     ) | |
|                                               ) | |
|                     PLAINTIFF,                ) | |
|          vs.                                  )  CASE NO. | |
|                                               )  CV 16–5900–RGK | |
| VESTAGEN PROTECTIVE TECHNOLOGIES, INC., ) | |
|                                               ) | |
|                     DEFENDANT.                ) | |
| VESTAGEN PROTECTIVE TECHNOLOGIES, INC., ) | |
|                                               ) | |
|                     COUNTER–CLAIMANT,         ) | |
|                                               ) | |
|          vs.                                  ) | |
|                                               ) | |
| STRATEGIC PARTNERS, INC.,                     ) | |
|                                               ) | |
|                     COUNTER–DEFENDANT.        ) | |

**REPORTER'S TRANSCRIPT OF JURY TRIAL**

**DAY 1, VOLUME 1; PAGES 1 TO 93**

**TUESDAY, SEPTEMBER 19, 2017**

**9:04 A.M.**

**LOS ANGELES, CALIFORNIA**

_____

**SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR**
Official Reporter, U.S. District Court
255 East Temple Street
Los Angeles, CA  90012
213.894.5949

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1    APPEARANCES OF COUNSEL:

2

3    FOR PLAINTIFF/COUNTER-DEFENDANT STRATEGIC PARTNERS, INC.:

4            MICHELMAN & ROBINSON, LLP
             BY:  MONA Z. HANNA, ATTORNEY AT LAW
5            17901 VON KARMAN AVENUE, SUITE 1000
             IRVINE, CALIFORNIA  92614
6            714.557.7990

7            MICHELMAN & ROBINSON, LLP
             BY:  SETH E. DARMSTADTER, ATTORNEY AT LAW
8            200 SOUTH WACKER DRIVE, SUITE 2900
             CHICAGO, ILLINOIS  60606
9            312.638.5671

10

11   FOR DEFENDANT/COUNTER-CLAIMANT VESTAGEN PROTECTIVE
     TECHNOLOGIES, INC.:

12           ERICKSEN ARBUTHNOT
             BY:  SHARON L. HIGHTOWER, ATTORNEY AT LAW
13           152 NORTH THIRD STREET, SUITE 700
             SAN JOSE, CALIFORNIA  95112
14           408.286.0880

15           OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC
             BY:  VINCE M. VERDE, ATTORNEY AT LAW
16               SEAN PAISAN, ATTORNEY AT LAW
             695 TOWN CENTER DRIVE
17           PARK TOWER, SUITE 1500
             COSTA MESA, CALIFORNIA  92626
18           714.800.7900

19

20   ALSO PRESENT:

21           MIKE SINGER

22           BEN FAVRET

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

*I N D E X*

*PROCEEDINGS:*                                                  *PAGE:*

Discussion outside the presence of the
prospective jurors ................................   4

Jury voir dire ...................................  13

Pre-instructions to the jury .....................  63

Opening statement by Plaintiff/Counter-Claimant
Strategic Partners, Inc., by Ms. Hanna ...........  71

Opening statement by Defendant Vestagen
Protective Technologies, Inc., by Ms. Hightower ...  78

Opening statement by Counter-Claimant Vestagen
Protective Technologies, Inc., by Mr. Verde .......  82

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              LOS ANGELES, CALIFORNIA; TUESDAY, SEPTEMBER 19, 2017

 2                                9:04 A.M.

 3                                - - - -

 4

 5         (Outside the presence of the prospective jurors:)

 6              THE CLERK:  Calling calendar item No. 1, case

 7   No. Civil 16-5900-RGK, Strategic Partners, Inc. versus Vestagen

 8   Protective Technologies, Inc.

 9         Counsel, please state your appearances.

10              MS. HANNA:  Good morning, Your Honor.  Mona Hanna and

11   Seth Darmstadter appearing for Strategic Partners Technologies.

12              THE COURT:  Thank you, Counsel.

13              MR. VERDE:  Good morning, Your Honor.  Vince Verde on

14   behalf of Vestagen.  Also with me is my co-counsel, Sean

15   Paisan, and Sharon Hightower.

16              THE COURT:  Okay.  In this particular matter, this is

17   a trial starting.  About quarter of we'll have the jury down so

18   we can start the voir dire.  I was going to cover a few things

19   with you, first of all.

20         I can tell you right now from what I see in court, as I

21   expected, this case has been extremely overblown from both

22   sides, making mountains out of molehills, et cetera.  If you

23   have 310 exhibits, you better talk fast.

24         This case, I am going to give you more time than the five

25   hours.  I'm giving you seven hours each side.  Remember, when
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    your seven hours is up, you have no more questions that you can

2    ask.  If the other side is still asking questions, you can't

3    cross-examine.  You're through at the seven hour unless I give

4    you more time, and I indicated before that I might do that if

5    there is a -- if you have shown that it's efficient as you

6    can.  I can tell you before we start, that's almost never been

7    met.

8          If Ken Burns can do the entire Civil War in 16 hours,

9    don't tell me a case like this, which is a ordinary,

10   run-of-the-mill case we get through here all the time that is

11   normally tried in two or three days, can't be tried in seven

12   hours.  That's 14 hours.  It's not going to take you longer to

13   try this case, as I'll explain to the jury, than Ken Burns

14   explained the entire Civil War.  So I don't have a lot of

15   sympathy when people say, "Oh, I need more time."

16         If it's properly prepared and properly put together and

17   properly presented to the jury, you will have no problem at

18   all, you should finish it in about five hours.  But I'm going

19   to give you seven hours each side.

20         Motions in limine, I've already given you tentatives on.

21   Those tentatives are appropriate and will stay for the -- as

22   the Court's permanent ruling on the motions in limine.

23         Remember motions in limine are evidentiary rulings, which

24   means that, in a way, they are -- and I think I explained this

25   to you earlier.  They're temporary insofar as, if evidence

1    comes up during the course of the trial that makes something

2    relevant that I have excluded, then it might come in.  So that

3    can vary as the trial proceeds.

4         When you're introducing documents, only the pages that you

5    refer to in front of the jury during the trial will be

6    received.  If you have a hundred-page document and you cover

7    one page, the hundred pages doesn't come in.  Only the pages

8    you refer to during the trial will come in.

9         Let's see what else we have here.  I'm going to need,

10   every day, a list of the witnesses you intend to call that day

11   in the order that you intend to call them.  And so you can --

12   and you can do that in a notepad or just scribble the names

13   down, something for me, so I know the order of witnesses that

14   will be called.

15        When we voir dire the jury, I'm going to ask you to

16   introduce your parties -- the attorneys, your parties, and any

17   witnesses that you intend to call.  When you introduce a

18   witness, give us more than just John Smith.  Tell us where they

19   live or something so the jury can identify to see whether or

20   not the jury knows the witnesses or not.  So either who they

21   work for or what city they live in.

22        What else have -- we went through a lot of this at

23   pretrial, so I don't know what more there is than pretrial.  So

24   anyway, that's basically where we stand on it.  We will have --

25   I'm assuming this will be over either sometime Friday or maybe

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  go into Monday or Tuesday of next -- well, the first day of --

2  I don't know whether or not Monday's going to be open for trial

3  or not, but it may go into the beginning of next week.

4      Okay.  We're going to get started here, and I'll give you

5  a chance to prepare and everything else.  We're going to get

6  started in about 40, about 35 minutes.  As soon as we get the

7  jury down here, we'll get started.

8      Any questions before we get started?  If not, remember

9  what I've told you before, and that is, anytime the attorneys

10 agree on something that doesn't affect the timing on the jury,

11 I almost always will go along with it.  I've gotta tell you,

12 from what I've seen so far, I don't think you're going to get a

13 lot of agreement between attorneys, which is sad, because you

14 are officers of the court, and you should be working together

15 as an officer of the court, not just to try to paper each other

16 to death and be obnoxious.  You should be working together on

17 this.  If you agree on something, the Court almost always will

18 go along with it.

19     Remember what I told you earlier, if you make objections

20 during the trial, you make the objection.  You do not argue it

21 in front of the jury.  You just make the objection, tell us

22 what it is.  The Court will rule on it.  If you don't like the

23 ruling or if you think the Court made a mistake, we'll bring it

24 up at the next time there's a break in the jury.  And remember

25 also, other than the voir dire, there are no bench conferences

1    during the trial.

2        Okay.  You had a question, Counsel.

3        MR. DARMSTADTER:  Yes, Your Honor.  A couple of quick

4    things.

5        There's one witness that's on plaintiff's witness list,

6    David Frattarelli.  He is an employee of Dow Chemical Company.

7    Opposing counsel has objected to that witness testifying.

8    Motion in limine No. 1 by Vestagen was a motion to exclude

9    witnesses that were not included on the June 7th discovery

10   cut-off.  You denied that motion, Your Honor; however, their

11   motion to bar Mr. Frattarelli came subsequent to that.  So we

12   just want to make sure that we're going to be able to call him

13   at trial.  And if you need more context, we'd be happy to give

14   it to you.

15       THE COURT:  Counsel, I have no motion in front of me

16   to exclude that witness, so -- at this time.  Until and unless

17   the Court says you can't call him, you can call anybody you

18   want, and we'll deal with it at that time.

19       Yes, Counsel.

20       MS. HANNA:  One other issue, Your Honor.

21       We'd like to have either a stipulation or a ruling that

22   counsel cannot reference Florida or the Florida floods,

23   et cetera, as a reason for not producing their witnesses today.

24   That's one of the issues that we're going to be playing a lot

25   of --

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                    THE COURT:  That is definitely going to be an order of

 2       the Court, that no one here is to refer to and try to gain the

 3       sympathy of the jury by talking about anything about Florida --

 4                    MS. HANNA:  Thank you.

 5                    THE COURT:  -- or Florida floods or personal problems

 6       you might have had in front of the jury.

 7              You can tell me about it, but not the jury.

 8              Okay.  We'll get you in just a second.  They have one

 9       more, I think.

10                    MR. DARMSTADTER:  This is just a housekeeping

11       question, Your Honor.

12                    THE COURT:  Sure.

13                    MR. DARMSTADTER:  Because there are no bench

14       conferences --

15                    THE COURT:  Yes.

16                    MR. DARMSTADTER:  -- if we believe that a door has

17       been opened to something that you may have barred from a motion

18       in limine, how do we bring that to you?

19                    THE COURT:  Well, two ways.  One is, you just go ahead

20       and ask the question, and I'll either grant it or not,

21       depending on the motion in limine.  If I think it's changed,

22       I'll let it in.  Or you can bring it up at the next hearing, at

23       the next -- and that's normally when it's brought up, is the

24       next break in the jury, you bring it up.

25                    MR. DARMSTADTER:  Thank you.
```

```
 1              THE COURT:  Now, if it's the same witness, you may
 2   just want to proceed.  You know, "I think the door's open, I'd
 3   like to ask the following question," and I'll either say
 4   granted or denied.
 5              MR. DARMSTADTER:  Understood.  Thank you.
 6              MR. VERDE:  Your Honor, real briefly, I'd just like to
 7   ask the Court to keep an open mind regarding any sort of
 8   attempt to impeach my -- impeach the lack of availability of
 9   certain witnesses because of family issues as it relates to the
10   hurricane.  If plaintiff were trying to make a comment to the
11   jury about why aren't these witnesses present here, when we
12   have very good reasons why they're not here, and that's because
13   of, A, they have the depositions of --
14              THE COURT:  If they do that, they open the door.  If
15   they say why aren't these witnesses here, they've opened the
16   door on it.
17              MR. VERDE:  Thank you, Your Honor.
18         Lastly, Your Honor, with respect to evidence, the way the
19   Court likes to have the evidence published before the jury, if
20   we are bringing -- referencing documents in front of the
21   witness, can we have those documents published to the jury
22   before the end of the day where the parties --
23              THE COURT:  Counsel, if you have an exhibit that you
24   want to introduce, you show it the client -- I mean, this is
25   101.  You show it to the witness, they identify it, whatever it
```

```
1    is, then you move to have it received.  If you receive it,

2    right away you can say, "May I publish it?"

3              MR. VERDE:  Thank you, Your Honor.

4              THE COURT:  And so the answer -- but don't show it

5    before the Court says you can publish it.

6              MS. HANNA:  Just a clarification on that last

7    question.  I think that the issue is, because of the volume of

8    the exhibits, whether or not we can do that electronically.  In

9    other words, if I reference an exhibit, can we electronically

10   show it on the monitor to the Court and to the witness without

11   publishing it to the jury, and then only after it's admitted

12   does it go onto the large screen where the jury --

13             THE COURT:  You're going to have to show it to them

14   before.

15             MS. HANNA:  A physical copy?

16             THE COURT:  I'm sorry?

17             MS. HANNA:  A physical copy?

18             THE COURT:  You're going to have to have them identify

19   it.  I don't care how they identify it.  If they have a

20   computer up there and can do it themselves -- you're going to

21   have to identify it before it comes in.

22             MS. HANNA:  Absolutely.  Thank you, Your Honor.

23             THE COURT:  But we don't have the technology.  We have

24   problems with the technology of just showing it to us

25   electronically.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                MS. HANNA:  Thank you.

 2                THE COURT:  If you can work that out, that's fine, but

 3      I don't know if we can work that out.  I just don't want it

 4      shown to the jury until it's received into evidence and the

 5      Court orders that it may be published.

 6          Okay.  Hopefully, it will go smoother than I anticipate.

 7      Hopefully -- I don't think the -- I hope that the counsel agree

 8      a little bit or get along a little bit better than I think

 9      they're getting along.  I can tell you this, the one thing

10      you don't want to do in this Court is show any lack of

11      civility in the court.  That's the one area that you really

12      don't want to get into.  Okay.  And I don't anticipate it.  As

13      I said, all of you are officers of the court.  You've been

14      around a long time.  I expect a very good, professional trial

15      that way, and when the jury leaves here, they're going to think

16      that the legal profession is a very professional and respected

17      profession.

18          Okay.  Anything I missed?  If not, we'll see you back in

19      at quarter of, or as soon as the jury gets back here, and we'll

20      get into the voir dire.

21                MS. HANNA:  Thank you, Your Honor.

22                MR. DARMSTADTER:  Thank you, Judge.

23                THE COURT:  Mm-hmm.

24                THE CLERK:  All rise.

25          Court is in recess.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              (Recess held from 9:15 a.m. to 9:55 a.m.)

 2              (In the presence of the prospective jurors:)

 3              THE CLERK:  Calling calendar item No. 1, case

 4    No. Civil 16-5900-RGK, Strategic Partners, Inc. versus Vestagen

 5    product -- I'm sorry, Vestagen Protective Technologies.

 6         Counsel, please state your appearances.

 7              MS. HANNA:  Good morning, Your Honor.  Mona Hanna

 8    appearing for Strategic Partners Technologies.

 9              THE COURT:  Counsel.

10              MR. DARMSTADTER:  Good morning, Your Honor.  Seth

11    Darmstadter appearing for Strategic Partners, Inc.

12              THE COURT:  Counsel.

13              MR. VERDE:  Good morning, Your Honor.  Vince Verde

14    appearing on behalf of Vestagen.

15              MR. PAISAN:  Good morning, Your Honor.  Sean Paisan on

16    behalf of Vestagen.

17              THE COURT:  Thank you, Counsel.

18         All sides ready to proceed?

19              MS. HIGHTOWER:  Excuse me.

20              THE COURT:  I'm sorry, Counsel.  I didn't --

21              MS. HIGHTOWER:  That's all right.

22              THE COURT:  Go ahead, Counsel.

23              MS. HIGHTOWER:  Sharon Hightower, representing

24    Vestagen.

25              THE COURT:  Okay.  Everybody's been introduced?  All
```

```
1    sides ready to proceed?

2              MS. HANNA:  Yes, Your Honor.

3              MR. VERDE:  Yes, Your Honor.

4              THE COURT:  Okay.  Ladies and gentlemen, we're going

5    to be calling names of the jurors, and as your name's called,

6    if you'd please come up and take the far seat in the back row

7    first.  Then once that's filled up, then take the far seat in

8    the second row and fill it up.  As soon as they do that, I'll

9    be talking to all of you about what we're going to be doing.

10             THE CLERK:  Jamie Ramirez, R-a-m-i-r-e-z.

11        Charlotte Chavarria, C-h-a-v-a-r-r-i-a.

12        I'm sorry, come forward.  Ms. Ramirez?

13             PROSPECTIVE JUROR NO. 1:  Yes.

14             THE CLERK:  Enter in here and then go down to seat 1.

15        Raymundo Arellano, A-r-e-l-l-a-n-o.

16        Yaneth, Y-a-n-e-t-h, last name Mendez, M-e-n-d-e-z.

17        Yvette Pena, P-e-n-a.

18        John Warren, W-a-r-r-e-n.

19        Frank Hatzman, H-a-t-z-m-a-n.

20        Shelly Deperalta, D-e-p-e-r-a-l-t-a.

21        And then for the first seat in the second row, Claudia

22   Knittle, K-n-i-t-t-l-e.

23        Daniel Gradin, G-r-a-d-i-n.

24        Melanie Marin, M-a-r-i-n.

25        Lia Donovan-Jones, D-o-n-o-v-a-n, hyphen, J-o-n-e-s.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1          Kinyah Dixon, K-i-n-y-a-h, last name D-i-x-o-n.
 2          And Charles Hutchinson, H-u-t-c-h-i-n-s-o-n.
 3          THE COURT:  Okay.  Ladies and gentlemen, first of all,
 4   I want to address those people that are out in the audience
 5   still.
 6          You're part of this jury.  We're going to be asking
 7   questions of the 14 jurors that are in the box here directly,
 8   but that doesn't mean that you can't -- that you can sit back
 9   there and relax and not listen to what's going on.  You have to
10   listen to all the questions, because later on I may ask you to
11   come up and take the seat of one of the jurors here, and if I
12   do that, the first question I'm going to ask you is, have you
13   heard all the other questions and is there anything you should
14   call to our attention, would your answers be any different?
15   Can't answer that unless you've been hearing and listening to
16   the questions and thinking what your answers would be.  So I'm
17   going to ask you to pay very close attention.  Remember you're
18   still part of this jury, so if anything is said that you don't
19   hear or you want repeated, raise your hand and let us know.
20   You with us on that?  Even though I'm not going to be asking
21   you questions directly, keep me informed, okay?
22          Okay.  To the 14 in the jury box here, ladies and
23   gentlemen, the case before the court today -- just a second --
24   is labeled Strategic Partners versus Vestagen Protective
25   Technologies.  What I'm going to do at this time is tell you a
```

1    little bit about what the case is.  I'm going to read you a

2    statement of the case, and then we're going to introduce some

3    people to you.

4         The plaintiff, Strategic Partners, alleges that the

5    defendant, Vestagen Protective Technologies, made false and

6    misleading claims about the health benefits of their hospital

7    scrubs in an advertisement to customers and engaged in unfair

8    competition.  Vestagen, the defendant, has a counterclaim

9    alleging that Strategic Partners engaged in false claims about

10   their hospital scrubs in an advertisement to consumers.

11   Vestagen also asserts that Strategic Partners misappropriated

12   Vestagen's trade secrets and breached a contract between the

13   two parties.  Both parties deny the allegations made against

14   them.

15        So that's what the case is about.  At this time I'm going

16   to have each side introduce the people that will be involved in

17   the case and any witnesses.  I'm going to ask you to listen

18   very carefully to these names.  The reason we're introducing

19   all these people to you is to see if you know any of these

20   people before we get started.

21        So, Counsel?

22        MS. HANNA:  Thank you, Your Honor.

23        Good morning.  My name is Mona Hanna.  I'm from the law

24   firm of Michelman & Robinson, and my colleague is Seth

25   Darmstadter.  We'll be representing Strategic Partners in this

```
 1   case.
 2        We'll be calling the following witnesses.  We're going to
 3   be calling Marc Lessem.  He is the chief marketing officer for
 4   Vestagen.  We're going to be calling JD Spangler, the former
 5   chief commercial officer for Vestagen.  We'll be calling Renata
 6   Ritcheson.  She is Strategic Partner's director of marketing
 7   research, and she is with us today.  We're going to be calling
 8   Mr. Mike Singer.  He is the founder and CEO of Strategic
 9   Partners.  We'll also be calling Diane Raines.  She is the
10   chief nursing officer of Baptist Hospital in Jackson, Florida.
11        We'll be calling experts -- sorry, lost my place.  David
12   Weiner, forensic accountant.  We'll be calling Bruce -- I'm
13   sorry.  We'll be calling David Weiner.  We'll be calling -- I'm
14   sorry -- Dawn Clarke, the chief technology officer for
15   Vestagen, Amber Mitchell, the chief regulatory officer for
16   Vestagen.  We'll also be calling Steve Roth, a consumer survey
17   expert from New York, and we'll be calling Dr. John Mitchell, a
18   microbiologist from Bozeman, Montana.
19             THE COURT:  Okay.  Thank you, Counsel.
20             MS. HANNA:  I'm sorry, one more witness I forgot.
21             THE COURT:  Sure.
22             MS. HANNA:  David Frattarelli.  He is the research
23   leader from Dow Chemical, and he'll be coming in from
24   Pennsylvania.  And that's it.
25             THE COURT:  Thank you very much, Counsel.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                  MS. HANNA:  Thank you.

 2                  THE COURT:  Okay.  Defense, cross-claim?  And you can

 3      do it from there, Counsel.  You don't have to approach the

 4      podium if you don't want to.

 5                  MS. HIGHTOWER:  All right.  Thank you very much.

 6          My name is Sharon Hightower, and I represent Vestagen

 7      Protective Technologies, Inc.

 8          I will be calling four witnesses.  You've heard some of

 9      these names previously.  One of them is Ben Favret, who is the

10      current president and founder of Vestagen.  We will be calling,

11      or you will be hearing testimony from Diane Raines, who you

12      have heard was a vice president and is a nurse with Baptist

13      Health.  We will be calling a Dr. Bruce Isaacson, who is with

14      MMR Strategy here in California.  He will be talking to you

15      about a survey.  And we will be calling Dr. Bruce Strombom, who

16      is with Analysis Group here in California, and he will be

17      talking to you about finances.

18          Thank you.

19                  THE COURT:  Okay.  And as to the cross-claim, Counsel.

20                  MR. VERDE:  Good morning.  My name is Vince Verde.  I

21      also represent Vestagen, on the cross-complaint.

22          We'll be calling a number of witness as well.  Again, we

23      will be calling Mr. Ben Favret, who was introduced to you.

24      We'll also be calling Michael Singer, who is the leader of SPI.

25      We will be calling other SPI, or Strategic Partners, Inc.,
```

1    witnesses.  They will be Renata Ritcheson, who was involved in

2    their marketing.  A former employee by the name of Wendell

3    Mobley, who is also a former employee, member of marketing.

4    Their CEO -- or sorry, the chief financial officer we'll be

5    calling, Mr. Bob Pierpoint.  We will also be calling an

6    individual by the name of Vickie Nellor, who is head of their

7    production.  You will hear from Bill Bold, who is also the CEO

8    of Vestagen.  You'll also hear from an individual by the name

9    of Kevin Tapalaga, who was a member of the board of directors

10   of Strategic Partners, Inc., and an expert by the name of

11   Skip Palenik, who will be talking to you about antimicrobial

12   properties.

13          THE COURT:  Okay.  Thank you very much, Counsel.

14       Now, ladies and gentlemen, we've introduced all the

15   witnesses and potential witnesses.  Some may or may not be

16   called.  This, by the way, is going to be about a three- to

17   four-day -- well, probably take about a week.  We'll probably

18   finish Friday or first day of next week on it.  But these are

19   all the potential witnesses that may be called.  And the reason

20   we asked you that is so we could ask this next question.  I've

21   told you a little bit about what the case is, the case

22   involves.  We've introduced the parties, we've introduced the

23   witnesses to you.  Does anybody in the jury know anything about

24   this case or any of the people involved in this case whose

25   names have been mentioned to you?

```
 1              PROSPECTIVE JUROR:  No.

 2              PROSPECTIVE JUROR:  No.

 3         THE COURT:  Okay.  I got about 20 percent of you that

 4    responded to that.  Let me talk to you a little bit about it.

 5         There's two ways to ask questions.  I can ask specific

 6    questions of each juror, or I can ask general questions in

 7    appropriate situations.  If we go through the questions, each

 8    question with each juror, we may have you out by Thanksgiving.

 9    Or we can ask general questions and proceed very quickly.  Now,

10    the problem with that is, we ask general questions, I have to

11    get a response from everybody, all 14 of you.  So either say

12    "yes," "no," jump up, raise your hand, something to indicate

13    what your response would be.  And also to let me know that

14    you're just not over there sleeping.  So, you know, give me a

15    response.  And if we do that, then we can do it by general

16    questions.  If we can't do it that way, we have to do it by

17    specific questions.  So with that understanding, let me go

18    through that one more time.

19         Of the 14 of you, does anybody know anybody involved in

20    this case or anything about this case at all?

21              MULTIPLE PROSPECTIVE JURORS:  No.

22              PROSPECTIVE JUROR NO. 14:  Yes.

23              THE COURT:  Yes.

24              PROSPECTIVE JUROR NO. 14:  I have a client that works

25    at Michelman & Richards, the law firm.  Other than that --
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                THE COURT:  Let me just ask you a couple questions
 2    about that.  He works in the law firm that's trying the case
 3    today?
 4                PROSPECTIVE JUROR NO. 14:  Correct.
 5                THE COURT:  Do you talk to that person about his
 6    cases?
 7                PROSPECTIVE JUROR NO. 14:  No.
 8                THE COURT:  And would that influence you one way or
 9    the other?
10                PROSPECTIVE JUROR NO. 14:  No, it wouldn't.
11                THE COURT:  So you can decide for that side or against
12    that side?
13                PROSPECTIVE JUROR NO. 14:  Correct.
14                THE COURT:  It wouldn't bother you one way or the
15    other?
16                PROSPECTIVE JUROR NO. 14:  That's correct.
17                THE COURT:  Okay.  Thank you very much.
18         You know, since it appears that most of you, when you did
19    not answer, maybe have not -- well, let me ask you this
20    question.  How many of you have sat through a jury trial until
21    and through deliberation?  Can you raise your hands.
22         One person out of 14.  Okay.  Then let me assume that some
23    of you aren't that familiar with the process and talk to you a
24    little bit about the process, tell you why we're asking
25    questions and where we're going on this.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    Let's start with what -- if you're picked as jurors, what

2    the duty of a jury is.  It's very simple.  The first duty is,

3    you must determine what the facts of this case are.  Well, how

4    are you going to do that?  You've already told me you don't

5    know a thing about this case.  Well, the law is very clear.  It

6    says you must determine what the facts are from and only from

7    the evidence that is presented to you during the trial.  Again,

8    that sounds good, but then next question's, well, what's

9    evidence?  Evidence is defined as really three things.  It's

10   the testimony of the witnesses here under oath; any exhibits

11   that is received during the course of the trial into evidence;

12   and any agreement of counsel, stipulation or agreement of

13   counsel as what the facts are.  Those three things, and only

14   those three things, you're to use to determine what the facts

15   of the case are.

16       I guess maybe the best way to explain that is, I'm

17   assuming most of you have done or participated in putting

18   together jigsaw puzzles.  You know what you do on those.  You

19   take the box, you throw it out on the table and you put all the

20   pieces out there and you put the box top up there and you start

21   putting things together.  It's important that you realize,

22   nobody's asking you what's on that box top.  You know, they may

23   have put a puzzle of a boat in a dog box or whatever it is.

24   Nobody's asking what's on that box top.  What we're asking you

25   is what is pictured when you put all the pieces of the puzzle

together.  I know this sounds a little technical, but nobody's

asking you what happened on a certain date, at a certain time,

at a certain place.  We're asking you what does the evidence

show happened at a certain date, at a certain time, at a

certain place.  It's very objective.  Just tell us what the

evidence says.  If the evidence doesn't say it, you can't

assume that it's there.  You have to go just on what the

evidence says.  And it's not important what you want the

verdict to be, you know, what you like to have those pieces

say.  You just tell us what -- it's a very humbling experience

being a juror, because nobody really cares what you think as

far as what's right or -- what we're asking you to do is to

tell us what does the evidence say are the facts, and tell us

what those facts are, whether you like them or not.  So that's

the first duty you have as a juror.

        The second duty you have as a juror is to apply the law

that I give to you at the end of the case.  Now, you might like

the law, you might not.  If you don't like it, go up to

Sacramento and change it or go back to Washington and change

it, but it has to be the law that I give you at the end of the

case.  And the reason is, if we had ten people saying, well,

what would you like the law to be, you'd have ten different

answers on it, and there'd be no continuity.  So for the

purpose of the jury trial, we're asking you, looking at these

facts and applying this set of rules I'm giving you, whether

1    you like those rules or not or whether you think they're right

2    or not, applying those rules, what's your verdict if you apply

3    that to the facts that you hear here in court.  And so the

4    second, the other line of questioning is, can you follow that,

5    not only limit yourself on the evidence -- or to the evidence

6    as to what the facts are, but also apply the law that I give to

7    you, whether you like it or not.

8        You know, strange enough, we've had -- on the jury we've

9    had judges that have sat on the jury, and I'll ask them, "Now,

10   can you follow the law that I give to you, whether you think

11   that's right or wrong?"  And of course, they know.  They'll

12   say, "Yes, of course I can," because we understand that each

13   case has to be decided by one set of rules, whatever those

14   rules are.

15       Okay.  Does that make sense so far?

16           MULTIPLE PROSPECTIVE JURORS:  Yes.

17           THE COURT:  Okay.  I told you I'd be asking general

18   questions, and I will as much as possible, but I want to ask --

19   break from that and ask specific questions of each one of you

20   first, and I'm going through each member of the jury.  The

21   questions aren't that hard.  I think you'll be able to figure

22   out the answers without too much trouble.

23       One is, what's your name?

24       Second one is, what area do you live in?  I don't want the

25   street address, but just what area.  You know, what city you

 1    live in.  If you live in L.A., give us a little bit more than

 2    that.  Give us east L.A. or west L.A. or north, whatever.

 3         The third question would be, what is your occupation?

 4    Now, let's get the rules set here.  If your occupation is that

 5    you're retired now, don't tell me that, because that just makes

 6    me jealous.  Tell me what your occupation was before you

 7    retired, okay?

 8         And the last question is, is there anybody that lives in

 9    the home that works outside the home, and if so, what is their

10    occupation?

11         Those are going to be the four questions I'm going to ask

12    you, but then I'm going to ask you probably some follow-up

13    questions.  Don't want anybody to take it personally.  Most of

14    the follow-up questions I will be asking you is really to kind

15    of pre-instruct or to instruct the jury as to what the law is,

16    et cetera, so I'm going to be using you as a springboard

17    sometimes.  So don't take anything that I ask you personally.

18    Understand I might be using that as a teaching tool.  Okay?

19         Okay.  Let's start with Juror No. 1.  What is your name,

20    please?

21              PROSPECTIVE JUROR NO. 1:  Jamie Ramirez.

22              THE COURT:  And what area do you live in?

23              PROSPECTIVE JUROR NO. 1:  Los Angeles.

24              THE COURT:  What part?  East?

25              PROSPECTIVE JUROR NO. 1:  East.

```
 1              THE COURT:  South?

 2              PROSPECTIVE JUROR NO. 1:  East.

 3              THE COURT:  East Los Angeles?

 4         Occupation?

 5              PROSPECTIVE JUROR NO. 1:  Medical assistant.

 6              THE COURT:  Medical assistant?

 7              PROSPECTIVE JUROR NO. 1:  (Nods head up and down.)

 8              THE COURT:  And anyone in the home that works outside

 9    the home?

10              PROSPECTIVE JUROR NO. 1:  No.

11              THE COURT:  Okay.  Now, I know you haven't heard very

12    much at all, but you understand a little bit of what the case

13    is worth -- or about.  You understand what your duty as a

14    juror is, you know, just to follow the evidence and determine

15    what the facts are only from that evidence, and apply the law

16    that I give to you at the end of the case.

17         Do you see any problems with you being a good juror and

18    being able to do that?

19              PROSPECTIVE JUROR NO. 1:  No.

20              THE COURT:  Do you think you could be a good juror in

21    this case?

22              PROSPECTIVE JUROR NO. 1:  Yes.

23              THE COURT:  Okay.

24         Next juror.

25              PROSPECTIVE JUROR NO. 2:  My name is Charlotte
```

```
 1   Chavarria.  I live in Rosemead.

 2              THE COURT:  Live in Rosemead?

 3              PROSPECTIVE JUROR NO. 2:  Yes, sir.

 4              THE COURT:  Okay.  Occupation?

 5              PROSPECTIVE JUROR NO. 2:  I'm a custody assistant

 6   sheriff at Towers.  I'm a custody assistant sheriff at Towers.

 7              THE COURT:  Okay.  And anyone in the home that works

 8   outside the home?

 9              PROSPECTIVE JUROR NO. 2:  Yes.  My father.

10              THE COURT:  And what type of work does he do?

11              PROSPECTIVE JUROR NO. 2:  Construction.

12              THE COURT:  Okay.  You've heard what the case is

13   about.  Is there anything about this case that you think might

14   cause you problems hearing this case?

15              PROSPECTIVE JUROR NO. 2:  No, sir.

16              THE COURT:  You feel that you could be a fair and

17   impartial juror to both sides?

18              PROSPECTIVE JUROR NO. 2:  Yes, sir.

19              THE COURT:  Okay.  Before you hand it to Juror No. 3,

20   let me go back to Juror No. 1 just for a second.

21        You work in the medical field; is that correct?

22              PROSPECTIVE JUROR NO. 1:  Yes.

23              THE COURT:  There may be medical testimony in this.

24   In fact, as you've heard, one of the subjects that we're going

25   to be discussing is medical scrubs and things like that.  It's
```

```
1    important that you realize that you're limited, as I said

2    before, to what the evidence shows here.  I can't have somebody

3    going back in the jury room and saying, "Well, gee, nobody

4    mentioned it, but let me tell you what really happens in the

5    real world."  It's gotta be from the evidence here.

6         So experiences that you've had or any knowledge that you

7    had, if it doesn't come from the court here, can you leave it

8    out of this case and just determine this on its own evidence?

9              PROSPECTIVE JUROR NO. 1:  Yes.

10             THE COURT:  Okay.  Perfect.  Can you pass it down to

11   Juror No. 3, please.

12             PROSPECTIVE JUROR NO. 3:  My name is Raymundo

13   Arellano.  I'm from south L.A.  Pastry chef.

14             THE COURT:  Okay.  Anyone in the home that works

15   outside the home?

16             PROSPECTIVE JUROR NO. 3:  No.

17             THE COURT:  Okay.  How about you?  You haven't heard

18   that much about it, but is there anything about this case or

19   the facts of this case or -- that would cause you problems

20   hearing this case?

21             PROSPECTIVE JUROR NO. 3:  No.

22             THE COURT:  And you think that you could limit

23   yourself only to what you hear in court?  Whether you like it

24   or not, you can tell us what the evidence says and determine

25   the facts?
```

```
1              PROSPECTIVE JUROR NO. 3:  Yes.

2              THE COURT:  Okay.

3         Next juror.

4              PROSPECTIVE JUROR NO. 4:  Yvette Mendez.

5              THE COURT:  Okay.  And area that you live in?

6              PROSPECTIVE JUROR NO. 4:  Los Angeles.  Koreatown.

7              THE COURT:  Okay.  And do you work -- excuse me.

8    What's your occupation?

9              PROSPECTIVE JUROR NO. 4:  I work at Target.  I work

10   overnight, stock merchandiser.

11             THE COURT:  Okay.  Is there anyone in the home that

12   works outside the home other than you?

13             PROSPECTIVE JUROR NO. 4:  My father.

14             THE COURT:  And what type of work does he do?

15             PROSPECTIVE JUROR NO. 4:  He's a cook, I think, in the

16   Sheraton.

17             THE COURT:  Okay.  Same question to you that we've

18   asked the other three:  Is there anything about this case that

19   you think would cause you a problem hearing a case like this?

20             PROSPECTIVE JUROR NO. 4:  No.

21             THE COURT:  Okay.  Nothing in your outside life that

22   you'd bring into this case?  What I'm saying is, is that it has

23   to be determined only on the evidence you receive here and not

24   experiences you had on the outside.  Do you understand that?

25             PROSPECTIVE JUROR NO. 4:  Yes.
```

```
1              THE COURT:  Okay.  And you could do that?

2              PROSPECTIVE JUROR NO. 4:  Yes.

3              THE COURT:  And whether you like the results or not,

4    you'll tell us where the cards fall?  You'll tell us this is

5    what the evidence is, this is what the facts are, and apply the

6    law?

7              PROSPECTIVE JUROR NO. 4:  Yes.

8              THE COURT:  Okay.

9         Next juror, please.

10             PROSPECTIVE JUROR NO. 5:  Hi.  My name is Yvette Pena.

11             THE COURT:  Okay.

12             PROSPECTIVE JUROR NO. 5:  I live in the San Fernando

13   Valley.

14             THE COURT:  Okay.  And occupation?

15             PROSPECTIVE JUROR NO. 5:  Healthcare recruiter for a

16   staffing agency.

17             THE COURT:  With what?

18             PROSPECTIVE JUROR NO. 5:  A staffing agency.

19             THE COURT:  Okay.  And anyone that lives in the home

20   that works outside the home?

21             PROSPECTIVE JUROR NO. 5:  Yes.

22             THE COURT:  Okay.

23             PROSPECTIVE JUROR NO. 5:  My father.  He works in

24   construction.

25             THE COURT:  In construction.  Okay.
```

```
1        Now, you're connected to the healthcare services, and
2   again, same thing.  We're going to be talking about material
3   that is used in healthcare services.  You have to just tell us
4   what the evidence says, not what you might have seen on the
5   outside.  You think you can do that?
6        PROSPECTIVE JUROR NO. 5:  Yes.
7        THE COURT:  Okay.  And you'll limit yourself just to
8   that evidence and not bring any outside experiences that you've
9   had?
10        PROSPECTIVE JUROR NO. 5:  Yes.
11        THE COURT:  Okay.  Perfect.
12      Next juror.
13        PROSPECTIVE JUROR NO. 6:  Name is John Warren.
14        THE COURT:  Okay.
15        PROSPECTIVE JUROR NO. 6:  I'm a scientist.
16        THE COURT:  Okay.  Let me -- what area do you live in?
17        PROSPECTIVE JUROR NO. 6:  Santa Barbara.
18        THE COURT:  Okay.  And anyone that works outside the
19   home?
20        PROSPECTIVE JUROR NO. 6:  My wife is a physician.
21        THE COURT:  A physician?  Okay.
22      What type of science are you in?
23        PROSPECTIVE JUROR NO. 6:  Physics.
24        THE COURT:  Physics?  Okay.
25      Two questions for you.  One is, your wife is -- your wife
```

1    is involved in the medical field.  Again, anything that you

2    might have heard or she has told you or anything else, if it

3    doesn't come out in evidence here, can you leave it out of this

4    case and just tell us -- you know, the duty is just to tell us

5    what the evidence says and determine the facts from the

6    evidence.  You can do that?

7            PROSPECTIVE JUROR NO. 6:  Yes, although if you're

8    bringing up scientific --

9            THE COURT:  Well, I'm going to get to that, next

10   question.

11           PROSPECTIVE JUROR NO. 6:  Okay.

12           THE COURT:  Right now we're just on your wife, okay?

13           PROSPECTIVE JUROR NO. 6:  No problem.

14           THE COURT:  Now, on scientific, that's the second

15   question I'm going to ask.  You know, if they don't bring

16   scientific evidence in, they don't bring it in.  And what we're

17   asking is, what does the evidence show?  You may know a lot

18   more, and they may not have brought in what you know, but we

19   can't try this case on what the jurors know, because it's not

20   cross-examined or anything else.  So yeah, that would be

21   difficult.  And what you'd have to do is, you'd have to say,

22   I'm not telling you what is or isn't out there in the real

23   world, I'm just telling you what your evidence says, and your

24   evidence says this or that.  That's all I'm telling you.  It

25   may be right, it may be wrong.  All I'm telling you is what the

1    evidence says.  Can you do that?  That's the question.

2              PROSPECTIVE JUROR NO. 6:  I will be struggling with

3    that.

4              THE COURT:  Let me ask you a question, then.  And I

5    appreciate that.  You know, everyone is going to have life

6    experiences, and some are going to affect you more.  Like yours

7    would, obviously.  What I want to make sure -- and I know you

8    said you'd struggle with it.  If, during the trial, you felt,

9    "Hey, I can't do this," you know, it would have -- "My personal

10   experiences would overtake that obligation," you're strong

11   enough to raise your hand and tell us, "Hey, I can't do that,"

12   and then we can correct the situation at that time?  Can you do

13   that?

14             PROSPECTIVE JUROR NO. 6:  Certainly.

15             THE COURT:  Okay.  Well, just want to make sure.  I

16   don't want somebody saying, "Okay, I'm not going to say

17   anything."  If it'd cause a problem doing the obligation that

18   you have as a juror, you'd tell us?

19             PROSPECTIVE JUROR NO. 6:  I'll tell you.

20             THE COURT:  Okay.  If you could pass it to the next

21   juror, please.

22             PROSPECTIVE JUROR NO. 7:  Frank Hatzman.  Atascadero,

23   California.  Beautiful Central Coast.

24             THE COURT:  You're not with the Chamber of Commerce,

25   are you?

```
 1          PROSPECTIVE JUROR NO. 7:  No, I'm not.

 2          THE COURT:  Okay.  I'm just -- okay.

 3          PROSPECTIVE JUROR NO. 7:  I'm not, but there's only

 4   27,000 people in the whole town, so...

 5          THE COURT:  You are with the Chamber of Commerce,

 6   aren't you?

 7      Okay.  And your occupation?

 8          PROSPECTIVE JUROR NO. 7:  Gain maintenance supervisor

 9   for Chevron.

10          THE COURT:  Okay.  And what -- anybody that works in

11   home that works outside -- excuse me, lives in the home that

12   works outside the home?

13          PROSPECTIVE JUROR NO. 7:  Right.  Till October 31st,

14   my wife worked for PG & E as a mapping supervisor.

15          THE COURT:  Good.  And I'm not even going to ask what

16   happened after October 31st --

17          PROSPECTIVE JUROR NO. 7:  All right.

18          THE COURT:  -- because I don't want to hear.

19      You've heard everything we've asked everybody else.  Is

20   there anything that you can think of that would affect your

21   ability to do those twofold functions we've talked about?

22          PROSPECTIVE JUROR NO. 7:  No.  I -- I -- I've heard

23   before where people start talking about their feelings.

24          THE COURT:  Yeah.

25          PROSPECTIVE JUROR NO. 7:  And I don't have any.
```

```
 1              THE COURT:  So you're the computer that we need to
 2    tell us what the facts say, or are.  Okay.  So you think you
 3    can be fair to both sides and just tell us what the facts say?
 4              PROSPECTIVE JUROR NO. 7:  Well, I ain't named Frank
 5    for nothing.
 6              THE COURT:  Okay.
 7         Next juror.
 8              PROSPECTIVE JUROR NO. 8:  Hi.  I'm Shelly Deperalta.
 9    Live in Woodland Hills in San Fernando Valley.
10              THE COURT:  Okay.  Do you --
11              PROSPECTIVE JUROR NO. 8:  I'm a nurse practitioner.  I
12    work with the Department of Veterans Affairs.
13              THE COURT:  Okay.  And -- I'm sorry.  Anyone in the
14    home that works outside the home?
15              PROSPECTIVE JUROR NO. 8:  Yes.  My husband.  He's a
16    mechanical engineer.
17              THE COURT:  Okay.  Same question to you.  We've talked
18    to other people that are connected with the medical field, how
19    important it is that -- we're dealing with material that is in
20    the medical field, that anything you might know outside of
21    court, we're not interested in.  All we're interested in is
22    what does the evidence show here.
23              PROSPECTIVE JUROR NO. 8:  I completely understand.
24              THE COURT:  And you can do that?
25              PROSPECTIVE JUROR NO. 8:  Yes.
```

```
 1              THE COURT:  Okay.  Thank you very much.  I'm going to
 2    have you see if you can get that mic all the way down to the
 3    first person in the second row.
 4              PROSPECTIVE JUROR NO. 9:  Hi.  My name's Claudia
 5    Knittle.  I live in Monrovia, and I'm a stay-at-home mom, and I
 6    also have a part-time job in a retail store.
 7              THE COURT:  Okay.
 8              PROSPECTIVE JUROR NO. 9:  My husband is an
 9    entrepreneur and he has his own company.  It's a travel
10    company.
11              THE COURT:  Any of this deal with medical equipment
12    or --
13              PROSPECTIVE JUROR NO. 9:  No.
14              THE COURT:  Okay.  I mean, you've heard everything
15    else.  You know what issues have been raised, because it may or
16    may not affect their abilities.  Is there anything in your
17    background that we should know about?  That pertains to this
18    case.
19              PROSPECTIVE JUROR NO. 9:  No, I don't think so.
20              THE COURT:  Okay.  Sitting right there, do you feel
21    that you really could be a fair juror to either side?  You
22    don't have a leaning one way or the other and you could just
23    tell us what the evidence is?
24              PROSPECTIVE JUROR NO. 9:  Yes.
25              THE COURT:  Okay.
```

```
 1          Next juror.

 2              PROSPECTIVE JUROR NO. 10:  Daniel Gradin.  Ventura,

 3   California.

 4              THE COURT:  Okay.  And occupation?

 5              PROSPECTIVE JUROR NO. 10:  Designer.  Specifically,

 6   outdoor living areas.

 7              THE COURT:  Okay.  And anybody that lives in the home

 8   that works outside the home?

 9              PROSPECTIVE JUROR NO. 10:  No.

10              THE COURT:  Okay.  How about you?  We've heard a lot

11   of things that have been brought up, you know, experiences in

12   the medical field, scientific field, things like that.

13   Anything at all that you might bring into this trial?

14              PROSPECTIVE JUROR NO. 10:  None.

15              THE COURT:  And you feel you also would be a good

16   juror for either side?

17              PROSPECTIVE JUROR NO. 10:  Correct.

18              THE COURT:  Okay.

19          Next juror.

20              PROSPECTIVE JUROR NO. 11:  Hi.  My name is Melanie

21   Marin.  I live in Oxnard, California.

22              THE COURT:  I'm sorry, live where?

23              PROSPECTIVE JUROR NO. 11:  Oxnard.

24              THE COURT:  Oxnard?  Okay.  Not beautiful downtown

25   Oxnard, only has X number of people?
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1        Okay, go ahead.

 2             PROSPECTIVE JUROR NO. 11:  I am a claims analyst for

 3   Anthem Blue Cross.  My husband works as a notary public.

 4             THE COURT:  Okay.  Thank you.

 5        I don't know how much -- I don't know how much contact you

 6   have with the medical field or medical equipment or anything,

 7   but anything that you have heard or experienced outside dealing

 8   with medical equipment or medicine you can leave out of this

 9   case unless you hear it here in court?

10             PROSPECTIVE JUROR NO. 11:  Yes.

11             THE COURT:  And do you also feel that you'd be a good

12   juror for either side?

13             PROSPECTIVE JUROR NO. 11:  Yes.

14             THE COURT:  Okay.

15        Next juror.

16             PROSPECTIVE JUROR NO. 12:  I'm Lia Donovan-Jones.  I

17   am a high school music teacher.  My husband is a composer.

18             THE COURT:  Okay.

19             PROSPECTIVE JUROR NO. 12:  And I live in Pasadena,

20   California.

21             THE COURT:  Okay.  How about you?  What should we know

22   about you?

23             PROSPECTIVE JUROR NO. 12:  Nothing.

24             THE COURT:  Any experiences, anything at all that

25   would affect your ability to hear this case?
```

```
 1              PROSPECTIVE JUROR NO. 12:  No, sir.

 2              THE COURT:  And you really feel that you could tell us

 3    what the evidence is, what the facts are, whether you like it

 4    or not?

 5              PROSPECTIVE JUROR NO. 12:  Yes, sir.

 6              THE COURT:  And you could apply the law whether you

 7    like it or not?

 8              PROSPECTIVE JUROR NO. 12:  Yes.

 9              THE COURT:  Okay.  Thank you.

10         Next juror.

11              PROSPECTIVE JUROR NO. 13:  My name is Kinyah Dixon.  I

12    live in Los Angeles, in the Wilshire area.  I am a

13    safety/compliance officer.  We're a contractor.  We work at

14    Cedars-Sinai.  I work in parking.

15              THE COURT:  Okay.  Anyone in the home that works

16    outside the home?

17              PROSPECTIVE JUROR NO. 13:  Yes.  My husband.  He is a

18    facilities maintenance supervisor where we live.

19              THE COURT:  Okay.  How about you?  Experiences

20    outside -- I'm assuming in your job -- I don't know how much

21    exposure you have to medical equipment or medical material, but

22    anything that you've had in your life that you think might come

23    into this trial?

24              PROSPECTIVE JUROR NO. 13:  Not sure.

25              THE COURT:  Okay.  Do you have much exposure to or
```

1    experience with medical material?

2             PROSPECTIVE JUROR NO. 13:  A little.

3             THE COURT:  Okay.

4             PROSPECTIVE JUROR NO. 13:  A little.

5             THE COURT:  Now, they're going to be talking about

6    scrubs.  They're going to be talking about garments.  It may or

7    may not coincide with your experiences.  You have to leave your

8    experience out of it and just say, what does the evidence show,

9    what does the evidence say happened, and I'm going to give a

10   verdict that says this is what the evidence says.  Whether it's

11   true or not, this is what the evidence says.  Can you do what?

12            PROSPECTIVE JUROR NO. 13:  I'll try.

13            THE COURT:  Okay.  Same question I asked the gentleman

14   back there:  If anything happens where you feel you can't do

15   it, will you raise your hand and let us know?

16            PROSPECTIVE JUROR NO. 13:  I will, yes, sir.

17            THE COURT:  Okay.  I thought so.  Other than that --

18   you just think you're off the hook.  Other than that, is there

19   anything else that you can think of as to why you could not be

20   fair to both sides?

21            PROSPECTIVE JUROR NO. 13:  No.

22            THE COURT:  Okay.  Okay, now you're off the hook.

23        Next juror.

24            PROSPECTIVE JUROR NO. 14:  My name is Charlie

25   Hutchinson, and I live in crowded Hollywood.

```
 1              THE COURT:  Okay.

 2              PROSPECTIVE JUROR NO. 14:  I'm a financial advisor.

 3              THE COURT:  I could tell you're not with the Chamber

 4    of Commerce.  Okay.

 5              PROSPECTIVE JUROR NO. 14:  I'm a financial advisor.

 6              THE COURT:  Okay.  Anyone in the home that works

 7    outside the home?

 8              PROSPECTIVE JUROR NO. 14:  My wife is in public

 9    relations, public -- so she does work.

10              THE COURT:  Okay.  After the 14 jurors, you have a

11    pretty good sense as to, first of all, what the case involves,

12    and number two, what we're really looking for to find a fair

13    and impartial juror that will give both sides a fair trial and

14    just tell us what the facts are, only from the evidence you

15    receive here in court, and then you apply the law that I give

16    to you at the end of the case.  So you know pretty much what

17    your duty is, you know where we're going, you know the

18    questions that we have.  What do you think?

19              PROSPECTIVE JUROR NO. 14:  I think I can be a fair

20    juror.  My only conflict is I'm leaving next Friday on an

21    airplane, which is nine days from now.  And so I want to serve,

22    but I am getting on a plane next Friday morning.

23              THE COURT:  I can tell you this case should end,

24    hopefully, maybe this week, but it certainly would end the

25    first day of next week or --
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1          PROSPECTIVE JUROR NO. 14:  I'm happy to serve if you

2     think that's fair.

3          THE COURT:  Yeah.  Yeah.  I can't imagine this going

4     over more than that.  I've talked to the attorneys about it.

5     It should be about a three- to four-, maybe a five-day case,

6     maximum.

7          PROSPECTIVE JUROR NO. 14:  Okay.

8          THE COURT:  Okay?

9          Okay.  Let's ask some general questions, and this is kind

10    of -- this is kind of challenging because we have to get the

11    mic to the person who's talking.  So it's going to be a little

12    logistical problem, but we have to get the person who's talking

13    on the mic so that she can take down everything that's said.

14         We have asked some of these questions individually, and if

15    we have, you don't have to repeat them, but if there's

16    something to add, we want to know that.

17         As far as experiences go, we've had several people that

18    talked about medical experience or exposure.  Is there anybody

19    other than has already been heard here that has had exposure to

20    or have any knowledge of the medical field, particularly

21    dealing with material that's used?  In this case we're talking

22    about scrubs or --

23         Yes.  And let's get the mic down, yeah.

24         PROSPECTIVE JUROR NO. 12:  I personally do not have

25    experience, but my brother, who I'm very close with, is a medic

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   in the army.
 2           THE COURT:  Okay.  And does he ever talk about his --
 3   I'm assuming he talks about his profession.  Does he ever talk
 4   about -- one of the things they're going to be talking about
 5   is, is the production of material and how it may or may not
 6   affect bacteria, et cetera.  Has he talked about anything along
 7   those lines to you?
 8           PROSPECTIVE JUROR NO. 12:  No, sir.
 9           THE COURT:  Okay.  And you have no experience in that
10   area at all?
11           PROSPECTIVE JUROR NO. 12:  No.
12           THE COURT:  Okay.  And if you did, you'd leave it out
13   of this case?
14           PROSPECTIVE JUROR NO. 12:  Correct.
15           THE COURT:  Okay.
16       Anybody else that's had experience that way?
17       Let's get it back to Juror No. 8, please.  Yes.
18           PROSPECTIVE JUROR NO. 8:  So I work in a hospital, and
19   I'm absolutely exposed to scrubs.  I wear scrubs myself, and
20   I'm exposed to individuals wearing scrubs all around me.
21           THE COURT:  Okay.  And, you know, I talked to you a
22   little bit about that before, but that's where we're going at.
23   Understanding now what I've just talked to you about, again,
24   you realize how important it is, as I was talking to the
25   gentleman before you, that this case is decided on the evidence
```

```
 1    that's presumed -- or presented in this case.  Again, we're not
 2    asking you whose face is on that box, we're asking you what do
 3    the pieces say when you put them together.  So that's what
 4    we're interested in, is what does the evidence say the facts
 5    are.  That means you have to leave out anything that you might
 6    have experienced in the outside and saying, "Well, that must be
 7    true because it happened to me."  You understand that?
 8              PROSPECTIVE JUROR NO. 8:  I don't have any negative or
 9    positive feelings about scrubs.  I just put them on and take
10    them off, and that's it.
11              THE COURT:  Okay.
12              PROSPECTIVE JUROR NO. 8:  That's the extent of it,
13    so --
14              THE COURT:  Okay.  Well --
15              PROSPECTIVE JUROR NO. 8:  I know nothing about the
16    material or the --
17              THE COURT:  Okay.  And if something comes out where --
18    and I know, I understand that, but if something comes out and
19    you say, "Well, gee, that didn't happen to me or this didn't
20    happen to me," you're going to have to leave that out and just
21    tell us what the evidence says.  You can do that?
22              PROSPECTIVE JUROR NO. 8:  Yes, absolutely.
23              THE COURT:  Okay.  Thank you.
24              PROSPECTIVE JUROR NO. 8:  I don't work in a operating
25    room, so my scrubs do not get dirty.  It's outside the
```

```
 1    operating room.

 2            THE COURT:  Okay, that's great.

 3        Anybody else?

 4        Does anybody have, other than the gentleman we talked

 5    about, experience or training in the scientific fields?

 6    Because we're going to have scientific testimony as to what

 7    things can happen, what things can't.  Anybody?  Other than the

 8    gentleman we talked to?

 9        Okay.  One of the things we're going to be talking about,

10    and allegations, is whether or not there's false advertising.

11    Anybody works in advertising, that business at all?

12            MULTIPLE PROSPECTIVE JURORS:  No.

13            THE COURT:  Let's get this one.  Anybody have any

14    experience or knowledge in the area of law, maybe been to law

15    school or something like that?

16            MULTIPLE PROSPECTIVE JURORS:  (Shook head from side to

17    side.)

18            THE COURT:  Has anybody on the jury been involved with

19    anything that has to do with advertising or allegations of

20    false advertising?  Either been accused yourself of it or have

21    been a victim of false advertising, anything along those lines?

22            MULTIPLE PROSPECTIVE JURORS:  (Shook head from side to

23    side.)

24            THE COURT:  Anybody been affected or feel they've been

25    affected by what they consider is false advertising?
```

1      PROSPECTIVE JUROR NO. 13:  Mm-hmm.

2      THE COURT:  Okay.  Juror No. 13.  Let's get the --

3  there you go.

4      PROSPECTIVE JUROR NO. 13:  Well, there's been a number

5  of items and products that I purchased that I feel weren't safe

6  for me to use.

7      THE COURT:  Okay.  And understanding that -- you know

8  the questions I'm going to ask, and that is, that the problem

9  that you've had with things that were advertised one way and

10  didn't come up that way, can you leave that out of this case

11  and just say whether or not anything was proved in this case?

12  That's the only thing we're asking, what does the evidence show

13  in this case.

14      PROSPECTIVE JUROR NO. 13:  I could do that --

15      THE COURT:  Okay.

16      PROSPECTIVE JUROR NO. 13:  -- but like I say at work,

17  when you work you have to use some of your interpersonal skills

18  when you work.

19      THE COURT:  Yeah.

20      PROSPECTIVE JUROR NO. 13:  So it might be hard for me

21  not to be honest.

22      THE COURT:  Okay.  Well, no, and I appreciate that.

23  In fact, that's an honest response.  To be honest with you,

24  probably everybody would give that same response if they're

25  being honest.  That's why I thought it was so important that if

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    you felt it would get in your way of doing your duty, you could

2    tell us.  And you said you'd have no problem with that; is that

3    correct?

4                PROSPECTIVE JUROR NO. 13:  I'm gonna be honest.

5                THE COURT:  That's what I want you to be.  But what I

6    want to know is, are you strong enough to raise your hand and

7    say, "Hey, I can't do this"?

8                PROSPECTIVE JUROR NO. 13:  I am, yes.

9                THE COURT:  Okay.  I mean, "Yes, it would affect my

10   ability and what I know on the -- I can't do this."

11               PROSPECTIVE JUROR NO. 13:  Because I am a major critic

12   for a lot of -- a number of things.

13               THE COURT:  Okay.

14               PROSPECTIVE JUROR NO. 13:  I am a critic.

15               THE COURT:  Okay.  But if for some reason you say, "I

16   just can't stick with the evidence, I'd go outside the

17   evidence," you're strong enough to raise your hand and say,

18   "Hey" --

19               PROSPECTIVE JUROR NO. 13:  Yes.  I sure will, yes,

20   sir.

21               THE COURT:  I suspected that you were.

22               PROSPECTIVE JUROR NO. 13:  That's my word.

23               THE COURT:  Anybody else on that topic?

24        Has anyone been involved with lawsuits that dealt with

25   contract interpretations or breach of contract, anything like

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    that?
 2         Okay.  Let's get the microphone back to Juror No. 7 -- 6.
 3         One of the allegations here is a breach of contract, so
 4    what we'd be asking is, whatever your experience was with your
 5    breach of contract, or alleged breach of contract, that action
 6    you could leave out of this case and hear this case just on
 7    what was proved by the evidence in this case?
 8              PROSPECTIVE JUROR NO. 6:  Yes.
 9              THE COURT:  So you wouldn't let that affect you?
10              PROSPECTIVE JUROR NO. 6:  No.
11              THE COURT:  Anybody else?
12         How about anybody been involved with in their business or
13    friends or relatives that have been affected by the allegation
14    that trade secrets were given over to somebody else?  Anybody
15    along those lines?
16              MULTIPLE PROSPECTIVE JURORS:  No.
17              THE COURT:  Okay.  General questions.
18         Has any of the 12 -- or 14 of you in the last 10 years or
19    so sued or been sued in court?
20              MULTIPLE PROSPECTIVE JURORS:  No.
21              PROSPECTIVE JUROR NO. 6:  (Raises hand.)
22              THE COURT:  Yes?  On that contract?  No, I'm not --
23              PROSPECTIVE JUROR NO. 6:  (Nods head up and down.)
24              THE COURT:  So that contract dispute did go to court?
25              PROSPECTIVE JUROR NO. 6:  It did indeed go to court.
```

1   THE COURT:  Okay.  I guess the answer would be the

2   same, but let me ask you.  Anything about that procedure, that

3   court procedure, that you'd bring into this case?

4   PROSPECTIVE JUROR NO. 6:  I would not bring it into

5   this case.

6   THE COURT:  Okay.  So you could be fair to either side

7   in this case even though you've been through that experience?

8   PROSPECTIVE JUROR NO. 6:  Yes.

9   THE COURT:  Okay.

10   Okay.  You've told me before, how many people -- and I

11   forget who it was.  How many people have served through

12   deliberation?

13   PROSPECTIVE JUROR NO. 6:  *(Raises hand.)*

14   THE COURT:  You just like me to talk to you, don't

15   you?

16   PROSPECTIVE JUROR NO. 6:  No, actually.

17   THE COURT:  Okay.  What type of case was it?  It was a

18   civil case or a criminal case?

19   PROSPECTIVE JUROR NO. 6:  Criminal case.

20   THE COURT:  Okay.

21   PROSPECTIVE JUROR NO. 6:  Two cases.

22   THE COURT:  Nothing to do with something like this,

23   I'm assuming?

24   PROSPECTIVE JUROR NO. 6:  No.

25   THE COURT:  Okay.  I couldn't figure out what --

```
 1              PROSPECTIVE JUROR NO. 6:  Drugs and financial issues.

 2              THE COURT:  Okay.  In that case, as you were

 3    instructed, there is a burden of proof beyond a reasonable

 4    doubt, a very high standard.  For the government to prevail,

 5    they had to show, if they could, that somebody was guilty of an

 6    offense beyond a reasonable doubt.

 7         This is a civil case.  The burden of proof is not beyond a

 8    reasonable doubt.  The burden of proof is preponderance of the

 9    evidence.  You know, one side proves their case by 51 percent,

10    they take the marbles and go home.  I mean, it's tilting the

11    scale.  It's a burden of proof of by a preponderance of the

12    evidence.

13         You understand that distinction?

14              PROSPECTIVE JUROR NO. 6:  As you explain it to me,

15    yes.

16              THE COURT:  Yeah.  Yeah.  And I guess my question is,

17    is that you could apply the burden of proof that I give you in

18    this case rather than going back to that other case, the

19    criminal cases that you've had?

20              PROSPECTIVE JUROR NO. 6:  Correct.

21              THE COURT:  Okay.  Were they able to reach a verdict

22    in those criminal cases?

23              PROSPECTIVE JUROR NO. 6:  Convicted in both cases.

24              THE COURT:  Okay.

25         Okay.  Anybody else had any jury duty experience at all?
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              PROSPECTIVE JUROR NO. 8:  (Raises hand.)

 2              THE COURT:  Ladies and gentlemen, I'm going to be

 3    talking to the attorneys --

 4              PROSPECTIVE JUROR NO. 6:  Got one.

 5              THE COURT:  Oh, I didn't see.

 6              PROSPECTIVE JUROR NO. 8:  I do have a jury duty

 7    experience, but your question was did it reach deliberations,

 8    and I --

 9              THE COURT:  I did, but let me get into it anyway.  So

10    you were on a jury duty before, but you never deliberated on

11    the case?

12              PROSPECTIVE JUROR NO. 8:  Correct.

13              THE COURT:  Were you picked as a juror so you heard

14    all the evidence?

15              PROSPECTIVE JUROR NO. 8:  Yes.

16              THE COURT:  Did you hear the instructions the judge

17    gave you on the case?

18              PROSPECTIVE JUROR NO. 8:  Yes, but the case was thrown

19    out because of --

20              THE COURT:  Okay.

21              PROSPECTIVE JUROR NO. 8:  -- technical issues with the

22    police officer, how he interrogated.

23              THE COURT:  Okay.  So it never got to the jury?

24              PROSPECTIVE JUROR NO. 8:  Correct.

25              THE COURT:  Was that a criminal case or a civil case?
```

1      PROSPECTIVE JUROR NO. 8:  It was a drug case.

2      THE COURT:  Okay.

3      PROSPECTIVE JUROR NO. 8:  That would be criminal?

4      THE COURT:  Same question -- yeah.  The burden of

5  proof there was beyond a reasonable doubt, and it was a

6  allegation of the government that somebody committed a crime.

7      PROSPECTIVE JUROR NO. 8:  Yes.

8      THE COURT:  Different standard of proof.  This one's

9  just preponderance of the evidence.  This is one person against

10  another person.

11      PROSPECTIVE JUROR NO. 8:  Yes.

12      THE COURT:  And you understand that?

13      PROSPECTIVE JUROR NO. 8:  Yes.

14      THE COURT:  Okay.  Ladies and gentlemen, I'm going to

15  be talking to the attorneys over here at the side bench pretty

16  soon.  I just want to ask you really one question before I do

17  that, and it's really incorporating all the questions I've

18  already asked you.

19      What we want to make sure is that we have a jury that can

20  just tell us what does the evidence say the facts are, what

21  does the evidence prove the facts are in this case, and then

22  apply the law to that, and in that way, rendering a verdict in

23  which you're being fair to both sides.  You're not pressured to

24  go one way or the other, you're going to be fair to both sides

25  in applying that standard.  And that would make you a perfect

1    juror if you can do that.

2         So my question is this:  Do all of you feel that you can

3    do that, what I've just described, be the perfect juror by

4    doing that?

5              MULTIPLE PROSPECTIVE JURORS:  Yes.

6              THE COURT:  Okay.  Now, as I said, I'm going to be

7    talking to the attorneys over here at the side bench.  We're

8    going to be whispering.  We're going to turn the microphone

9    off.  You may not believe it, but we're whispering because we

10   don't particularly want you to hear what we're talking about.

11   I can tell you that if you did hear what were talking about,

12   you'd be bored to death.  It's got nothing to do with you or

13   the case.  I'm going to ask you to be quiet as we're doing

14   this.  And I'm assuming there's nobody that's going to try to

15   read lips or eavesdrop or anything like that.  Is that a good

16   assumption?  Okay.  And we will be back to you shortly.

17        Counsel, can I see you at the side bench.

18        (Proceedings at sidebar:)

19             THE COURT:  As we speak, if you could identify who you

20   are so that she -- she can't see you, so if you could identify

21   who you are so she knows who's talking.

22        The first question I have, is there any challenges for

23   cause, either side?

24             MS. HANNA:  Mona Hanna.  Pass for cause.

25             THE COURT:  Okay.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. VERDE:  Vince Verde.  Pass for cause.

 2              THE COURT:  Okay.

 3         Okay.  Second question is, peremptory challenge.  Each

 4    side's going to have four peremptory challenges.  We're going

 5    to pick eight to sit as a jury on this.

 6         Peremptory first is with the plaintiff.

 7              MS. HANNA:  One clarification.  Are we going first

 8    with 1 through 8 peremptories or --

 9              THE COURT:  Oh, yeah.  No, on peremptory challenges,

10    only exercise it to the first eight.

11              MS. HANNA:  Okay.

12              THE COURT:  Because after you get by the first eight,

13    why exercise a peremptory challenge if they're not even there

14    yet?

15              MS. HANNA:  That's what --

16              THE COURT:  So only as to the first eight, yeah.  The

17    challenges for cause is to everybody.

18              MS. HANNA:  Right.

19              THE COURT:  And by the way, if you pass on a

20    peremptory challenge, you don't lose it, so --

21              MS. HANNA:  Thank you.

22              MR. VERDE:  Unless they pass.

23              THE COURT:  I'm sorry?

24              MR. VERDE:  Unless they pass as well.

25              MS. HANNA:  Right.  Then we --
```

```
 1          MR. VERDE:  Unless they pass, and then we have a done
 2    deal.
 3          THE COURT:  Exactly.  Okay, you got it.
 4       Okay.  Peremptory's with the plaintiff.
 5          MS. HANNA:  Mona Hanna.  Pass.
 6          THE COURT:  You pass?
 7       Okay.  With the defense.
 8          MR. VERDE:  We'd like to thank and excuse number --
 9    No. 6.
10          THE COURT:  Number 6.  Okay.
11       Number 9 goes into No. 6's position.  Oh, No. 6.  I'm
12    sorry.  Number 9 goes into No. 6's position.
13       And so now the peremptory is as to the first eight,
14    including the new one.
15          MS. HANNA:  Thank you, Your Honor.
16       We'd like to thank and excuse Juror No. 6.
17          THE COURT:  The new --
18          MR. VERDE:  The new 6.
19          THE COURT:  Which is No. 9.
20          MS. HANNA:  The new -- Ms. Knittle.
21          THE COURT:  Okay.  That's the hot seat.  Okay.  Juror
22    No. 10 goes into Juror No. 6's seat.
23       So the peremptory now is with the defense.
24          MR. VERDE:  We'd like to thank and excuse No. 6.
25          THE COURT:  Okay.  Number 10 is excused, and No. 11
```

```
 1   goes into No. 6's spot, and we're back with the plaintiff.
 2          MS. HANNA:  We are going to thank and excuse No. 6,
 3   the new No. 6.  I'm sorry.
 4          THE COURT:  That's okay.
 5          MS. HANNA:  That was Mona Hanna.
 6          THE COURT:  That's okay.
 7          THE CLERK:  Running out of room.
 8          THE COURT:  Okay.  So now we have the new eight down
 9   here with the No. 6 being the original Juror No. 12.
10          MR. VERDE:  Pass.
11          THE COURT:  Pass?  Okay.
12      And with the defense.
13          THE CLERK:  Plaintiffs.
14          THE COURT:  Mm-hmm.
15          MS. HANNA:  Going to pass, Your Honor.
16          THE COURT:  Okay.  We have the jury.  And what I'm
17   going to do is, going to take a break, about 10, 15 minutes,
18   just to give them a restroom break.  Then I'm going to come
19   back and pre-instruct them, and then we'll go into opening
20   statements.
21          MS. HANNA:  Okay.
22          THE COURT:  And I'm assuming it'd be 15 minutes each?
23   Maybe 20 minutes.  Maximum 20 minutes.
24          MS. HANNA:  I thought you specifically said that that
25   didn't count.
```

```
 1              THE COURT:  No, no it doesn't count toward your
 2    overall time.  No, I'll tell you on opening statement and
 3    closing.  Otherwise, you could be six hours.  No, no.
 4              MS. HANNA:  Five and a half max.  I was only going --
 5              THE COURT:  You just convinced me, 15 to 20.  So you
 6    have 20 minutes on opening.
 7              MR. VERDE:  May I have 40 minutes, Your Honor?
 8              THE COURT:  I'm sorry?
 9              MR. VERDE:  May I have 40 minutes for my opening?
10              THE COURT:  You have 20 minutes.
11              MR. VERDE:  Forty.
12              THE COURT:  No.
13              MR. VERDE:  Thank you.
14              THE COURT:  But that was a good try.  I like your
15    spirits.
16              MS. HANNA:  Thank you.
17              THE COURT:  Thank you.
18              MR. VERDE:  Thank you.
19              MS. HIGHTOWER:  And mine is short.
20              THE COURT:  I like your spirit better than everyone
21    else's.
22              MS. HANNA:  Can I get a clarification as, will each
23    counsel get 20 minutes?
24              THE COURT:  No.  Twenty minutes total.
25              MS. HANNA:  So 10 and 10.
```

```
 1              THE COURT:  You have two sides here.  That would --

 2              MS. HANNA:  Okay.

 3              THE COURT:  -- determine it, yeah.

 4              MR. VERDE:  Your Honor, also, before we come back, my

 5   understanding is that plaintiff has two client representatives.

 6   Both of them are witnesses to my case.  I submit that they

 7   should have only one client representative.  Just an

 8   application to exclude all witnesses, that they be allowed to

 9   have a client representative, but it only be limited to one

10   rather than two.  Both of them are witnesses in the case.

11              THE COURT:  I'm going to grant that.  Either side can

12   have one.  Okay.

13        Also, you mentioned earlier about deposition testimony

14   that is taped deposition testimony.

15              MS. HANNA:  Yes.

16              THE COURT:  We go one way or the other.  If you have

17   the taped deposition, it would be introduced into evidence,

18   the --

19              MS. HANNA:  Okay.

20              THE COURT:  -- tape, and that's fine, but we wouldn't

21   be recording it.

22        If you want it recorded, then you're going to have to do a

23   written.

24              MS. HANNA:  I just want to make sure that it was part

25   of the evidence.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1          THE COURT:  Oh, yeah.

2          MS. HANNA:  Okay.

3          THE COURT:  Oh, yeah.  It would have to be.

4          MS. HANNA:  Exactly.  Thank you, Your Honor.

5          THE COURT:  Okay.  Thank you.

6          MR. VERDE:  Thank you, Your Honor.

7      *(In the presence of the prospective jurors:)*

8          THE COURT:  Okay.  I'm going to ask that the following

9      jurors, if you'd please just stand up for me.

10         Juror No. 6, Juror No. 9, Juror No. 10, Juror No. 11.

11     Okay, just make sure I got this right.  Okay.  The four of you

12     are excused to go back to the jury room at this time.  My

13     understanding, they might have another case, but you're excused

14     to go back to the jury room.  Wish we could keep you with us,

15     but we can't.

16         Now, as they leave, I'm going to have Juror No. 12, if you

17     could stand up, sir.  Or ma'am.  I'm sorry.  And go back to

18     seat No. 6.

19         Okay.  And at this time I'm going to have the eight jurors

20     in the back row please stand up and be sworn in.

21         THE CLERK:  Please raise your right hands.

22         Do you and each of you solemnly swear that you will well

23     and truly try the cause now before the Court and a true verdict

24     therein render according to the evidence and instructions of

25     this Court, so help you God?

```
1        (The jurors responded collectively in the affirmative.)

2            THE COURT:  Okay.  If you'd have a seat, please.

3        The remaining two jurors and the jurors out there, you're

4    also excused to go back to the jury room at this time.  Thank

5    you very much for being with us.  Appreciate it.

6            PROSPECTIVE JUROR NO. 13:  I gotta go?

7            THE COURT:  You can go.

8            PROSPECTIVE JUROR NO. 14:  Back to the jury room?

9            THE COURT:  Yes.

10       I can tell she wants to stay.

11       (The excused prospective jurors exited the courtroom.)

12           THE COURT:  Okay.  Ladies and gentlemen, as I said

13   before, this case should be fairly -- well, I've talked with

14   the attorneys on it.  It should be very effective, very

15   efficient.  I think you're going to see good attorney -- or

16   good lawyering on both sides, and I hope it will be a very good

17   experience for you.

18       Every time we break, I'll be reminding you, you're not to

19   discuss the case among yourselves or anybody else or form or

20   express any opinions about the matter until it is submitted to

21   you and you retire to the jury room.

22       You may say, "Well, that's kind of a weird instruction.

23   I'm the juror.  What do you mean I can't form or express any

24   opinions about the matter?"

25           The reason is, the way the jury system works out is that
```

1   the jurors together hear all the evidence, then go back and

2   hear the comments of all the other jurors before you form or

3   express your opinions on it.  Otherwise, you may express an

4   opinion and then just not listen to anybody else.  The whole

5   concept of the jury system is that after you've heard the

6   evidence and after you've shared your views with everybody

7   else, then what is your individual verdict on it?

8        I'm going to talk to you a little bit.  As I say, this

9   should be a fairly short case.  One of the things that we are

10  very strict on here -- there may be a little bit of exception

11  tomorrow, but almost exclusively, is the timing on it.

12       Starting tomorrow, we will start at 8:30 in the morning,

13  and we'll break at 4:00 o'clock in the afternoon.  We go from

14  8:30 until 11:30, then you'll have lunch from 11:30 to 1:00,

15  and then you come back and go from 1:00 until 4:00.  That gives

16  you a three-hour section in the morning, three-hour section in

17  the afternoon.

18       You may say, "Well, 8:30's awful early."  Used to be we'd

19  go from 9:00 until 4:30.  I've been told by most jurors you'd

20  rather get out at 4:00 o'clock because of traffic patterns, and

21  so in response to that, we go from 8:30 until 4:00.  I can

22  guarantee you, at 4:00 o'clock if the attorneys are halfway

23  through a question, I'm going to say, "Remember your question."

24  At 4:00 o'clock, I'm excusing this jury.  So you can make plans

25  of having anybody ready to pick you up, or any plans that you

1    have, you will be excused at 4:00 o'clock.

2        Now, as John Wooden used to say, it's as important to

3    start on time as end on time, those of you who are old enough

4    to remember who John Wooden is.  That means we start right at

5    8:30.  In Los Angeles we have a lot of problems with traffic

6    and people say we're late, et cetera.  I really ask you to be

7    in at 8:15, get a copy of coffee or whatever so that you won't

8    have that problem.  There's nothing more embarrassing than

9    coming in at 8:35 or 8:40 and have all the jurors sitting in

10   their jury box and the judge sitting here and the people

11   sitting here just waiting for you to walk in that door.

12   Because if you're 10 minutes late, that's 10 minutes of

13   manpower multiplied by the eight jurors and all the people in

14   this courtroom, and so we're wasting a huge amount of time, and

15   we can be much more efficient if we just run this on a time

16   clock and get you through so we get you through earlier.  If

17   you're late, that means the case is going to be late, it's

18   going to go over, you're going to be here longer.  So I'm going

19   to ask you for your cooperation on that.

20       Okay.  That's a little bit of housekeeping.  At this time

21   I'm going to excuse you for about 10 minutes, 15 minutes to do

22   whatever you have to do.  Come back in, I will give you some

23   preliminary instructions.  We'll hopefully get into at least

24   one of the opening statements before we break for lunch.  So

25   we'll break at this time.

1    THE CLERK:  All rise.

2    *(Recess held from 10:52 a.m. to 11:12 a.m.)*

3    *(In the presence of the jury:)*

4    THE COURT:  Okay.  The record will reflect that all

5    the jurors are in their respective seats in the jury box.

6    Ladies and gentlemen, I talked to you about the time

7    framing starting tomorrow.  Today is a little different because

8    we started late, so we'll be going to almost 12:00 today and

9    then come back at 1:30, but tomorrow we'll go on that more

10   regimented time period.

11   Members of the jury, you are now the jury in this case.

12   It is my duty to instruct you on the law.  It is your duty to

13   find the facts from all the evidence in this case.  To those

14   facts you will apply the law that I give to you.  You will

15   follow the law that I give to you whether you agree with it or

16   not.  You must not be influenced by personal likes or dislikes,

17   opinions, prejudice or sympathy.  That means that you must

18   decide this case solely on the evidence before you.  You will

19   recall that you just took an oath to do so.  At the end of the

20   trial, I will give you the final instructions.  It is the final

21   instructions that will govern your deliberations and duties.

22   Please do not read into these instructions or anything that I

23   may say or do that I have an opinion regarding the evidence one

24   way or the other.  That is a matter that is completely up to

25   you.

64

1          To help you follow the evidence, I will give you a brief

2     summary of the positions.

3          Strategic Partners asserts that Vestagen Protective

4     Technology engaged in false advertising and unfair business

5     practices and untrue and misleading advertisement, in violation

6     of the California and the U.S. codes.  Strategic Partners,

7     Incorporated, has the burden of proving these claims.

8          Vestagen Protective Technologies denies these claims and

9     also contends that Strategic Partners engaged in false

10    advertising, also is in breach of contract, and misappropriated

11    trade secrets.  Vestagen Protective Technologies has the burden

12    of proving these counterclaims.  Strategic Partners denies

13    Vestagen Protective Technologies' counterclaims.

14         Now, when a burden -- when a party has a burden of proving

15    any claim or affirmative defense by a preponderance of the

16    evidence, it means that you must be persuaded by the evidence

17    that the claim or the defense is more probably true than not.

18    You should bear -- or you should base your decision on all the

19    evidence, regardless of which side presents it.

20         The evidence you are to consider in deciding what the

21    facts are consist of, as I've told you before, the sworn

22    testimony of witnesses here under oath; exhibits that are

23    admitted into evidence; and any facts to which the lawyers have

24    agreed or stipulated.

25         What is evidence?  In reaching your verdict, you may

consider only the testimony and exhibits received into

evidence.  Certain things are not evidence, and you must not

consider them in deciding what the facts are.  And I'll list

them for you.

Arguments or statement of counsel are not evidence.  The

lawyers are not witnesses.  What they may say in their opening

statements or closing arguments or at other times is intended

to help you interpret the evidence, but it's not evidence.  If

the facts as you remember them differ from the way the

attorneys have stated them, it's your memory that controls.

Remember, some people see or hear some things differently.

It's your memory that controls.  No one's trying to mislead

you.  They may see it differently.  It's your memory that

controls.

Questions or objections by lawyers are not evidence.

Attorneys have a duty to their client to object when they

believe the question is improper under the rules of evidence.

You should not be influenced by the objection or by the Court's

ruling on it.

Testimony that is stricken or excluded or that you are

instructed to disregard is not evidence and must not be

considered.

There may or may not be some evidence that is permitted

for a limited purpose.  If I instruct you to consider evidence

only for a limited purpose, you must do so and not consider it

1    for any other purpose.

2         Also, in asking questions, as I've said earlier, questions

3    are not evidence.  Questions will give meaning to the answers

4    coming from the mouths of the witnesses, but it's not evidence.

5    So what counsel may say in asking a question, you're not to

6    assume is evidence.  For instance, if somebody says, "Have you

7    stopped beating your wife?" that's not evidence that somebody's

8    beating their wife.  It may give meaning to the answer only,

9    but the questions are not evidence.

10        Anything that you may see or hear when court is not in

11   session is not evidence.  You are to decide this case only on

12   the evidence received during this trial.

13        Some evidence may be, as I said, admitted for a limited

14   purpose.  If so, you are to consider it only for that purpose.

15        Evidence may be either direct or circumstantial.  Direct

16   evidence is direct proof of a fact, such as the testimony of a

17   witness about what that witness personally saw or heard or did.

18   Circumstantial evidence is proof of one or more facts from

19   which you could find another fact.  You should consider both

20   kinds of evidence.  The law makes no distinction to be given to

21   the weight -- the law makes no distinction between the weight

22   to be given to either direct or circumstantial evidence.  It is

23   for you to decide how much weight to give the evidence.

24        There are rules of evidence that control what can be

25   received into evidence.  When a lawyer asks a question or

1    offers an exhibit into evidence and the lawyer on the other

2    side thinks that it's not permitted by the rules of evidence,

3    the lawyer may object.  If I overrule the objection, the

4    question may be answered or the exhibit received.  If I sustain

5    the objection, the question cannot be answered or the exhibit

6    not received.  Whenever I sustain an objection to a question,

7    you must ignore that question and must not guess as to what the

8    answer might have been.

9         Sometimes I may order that evidence be stricken from the

10   record or that you disregard or ignore that evidence.  That

11   means that in deciding this case, you must not consider the

12   stricken evidence for any purpose.

13        In deciding the facts of this case, you may have to decide

14   which testimony to believe and which testimony not to believe.

15   You may believe everything a witness says, or part of it, or

16   none of it.

17        In considering the testimony of a witness, you may take

18   into account the opportunity and the ability of the witness to

19   see or hear the things testified to; the witness's memory; the

20   witness's manner while testifying; the witness's interest in

21   the outcome of the case, if any; the witness's bias or

22   prejudice, if any; whether other evidence controls the

23   witness's -- excuse me, whether other evidence contradicts the

24   witness's testimony; the reasonableness of the witness's

25   testimony in light of all the other evidence; or any other fact

1   that bears on believability.  The weight of the evidence as to

2   a fact does not necessarily depend on the number of witnesses

3   who have testified.  What is important is how believable the

4   witnesses were and how much weight you think their testimony

5   deserves.

6        Now, I've mentioned a few words about your conduct.  Let

7   me talk a little bit more about that.

8        First, keep an open mind throughout the trial and do not

9   decide what the verdict should be until you and your fellow

10  jurors have completed your deliberation at the end of the case.

11       Second, because you must decide this case based only on

12  the evidence received in this case and on the instructions of

13  the law that applies, you must not be exposed to any other

14  information about the case or the issues it involves during the

15  course of your jury duty.  Thus, until the end of the case, or

16  unless I tell you otherwise, do not communicate with anyone in

17  any way and do not let anybody communicate with you in any way

18  about the merits of this case or anything to do with it.

19  This -- excuse me.  If you are asked or approached in any way

20  about your jury service or anything about this case, you must

21  respond that you've been ordered not to discuss the matter and

22  report it to the Court immediately.

23       Because you will receive all the evidence and the legal

24  instructions you properly -- that you properly can consider to

25  return a verdict, make sure that you don't do outside research,

1    such as consulting dictionaries, searching the Internet, or

2    using other reference materials, and do not make an

3    investigation, any investigation, or in any way try to learn

4    about the case outside of the courtroom.

5         This means, you know, you don't go to the location to see

6    what it looks like or anything.  It's gotta come from here in

7    the courtroom.  You know, if you go out and investigate and you

8    want to read books and everything like that, then you're

9    becoming the advocates in the case, and the jury is to

10   determine what has been presented to you here in court.

11        The law requires these restrictions to ensure that the

12   parties have a fair trial based on the same evidence and each

13   party has that opportunity to address those areas.  A juror who

14   violates these restrictions jeopardizes the fairness of the

15   proceedings, and a mistrial could result that would require the

16   entire trial process to start over again.  If any juror is

17   exposed to any outside information, please notify the Court

18   immediately.

19        I urge you to pay close attention to the testimony that is

20   given.  During your deliberations, you will not have a

21   transcript of the trial testimony.

22        If you wish to take notes, you may take notes.  Keep in

23   mind that in taking notes, I want to make sure they don't

24   interfere with your hearing the evidence that comes in.  It's

25   more important that you hear what comes in.  But if it helps

1    you to take notes, feel free to take notes.  Those notes are to

2    help you and assist your memory.  You're not to depend on the

3    notes.  You're to depend on what your ultimate memory of the

4    case is.

5         Now, the trial will proceed in the following way.  First,

6    each side may make an opening statement.  An opening statement

7    is not evidence.  It is simply an outline to help you

8    understand what the parties expect the evidence will show.  A

9    party is not required to make an opening statement.  The

10   plaintiff will then present evidence, and counsel for the

11   defendant may cross-examine.  Then the defendant will present

12   evidence, and counsel for the plaintiff may cross-examine.

13   After the evidence has been presented, I will instruct you on

14   the law that applies to this case, and the attorneys will make

15   their closing argument.  After that, you'll go back to the jury

16   room and deliberate for your verdict.

17        So those are some pre-instructions to help you as far as

18   how to handle the evidence as it comes in.  As this time, as I

19   say, we're going to go to the opening statements.  I've talked

20   to the attorneys.  The opening statement will be about 20

21   minutes.  We'll have the first opening statement.  If we have

22   time, we can have them both before lunch.  If not, we'll have

23   the second statement after lunch.  So please pay close

24   attention as we go through this, and remember, it's not

25   evidence; it's an outline as to what the evidence is going to

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   show.
 2        Any questions you might have?  Anything we can do to help
 3   you out?
 4             JUROR:  No, Your Honor.
 5             THE COURT:  Counsel, you ready to proceed?  Please.
 6             MS. HANNA:  Thank you, Your Honor.
 7             THE COURT:  Mm-hmm.
 8             MS. HANNA:  Ladies and gentlemen, this is my
 9   opportunity to give you an outline of what we believe our
10   evidence is going to show with respect to this case.  And what
11   is this case about?  This case is about the importance of truth
12   in advertisement and fair competition.
13        The issue here is the fact that we believe the evidence
14   will show that Vestagen, which makes hospital scrubs, makes
15   false and misleading claims about their scrubs.  We believe
16   that we will be able to show that they know that these claims
17   are false and misleading, that consumers have purchased these
18   scrubs believing those claims, and as a result, not only has
19   Strategic Partners been injured by losing consumers, but
20   consumers are also injured by these claims.
21        What specifically are we referring to?  The issue here is
22   a specific type of scrub.  It's called a treated scrub.  And by
23   treated scrubs, we mean scrubs that have been treated by a
24   fluid barrier, something that prevents fluid from soaking in,
25   and an antimicrobial.  And here it's important to understand
```

1    that the antimicrobial is an antimicrobial that can cause odor

2    and can cause fabric degradation.  That's what it does.

3        Both Vestagen and Strategic Partners have scrubs that are

4    treated with both a fluid barrier and an antimicrobial.

5    They're not the only two companies that have those types of

6    scrubs out there.  There are other scrubs.  But the difference

7    here is that the evidence will show that Defendant Vestagen

8    markets their scrubs as a medical device, that they market

9    their scrubs as having the fabric, VESTEX fabric, having been

10   registered with the FDA as a medical device, which we will show

11   is untrue.  They also claim that their medical scrubs can

12   prevent illnesses, transmissions of pathogens, disease,

13   infection, protect the patients, kill bacteria in a hospital

14   setting, is an antibacterial and is clinically proven to

15   present these types of benefits simply by wearing their scrubs.

16   We believe that the evidence will show that these statements

17   are literally false, they are not supported by scientific

18   evidence, and that they are misleading.

19       As I mentioned, we're going to be presenting several

20   witnesses to testify about this, and many of the witnesses that

21   we will be calling to support those claims are Vestagen

22   employees and former employees.

23       We will be calling both Mr. Favret, the founder and

24   immediate prior CEO, as well as all of their chief executive

25   officers, to testify about these what we believe will be shown

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    to be false and misleading claims.

2         We'll also present the testimony of microbiologist John

3    Mitchell.  He will come in to testify regarding the lack of

4    scientific support for Vestagen's claims.

5         Steve Roth is another expert that will be testifying,

6    regarding a consumer survey that establishes that consumers

7    hearing Vestagen's claims are, in fact, misled and confused as

8    to what the scrubs actually provide as a benefit.

9         And finally, we'll also be presenting expert David Weiner,

10   a forensic accountant, to talk about the damages that have been

11   incurred as a result of these false and misleading claims.

12        One of the pieces of evidence that we believe that you

13   will be hearing from Vestagen is a reliance upon a study called

14   The Bearman Study.  The evidence will show that this study was

15   commissioned by and paid by Vestagen to have it performed, that

16   it was performed using a specific VESTEX fabric, and found very

17   limited results.  Vestagen uses that scientific study to make

18   claims that we believe we'll be able to establish go well

19   beyond what the study showed.

20        But here is another thing that we believe the evidence

21   will show.  Based on the representations that these scrubs can

22   assist -- Vestagen scrubs can assist in infection control, we

23   will present testimony by Diane Raines.  She is the chief

24   nursing officer for Baptist Hospital.  We'll be presenting her

25   by deposition testimony, by video.  She purchased the Vestagen

```
 1   scrubs and required that all of the staff in the hospital wear
 2   them.  Shortly thereafter, you'll hear testimony, that almost
 3   300 complaints were made with respect to skin irritations and
 4   illness due to the Vestagen scrubs.  As a result of that,
 5   Vestagen changed the fabric that they were using.  They changed
 6   the fabric that they were using and were no longer using the
 7   fabric that was tested by The Bearman Study.  Instead of
 8   disclosing that in their advertisement, they continued to cite
 9   to The Bearman Study as showing the effectiveness of their
10   VESTEX fabrics to prevent infection and disease.
11       We will show not only is Vestagen's claims misleading and
12   untruthful, but also that they knew and understood that these
13   claims violate both EPA and FDA regulations, but nevertheless
14   made those claims.  In fact, we believe that Vestagen's own
15   witnesses will testify that there is no clinical study that has
16   concluded that there is a reduction of infection due to VESTEX
17   scrubs.
18       What is Vestagen's response to these claims?  Vestagen's
19   response to these claims is to countersue.  They have sued
20   Strategic Partners for misappropriation of their trade secrets.
21   They have sued for false advertisement claimed against
22   Strategic Partners, and they claim a breach of a
23   confidentiality contract that was signed or executed back in
24   2011.  We will be able to present evidence that there is no
25   merit to any of these claims.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1          The fact is, that Strategic Partners is an industry leader
 2    in the textile industry, clothing industry.  They have many
 3    different lines, including school uniforms, footwear, and
 4    hospital scrubs.  As a leader in the industry, one of the
 5    things that they have to be aware of is emerging trends, and
 6    late in 1990, 2000, this trend of treated scrubs was coming
 7    into the market.  And so Strategic Partners, and specifically
 8    Mr. Singer, who is with us today, started looking at these
 9    potential treatments to add to their scrubs.  Many of the
10    individuals and companies that were making treated scrubs or
11    had these types of treatments sought out Strategic Partners for
12    investments or to purchase their fabric.  One of those entities
13    was Vestagen.  In 2011, they solicited and requested and bid on
14    an opportunity to work with Strategic Partners.
15          Strategic Partners ultimately passed on that opportunity
16    for many reasons.  The fabric was too expensive.  Vestagen only
17    wanted to have one type of product.  Strategic Partners has
18    many types of -- lines of product.  They had a very inflexible
19    idea as to where and how they can manufacture products.
20    Strategic Partners required to have the mills in multiple
21    different locations.  There was just no fit there.  So they
22    passed.
23          Ultimately, Strategic Partners went with Dow Chemical for
24    their antimicrobial products.  They don't own -- Strategic
25    Partners doesn't own the antimicrobial technology.  Dow
```

1    Chemicals does.  Strategic Partners doesn't own the fluid

2    barrier technology.  That's through Nanotex, another company.

3    They're not using the technology, they're not using the mill

4    method or any of the processes that Vestagen is using.

5         We believe the evidence will show that to the extent that

6    Vestagen has a trade secret, it's not something that was

7    disclosed to Strategic Partners.  To the extent they have a

8    trade secret, it's not something that is being used by

9    Strategic Partners.  So Vestagen's branding, marketing,

10   advertisement, those are all public record.  They are not

11   secrets, and therefore, they are part of a public record that

12   can be used.

13        The evidence will show that prior to this litigation,

14   Vestagen never made a demand or a writing on Strategic Partners

15   regarding any breach of contract, return of any confidential

16   information, or a claim of trade secret.  We believe the

17   evidence will show that there was no such misappropriation or

18   breach of contract.

19        With respect to the claim that Strategic Partners has got

20   false advertisement, that's based on one comment on the

21   Frequently Asked Questions page of the Strategic Partners'

22   website.  It specifically talks about how their antimicrobial

23   affect the bacteria and renders it ineffective immediately.

24        You're going to be hearing some science testimony about

25   how the antimicrobial works, the fact that the type of

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    antimicrobial that Strategic Partners uses, immediately upon

2    contact, inhibits the cell from reproducing.  That's how it

3    works.  It's called Silvadur.  And you'll also hear from Dow

4    Chemical as to how the chemical works.  In fact, we believe the

5    evidence is going to show that it literally is true that, upon

6    application of Silvadur, Strategic Partners' fabric does render

7    the bacteria ineffective immediately.  It's literally true.

8         We believe ultimately that the evidence will not support

9    Vestagen's claims.  We will be asking instead for you to not be

10   distracted by those claims.  This lawsuit is about Vestagen's

11   conduct, and we will ask of you, as the Court has, that you

12   listen to the evidence, consider the testimony, and not be

13   distracted by the claims that were brought in response to the

14   lawsuit.

15        We will, at the conclusion of the trial, be asking you for

16   a monetary judgment not only with respect to the damages that

17   Strategic Partners has suffered due to loss of consumers based

18   on the what we believe is false advertisement, but also to

19   disgorge, to take back the profits that Vestagen has made as a

20   result of those false claims, because it has not only injured

21   Strategic Partners, it has and continues to injure the

22   consumers.

23        Thank you very much.

24             THE COURT:  Thank you, Counsel.  There you go.  Thank

25   you, Counsel.

1    We're going to have the opening statement by the defense.

2    I think it's important for you to realize the defense also is

3    counterclaiming.  So you have a defense and you've got a

4    counterclaim.  So you're going to have two attorneys.  They

5    have 20 minutes, but they may split that up.  They may have

6    only one attorney talk, they may have two attorneys talk.

7    That's their choice.  But the entire thing will only last 20

8    minutes.

9        Okay.

10       MS. HIGHTOWER:  Your Honor, Counsel, and ladies and

11   gentlemen of the jury, there are few people that are not aware

12   of the increased concerns in our country about the spread of

13   illnesses caused by transmission of bacteria, and whether it's

14   in our homes, in public locations or in offices of healthcare

15   providers.  Some steps have been taken by our community.  You

16   know that we have the widespread use of hand sanitizers,

17   reminders about hand-washing.  We have also seen the increased

18   use of gloves and masks in medical offices.  Efforts to further

19   curtail the problem, particularly in the healthcare setting, is

20   the underlying basis for this case.

21       My name is Sharon Hightower, and I represent Vestagen

22   Protective Technologies as the defendant in this case.

23       You've just heard a very eloquent statement by counsel for

24   Strategic Partners with the presentation of what they intend to

25   show.  I'm here to tell you the rest of the story that you did

1   not hear.

2       As you know, you'll be meeting with Ben Favret.  He's the

3   founder of Vestagen, the small startup company that was

4   established in 2009.  He's now the president of Vestagen.

5   You'll hear about the mission of Vestagen, the goals of

6   Vestagen, and how the company has progressed since its

7   inception in 2009.  He's going to talk to you about the

8   interaction with their clients and the advertising.  He's going

9   to talk to you about the -- as the company evolved and how it

10  gained financial backing of investors to allow it to develop an

11  innovative treatment for fabrics used in the scrub industry.

12  He will talk to you about how Vestagen has interacted with

13  representatives from the healthcare industry, providing

14  information about the VESTEX scrubs, its attributes and the

15  science behind it.

16      We will also be presenting some sworn testimony of Diane

17  Raines.  She's the chief nursing officer for Baptist Health and

18  a member of the executive team for all of the hospitals in the

19  Baptist Health Group.  Through her sworn testimony, you're

20  going to hear about the mission of Baptist Health for providing

21  accessible quality healthcare and the paramount importance of

22  the safety of their employees and their patients.  Her

23  testimony will confirm that in 2014, Baptist Health adopted a

24  policy that their employees with direct patient contact were to

25  wear the VESTEX scrubs from Vestagen.  You'll also hear that

```
1    that policy was adopted due to their belief that the Vestagen
2    scrubs had the characteristics they were looking for, including
3    moisture wicking, antimicrobial properties, and fluid
4    repellancies.  You're going to hear that Baptist had meetings
5    with representatives of Vestagen as early as 2001 during their
6    search for a product that would be part of their bundle of
7    preventive technologies, including hand-washing, environmental
8    cleanliness, and other techniques to use to help prevent
9    infections.  You'll hear that they worked through the data on
10   VESTEX, obtained the input of their own epidem- --
11   epidemiologist, sorry, as well as staff members, which
12   culminated in the belief that there would be a reduction of the
13   bioburden on the scrubs before they instituted their policy.
14        You're going to meet Dr. Bruce Isaacson, who is a
15   well-respected and qualified expert and the current president
16   of MMR Strategy Group.  He was hired by Vestagen to review and
17   analyze the survey and its results that's going to be presented
18   by Strategic and that was primarily prepared by one of their
19   employees.  He will talk to you about that survey, how it was
20   prepared, and the results that it purports to provide regarding
21   the perception of participants regarding VESTEX.
22        You'll also meet Dr. Bruce Strombom, a managing principal
23   of Analysis Group.  He's going to testify as his to review --
24   he will testify as to his review and evaluation of the
25   financial status of Vestagen from 2010 to 2017 and explain how
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    the costs incurred for the development of VESTEX over the years

2    has actually resulted in a loss.  He'll talk to you about those

3    costs and how they've resulted in the current financial

4    condition.

5         Once you've heard all the testimony and seen the

6    evidence, it will then be up to you to determine whether

7    Vestagen is truly guilty of providing false advertising to

8    consumers about their products, its property, and its

9    registration with various governmental agencies which resulted

10   in any harm to Strategic Partners, a much larger competitor in

11   the scrubs industry.

12        Any decision you make must be based on the evidence and

13   the law that the Court's going to explain to you.  The only

14   request that I have of you is that you listen carefully to the

15   evidence presented by both sides, putting aside any personal

16   feelings.  We know you'll keep an open mind until such time as

17   you enter that jury room for your deliberations.

18        When all the parties to this case have completed their

19   cases, I'll get the opportunity to speak with you once more,

20   and at that time will ask for a decision in favor of Vestagen.

21   Until then, I thank you in advance for the time and effort

22   you've put into this case.

23        Thank you, Your Honor.

24            THE COURT:  Thank you, Counsel.

25        Counsel.

1          MR. VERDE:  Good morning.

2       This is a case about a theft, a deceit, and a betrayal.

3       Some companies think that theft, deceit, and betrayal is a

4    legitimate form of business.  We are here today to ask you to

5    say emphatically that it is not.

6       I represent Vestagen Protective Technologies.  My name is

7    Vince Verde, and I'm proud to be here before you today.

8       This case centers around SPI, Strategic Partners, Inc.,

9    1,200 times bigger than my client, using its demonstrable

10   weight to improperly use secrets, break agreements, and

11   suppress threatening ideas to preserve its dominance.  SPI did

12   this with a smile and a false promise of partnership, all in an

13   effort to maintain and expand a 40-percent dominance in a

14   market that is rapidly changing and in danger of leaving them

15   behind.

16       The theft revolves around the misappropriation and

17   improper use of Vestagen's strategy and marketing plan, a plan

18   that was focused on leading a regulatory group, such as ASTM,

19   to pass rigorous performance standards on garments worn by

20   healthcare workers in order to reduce the amount of bacteria

21   that these healthcare workers would attach to themselves and

22   potentially transfer to their family members.  It was

23   Vestagen's strategy to convince ASTM to pass standards which

24   would reduce the number of unwanted bacteria on the clothing of

25   these healthcare workers.  Why?  Because Vestagen's strategy

1    has shown that by reducing the amount of unwanted bacteria on

2    the scrubs, you can reduce the risk of transfer from one person

3    to another.

4        Both Vestagen and SPI understood that once ASTM standards

5    were passed, it was only a matter of time before OSHA would

6    pick up those standards, a government agency that would adopt

7    those standards and make it possible throughout the country.

8        This was a big deal to Vestagen, because it would comport

9    with Vestagen's mission statement of promoting healthcare

10   through the reduction of bacteria on the scrubs.

11       The deceit, the deceit, comes from SPI breaking its

12   promises to abide by confidentiality agreements and a false

13   promise of partnership, all for the purpose of keeping the

14   lines of communication open.  Why?  So SPI could continue, as

15   the evidence will show, to milk Vestagen of its confidential

16   information about the market and how the progress of ASTM was

17   going along in promoting these standards that will be covered

18   throughout the industry.

19       The betrayal is based upon SPI's conduct after learning

20   that Ben Favret was on the verge of succeeding on this market

21   after years of effort, that after leading ASTM that they were

22   on the verge of coming up with a standard that was going to

23   transform the industry, and when they learned that they were on

24   the verge of implementing that standard, at the invitation of

25   Ben Favret, they joined ASTM to supposedly see what was going

1    on, to help in the development of the progress of these

2    standards, but instead, instead, they used that knowledge to

3    destroy.  And that's what the evidence is going to show.  Why?

4    Because you're going to learn about their product, Certainty

5    and Certainty Plus, the product that they had been secretly

6    developing, secretly developing, and which did not satisfy

7    those standards that the ASTM was on the verge of passing,

8    secretly developing and not telling Ben Favret that they were

9    making a product to compete against them, but instead, they

10   gave them the promise of partnership.

11        This theft, this deceit, and this betrayal, it does

12   involve the VESTEX product.  They talked about the VESTEX

13   product.  But it was more than that.  It was the strategy that

14   they took to turn against him and to use it against him to

15   crush what he had been working on for years.

16        The two technologies was combined.  It was the

17   antimicrobial technology of VESTEX combined with the fluid

18   barrier, and together they were shown, clinical studies shown,

19   of VESTEX's own studies, 99.99 percent effective in reducing

20   the amount of bacteria on the product on the body -- or excuse

21   me, on the fabric, within an hour.

22        SPI did not have that product.  SPI did not, could not

23   meet that standard, 99.99, and you're going to learn what they

24   did about it during the course of this trial.

25        While Vestagen had a revolutionary product back in 2011,

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   SPI was still looking to the past.  They still had the same

 2   focus on their market: comfort and fit.  They had no protective

 3   qualities in their product.

 4       In January 2011, Ben Favret met with Mike Singer, and

 5   together they talked about the VESTEX product.  They entered

 6   into discussions about partnering up with them, into perhaps

 7   acquiring Vestagen or using them as a supplier.  But Mike

 8   Singer indicated, "I don't think the market's ready for it.  I

 9   don't think the market is ready."

10       In actuality, after learning from Mr. Favret about the

11   technology, they actually decided to start using or developing

12   that particular product.  And you're going to learn about that

13   a little bit later.

14       During this meeting, Ben Favret met with Mike Singer and

15   and Mark Markowski, one of their lead marketers.  They talked

16   about the massive market potential Vestagen had, that it was so

17   successful in reducing the number of unwanted bacteria, and

18   they talked about how this was going to change the industry.

19   Ben conducted a demonstration of the product, and I submit that

20   they were hooked.  And why wouldn't they?  Ben was passionate,

21   driven, committed, and he understood the market.  And so, while

22   not normally -- they asked him a lot of questions.  SPI asked

23   him a lot of questions.  They asked him a lot of questions

24   about the technology, about the market, and while not normally

25   willing to provide this confidential information, provide them
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   with the trade secrets, he did so, because there was a promise

2   of confidentiality, an agreement to be bound to keep the

3   information that's provided to them confidential.  With these

4   assurances, Vestagen gave them everything.  They both told them

5   about the -- they asked them about the market plans, they gave

6   it to them.  They asked him about his strategy, he told it to

7   them.  They asked him about customers, he gave it to them.

8   They asked him about training materials, they gave it to them.

9   They asked them about information -- this is key -- about

10  pending regulations and standards that would affect their

11  industry, and he gave it to them.

12      Well, Ben Favret was a visionary, and evidence will show

13  that SPI saw that there was a flaw, there was a flaw in his

14  vision.  To SPI, Ben was too passionate, too earnest in

15  partnering up with them.  While SPI acknowledged that Vestagen

16  had the best strategy -- in internal communications, they

17  talked about Vestagen had the best strategy in capturing the

18  market, behind his back they talked about how desperate he was,

19  and if they wait, they can leverage this desperation for the

20  benefit of SPI.

21      This is when the two faces of SPI developed.  That's what

22  the evidence is going to show.  One side of the face was a side

23  of partnership and solicitation.  It was the side of the face

24  that led Vestagen to believe that they were truly interested in

25  becoming partners, truly interested in opening up the market

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

together.  Then there was the other side of the face.  This was

the side of the face of an unprincipled and illegal competitor.

The evidence will show that it was this side of the face that

made promises it had no intentions of keeping.  It was the side

of the face that was telling Ben Favret the market was just not

ready, was just not ready for these types of products.

Meanwhile -- they were telling this to them in 2012, 2013 and

2014, but by 2012 they've already started to produce their

antimicrobial and fluid barrier product.  That's what the

evidence is going to show.  And it was this two-sided face that

succeeded in using Vestagen's market plans and strategy to

prove the way -- to pave the way for Certainty and Certainty

Plus, a knockoff of VESTEX.

        Now, you'll also see internal communications that they --

excuse me, withdrawn.

        The evidence will show that the two faces were necessary

to complete this deception.  You see, when Ben Favret met with

the president of SPI and during a series of meetings, Mike

Singer knew that Vestagen was on to something, something big,

so big that when they produced the competing knockoff,

Certainty and Certainty Plus, Mike Singer called it the most

important product launch in the company's history.

        Ladies and gentlemen, while the launch of Certainty and

Certainty Plus was, in Mike Singer's words, the most important

product launch in the company's history, it was made possible

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

through the improper use of marketing plans and information of

Vestagen, disclosed to SPI under the promise of confidentiality

and an agreement not to use information without Vestagen's

consent.  With the false promise of partners to Ben Favret when

the market was ready, the evidence will show that SPI was only

playing on a ruse, a ruse designed to continue the flow of

confidential Vestagen information for use in development of a

competing product, Certainty and Certainty Plus.  And you'll

see e-mails discussing that ruse.  How do we know this?  You'll

see it.  The e-mails will show.

In 2014, ladies and gentlemen, the plan to keep the

communication channels open paid off in a big way.  The

evidence will show that it cleared the way for the release of

Certainty and Certainty Plus.  And how so?  Because the key

piece of confidential and trade secret information Vestagen

disclosed to SPI was their marketing plan and strategy to

penetrate the market for its products.  It's through the use of

the ASTM standard governing body, a body in which Ben Favret

took a leadership role in and worked for years to bring a group

of individuals together to kind of mark -- to push the

standards along to the point where they were on the verge of

implementing new standards that were going to be effective

throughout the industry, 99.99 percent antibacterial

effectiveness, all within an hour, something that there was a

product for, that was something that the FDA looked for, and

1  it's something that SPI did not have.

2       By mid-June of 2004 (sic), they were on the verge of

3  implementing this strategy.  And Ben Favret was excited.  He

4  wanted to go to SPI and tell them, "Remember those times where

5  you indicated to me that the market wasn't ready?  Here's the

6  evidence.  Here's the evidence that the market is ready.  It's

7  about to open up for these types of products.  Come on board.

8  Come on board."  And so he communicated with Mike Singer.  He

9  talked to Mike Singer and he told him about the way the

10  standards were about to pass, and Mike Singer said, "Are you

11  sure, with certainty?"  We'll talk about that a little later.

12            THE COURT:  Got about three minutes left.

13            MR. VERDE:  Thank you, Your Honor.

14            THE COURT:  Mm-hmm.

15            MR. VERDE:  So Ben Favret said, "Come.  Come join.

16  Come join."  They brought their team of people from SPI to join

17  the ASTM process.  And instead of going there to help build on

18  a market together, as was promised, they came there to destroy.

19  And destroy they did.  In their own internal communications,

20  they'll admit that they went there to muck up the process.

21  They went there to muck up the process.  And in fact, they were

22  so successful in mucking up the process that they bragged about

23  it at the office and they said, "I don't think Ben Favret is

24  capable to the task in fixing this."  "I don't think Ben Favret

25  is capable to the task of fixing this."

```
 1        They also recognized that what was happening at the ASTM

 2   standard was a problem for their industry, because they did not

 3   have the product.  The ASTM was about to come up with a

 4   product, and their own internal e-mails were saying we need to

 5   talk about compliance.  And rather than compliance, they came

 6   to muck up the process.  Their words.

 7        And you'll also learn the gravity of what happened.

 8   You'll learn that by mucking up the process, their own internal

 9   e-mails will say, we were able to open up the Certainty and

10   Certainty Plus market.  Because of what we did, we were able to

11   do that.

12        You'll also learn that they'll acknowledge that ASTM was

13   on the verge of opening up this type of standards, and if it

14   wasn't for their own internal efforts, this would have

15   happened.  Their own marketing people were bragging about what

16   they did in saving SPI.  And what's the value of that?

17   Certainty and Certainty Plus, the competing product that you'll

18   know, you'll learn, could not meet that standard, the value of

19   that.  And more importantly, the value of this is even greater

20   than just Certainty and Certainty Plus.  It's the preservation

21   of a $300-million business, the preservation of a $300-million

22   business.  That's how important ASTM was to SPI, and that's how

23   significant that those -- that they were able to muck up the

24   process, because, in their own words, that we are now able to

25   come up with compliant products.
```

1      Ladies and gentlemen, Vestagen was not just -- just not

2   the only entities that were victims of deceit and betrayal.

3   They also falsely advertised.  They also falsely advertised,

4   claiming that their product was effective -- renders the

5   bacteria ineffective immediately.  But you'll also learn they

6   had no testing to support that.  It's a claim that they just

7   made.

8      So at the end of the day, next few days, we're going to

9   come back to you and provide you with an opportunity -- provide

10  me with another opportunity to speak with you, and that this

11  case is really about theft, deceit, and betrayal.  That's what

12  this case is about.  And at the close of the evidence, after

13  you've heard from Ben Favret and learned about the betrayal,

14  after you've heard from the witnesses of SPI who will claim

15  they did nothing wrong, I'm going to come back and ask you for

16  a verdict, a verdict in favor of Vestagen, a verdict that will

17  reject these claims for false advertising, claims that they

18  knew about for years and only preserved and waited until they

19  got the confidential information from Ben Favret and for the

20  release of Certainty.  And in doing so, ladies and gentlemen,

21  you will affirm what we all know:  Theft, deceit, betrayal is

22  wrong, whoever you are, no matter your size.

23      Thank you.

24          THE COURT:  Okay.  Thank you, Counsel.

25      Ladies and gentlemen, we're going to be breaking at this

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   time for lunch.  We're going to have you come back in at 1:00

2   o'clock.  As I say, it's a little bit different than tomorrow

3   or the next day.  Excuse me.  1:30.  Sometimes it's hard to get

4   in places.  Be back by 1:30.  I would recommend being back

5   about 1:20 so at 1:30 we can start right in with the evidence,

6   we won't lose any time on it.

7         Remember the admonishment not to discuss the case among

8   yourselves, with anybody else, or form or express any opinions

9   about the matter until it is submitted to you and you retire to

10  the jury room.

11        Have a pleasant lunch.  Don't talk about the case.  We'll

12  see you back in at 1:30.  Okay.

13             THE CLERK:  All rise.

14

15        *(Lunch recess commenced at 11:58 a.m.)*

16

17        *(Afternoon proceedings under separate cover.)*

18

19

20                        *--oOo--*

21

22

23

24

25

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

*CERTIFICATE*

    *I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.*

*Date:  SEPTEMBER 20, 2017*

       */S/ SANDRA MACNEIL*
       *Sandra MacNeil, CSR No. 9013*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**$**

**$300 [2]**   90/21 90/21
**$300-million [2]**   90/21 90/21

**–**

**--oOo [1]**   92/20

**/**

**/s [1]**   93/14

**1**

**1,200 [1]**   82/9
**10 [10]**   48/18 55/22 55/25 56/17 57/25 57/25 59/10 62/12 62/12 62/21
**1000 [1]**   2/5
**101 [1]**   10/25
**10:52 [1]**   63/2
**11 [2]**   55/25 59/10
**11:12 [1]**   63/2
**11:30 [2]**   61/14 61/14
**11:58 [1]**   92/15
**12 [3]**   48/18 56/9 59/16
**12:00 [1]**   63/8
**13 [2]**   3/5 46/2
**14 [8]**   5/12 15/7 15/22 20/11 20/19 21/22 41/10 48/18
**15 [4]**   56/17 56/22 57/5 62/21
**1500 [1]**   2/17
**152 [1]**   2/13
**16 [1]**   5/8
**16-5900-RGK [3]**   1/7 4/7 13/4
**17901 [1]**   2/5
**19 [2]**   1/18 4/1
**1990 [1]**   75/6
**1:00 [3]**   61/14 61/15 92/1
**1:20 [1]**   92/5
**1:30 [5]**   63/9 92/3 92/4 92/5 92/12

**2**

**20 [10]**   56/23 56/23 57/5 57/6 57/10 57/23 70/20 78/5 78/7 93/10
**20 percent [1]**   20/3
**200 [1]**   2/8
**2000 [1]**   75/6
**2001 [1]**   80/5
**2004 [1]**   89/2
**2009 [2]**   79/4 79/7
**2010 [1]**   80/25
**2011 [4]**   74/24 75/13 84/25 85/4
**2012 [2]**   87/7 87/8
**2013 [1]**   87/7
**2014 [3]**   79/23 87/8 88/11
**2017 [4]**   1/18 4/1 80/25 93/10
**213.894.5949 [1]**   1/25
**255 [1]**   1/24
**27,000 [1]**   34/4
**28 [1]**   93/4
**2900 [1]**   2/8

**3**

**300 [1]**   74/3
**310 [1]**   4/23
**312.638.5671 [1]**   2/9

**31st [2]**   34/13 34/16
**35 [1]**   7/12
**4**

**40 [3]**   7/6 57/7 57/9
**40-percent [1]**   82/13
**408.286.0880 [1]**   2/14
**4:00 [2]**   61/15 61/21
**4:00 o'clock [5]**   61/13 61/20 61/22 61/24 62/1
**4:30 [1]**   61/19

**5**

**51 percent [1]**   50/9

**6**

**6's [4]**   55/11 55/12 55/22 56/1
**60606 [1]**   2/8
**63 [1]**   3/6
**695 [1]**   2/16

**7**

**700 [1]**   2/13
**71 [1]**   3/8
**714.557.7990 [1]**   2/6
**714.800.7900 [1]**   2/18
**753 [1]**   93/3
**78 [1]**   3/9
**7th [1]**   8/9

**8**

**82 [1]**   3/11
**8:15 [1]**   62/7
**8:30 [4]**   61/12 61/14 61/21 62/5
**8:30's [1]**   61/18
**8:35 [1]**   62/9
**8:40 [1]**   62/9

**9**

**90012 [1]**   1/24
**9013 [2]**   1/23 93/15
**92614 [1]**   2/5
**92626 [1]**   2/17
**93 [1]**   1/17
**95112 [1]**   2/13
**99.99 [1]**   84/23
**99.99 percent [2]**   84/19 88/23
**9:00 [1]**   61/19
**9:04 [2]**   1/19 4/2
**9:15 [1]**   13/1
**9:55 [1]**   13/1

**A**

**A-r-e-l-l-a-n-o [1]**   14/15
**a.m [7]**   1/19 4/2 13/1 13/1 13/2 63/2 92/15
**abide [1]**   83/12
**abilities [1]**   36/16
**ability [4]**   34/21 38/25 47/10 67/18
**able [11]**   8/12 24/21 26/18 50/21 71/16 73/18 74/24 90/9 90/10 90/23 90/24
**about [136]**
**above [1]**   93/6
**above-entitled [1]**   93/6
**absolutely [3]**   11/22 43/19 44/22
**accessible [1]**   79/21
**according [1]**   59/24

**account [1]**   67/18
**accountant [2]**   72/23 73/10
**accounts [1]**   45/20
**accused [1]**   45/20
**acknowledge [1]**   90/12
**acknowledged [1]**   86/15
**acquiring [1]**   85/7
**action [1]**   48/5
**actuality [1]**   85/10
**actually [4]**   49/16 73/8 81/2 85/11
**add [2]**   42/16 75/9
**address [3]**   15/4 24/25 69/13
**admit [1]**   89/20
**admitted [3]**   11/11 64/23 66/13
**admonishment [1]**   92/7
**adopt [1]**   83/6
**adopted [2]**   79/23 80/1
**advance [1]**   81/21
**advertised [3]**   46/9 91/3 91/3
**advertisement [9]**   16/7 16/10 64/5 71/12 74/8 74/21 76/10 76/20 77/18
**advertising [1]**   45/10 45/11 45/19 45/20 45/21 45/25 64/4 64/10 79/8 81/7 91/17
**advisor [2]**   41/2 41/5
**advocates [1]**   69/9
**Affairs [1]**   35/12
**affect [10]**   7/10 33/6 34/20 36/16 38/25 43/6 47/9 48/9 76/23 86/10
**affected [3]**   45/24 45/25 48/13
**affirm [1]**   91/21
**affirmative [2]**   60/1 64/15
**after [15]**   11/11 34/16 41/10 54/12 61/5 61/6 70/13 70/15 70/23 83/19 83/21 83/21 85/10 91/12 91/14
**afternoon [3]**   61/13 61/17 92/17
**again [7]**   18/22 22/7 31/2 32/1 43/23 44/1 69/16
**against [7]**   16/13 21/11 52/9 74/21 84/9 84/14 84/14
**agencies [1]**   81/9
**agency [3]**   30/16 30/18 83/6
**agree [4]**   7/10 7/17 12/7 63/15
**agreed [1]**   64/24
**agreement [5]**   7/13 22/12 22/12 86/2 88/3
**agreements [2]**   82/10 83/12
**ahead [3]**   9/19 13/22 38/1
**ain't [1]**   35/4
**airplane [1]**   41/21
**all [58]**   4/19 5/10 5/18 12/13 12/24 13/18 13/21 13/25 14/9 15/3 15/10 15/13 16/19 18/5 19/14 19/19 20/11 20/20 22/19 22/25 26/12 32/24 32/25 34/17 35/21 36/2 37/13 38/24 41/11 43/10 43/20 45/11 50/25 51/14 52/17

**A**

**all... [23]**   53/2 58/8 61/1
61/2 62/9 62/13 63/1 63/4
63/13 64/18 67/25 68/23
72/24 74/1 76/10 79/18
81/5 81/18 82/12 83/13
88/24 91/21 92/13
**allegation [2]**   48/13 52/6
**allegations [4]**   16/13
45/10 45/19 48/3
**alleged [1]**   48/5
**alleges [1]**   16/4
**alleging [1]**   16/9
**allow [1]**   79/10
**allowed [1]**   58/8
**almost [6]**   5/6 7/11 7/17
61/11 63/8 74/2
**along [9]**   7/11 7/18 12/8
12/9 43/6 45/21 48/15
83/17 88/21
**already [5]**   5/20 22/4
42/19 52/18 87/8
**also [42]**   2/20 4/14 7/25
16/11 17/9 17/16 18/21
18/24 19/3 19/5 19/7 19/8
20/13 24/6 36/6 37/15
38/11 58/4 58/13 60/4 64/9
64/10 66/2 71/20 72/11
73/2 73/9 74/12 77/3 77/18
78/2 78/17 79/16 79/25
80/22 87/14 90/1 90/7
90/12 91/3 91/3 91/5
**although [1]**   32/7
**always [2]**   7/11 7/17
**am [8]**   4/24 38/2 38/17
39/12 41/22 47/8 47/11
47/14
**Amber [1]**   17/15
**among [2]**   60/19 92/7
**amount [4]**   62/14 82/20
83/1 84/20
**Analysis [2]**   18/16 80/23
**analyst [1]**   38/2
**analyze [1]**   80/17
**ANGELES [8]**   1/20 1/24 4/1
25/23 26/3 29/6 39/12 62/5
**another [8]**   52/10 59/13
66/19 73/5 73/20 76/2 83/3
91/10
**answer [6]**   11/4 15/15
21/19 49/1 66/8 67/8
**answered [2]**   67/4 67/5
**answers [5]**   15/14 15/16
23/23 24/22 66/3
**Anthem [1]**   38/3
**antibacterial [2]**   72/14
88/23
**anticipate [2]**   12/6 12/12
**antimicrobial [13]**   19/11
71/25 72/1 72/1 72/4 75/24
75/25 76/22 76/25 77/1
80/3 84/17 87/9
**any [50]**   6/16 7/8 10/7
12/10 15/14 16/17 16/19
19/24 22/10 22/12 26/17
28/6 31/8 34/25 36/11
38/24 42/20 44/8 45/13
48/18 50/25 53/22 60/20
60/23 61/25 64/15 64/23
66/1 67/12 67/21 67/22
67/25 68/13 68/17 68/17

68/19 69/3 69/3 69/16
69/17 71/23 74/15 76/9
76/15 76/15 81/10 81/12
81/15 92/6 92/8
**anybody [27]**   8/17 19/23
20/19 20/19 25/8 25/13
34/10 37/7 42/18 43/16
45/3 45/4 45/7 45/11 45/13
45/18 45/24 47/23 48/11
48/12 48/14 50/25 60/19
61/4 61/25 68/17 92/8
**anyone [11]**   26/8 27/7
28/14 29/14 30/19 31/18
35/13 39/15 41/6 47/24
68/16
**anything [38]**   9/3 12/18
15/13 15/18 19/23 20/20
25/17 27/13 28/18 29/18
32/1 32/2 32/20 33/17
34/20 35/20 36/16 37/13
38/6 38/7 38/24 39/22
40/14 40/19 43/6 44/5
45/19 45/21 46/11 47/25
49/2 53/15 63/22 66/10
68/18 68/20 69/6 71/2
**anytime [1]**   7/9
**anyway [2]**   6/24 51/9
**appearances [3]**   2/1 4/9
13/6
**appearing [4]**   4/11 13/8
13/11 13/14
**appears [1]**   21/18
**application [2]**   58/8 77/6
**applies [2]**   68/13 70/14
**apply [10]**   23/16 24/2 24/6
26/15 30/5 39/6 41/15
50/17 52/22 63/14
**applying [3]**   23/25 24/2
52/25
**appreciate [3]**   33/5 46/22
60/5
**approach [1]**   18/3
**approached [1]**   68/19
**appropriate [2]**   5/21 20/7
**ARBUTHNOT [1]**   2/12
**are [83]**   5/21 5/23 5/24
7/14 7/25 9/13 10/20 12/13
15/4 15/7 19/18 22/3 22/4
22/6 22/13 22/15 23/13
23/14 24/6 24/14 25/11
26/15 30/5 31/22 33/6
33/25 34/5 35/2 35/18 39/3
41/14 44/5 47/6 52/20
52/21 53/20 53/21 54/7
56/2 58/6 58/10 59/12 61/9
61/22 62/3 63/5 63/11
64/20 64/21 64/22 65/2
65/3 65/5 65/6 65/15 65/20
66/3 66/9 66/11 66/14
66/24 68/19 70/1 70/17
71/17 71/20 71/21 72/3
72/6 72/17 72/17 72/18
72/21 73/7 76/10 76/10
76/11 78/11 78/11 82/4
89/10 90/24 91/22
**area [9]**   12/11 24/24 24/25
25/22 29/5 31/16 39/12
43/10 45/14
**areas [2]**   37/6 69/13
**Arellano [2]**   14/15 28/13
**aren't [5]**   10/11 10/15
21/23 24/21 34/6

**argue [1]**   7/20
**argument [1]**   37/15
**arguments of [1]**   3/19
**arguments [2]**   65/5 65/7
**army [1]**   43/1
**around [4]**   12/14 43/20
82/8 82/16
**as [108]**
**aside [1]**   81/15
**ask [38]**   5/2 6/15 9/20
10/3 10/7 15/10 15/12
15/17 16/17 19/20 20/5
20/5 20/6 20/9 20/10 21/1
21/19 24/9 24/18 24/19
25/11 25/12 25/17 32/15
33/4 34/15 42/9 46/8 49/2
52/16 53/13 59/8 62/6
62/19 77/11 81/20 82/4
91/15
**asked [16]**   19/20 29/18
34/19 40/13 42/14 52/18
68/19 76/21 85/22 85/22
85/23 86/5 86/6 86/7 86/8
86/9
**asking [22]**   5/2 15/6 15/20
21/24 22/22 22/24 22/24
23/2 23/3 23/12 23/24
24/17 25/14 32/17 44/2
44/2 46/12 48/4 66/2 66/5
77/9 77/15
**asking is [1]**   48/4
**asks [1]**   66/25
**asserts [2]**   16/11 64/3
**assist [3]**   70/2 73/22
73/22
**assistant [4]**   26/5 26/6
27/5 27/6
**assume [3]**   21/22 23/7 66/6
**assuming [7]**   6/25 22/17
39/20 43/3 49/23 53/14
56/22
**assumption [1]**   53/16
**assurances [1]**   86/4
**ASTM [13]**   82/18 82/23 83/4
83/16 83/21 83/25 84/7
88/18 89/17 90/1 90/3
90/12 90/22
**at [79]**   2/4 2/7 2/12 2/15
2/16 5/3 5/17 6/22 7/24
8/13 8/16 8/18 9/22 9/22
12/19 15/25 16/15 20/20
20/25 23/2 23/3 23/4 23/4
23/4 23/17 23/20 23/24
26/12 26/16 27/6 27/6 29/9
33/12 36/5 37/13 38/24
39/13 41/16 43/10 43/22
45/11 46/16 50/25 52/15
53/7 53/17 53/18 59/12
59/19 60/4 61/12 61/13
61/20 61/22 61/24 62/1
62/4 62/7 62/9 62/20 62/23
62/25 63/9 63/19 65/7
68/10 75/8 77/15 81/20
83/24 89/23 90/1 91/8
91/12 91/25 92/1 92/5
92/12 92/15
**Atascadero [1]**   33/22
**attach [1]**   82/21
**attempt [1]**   10/8
**attention [4]**   15/14 15/17
69/19 70/24
**attorney [7]**   2/4 2/7 2/12
2/15 2/16 60/15 78/6

## A

**attorneys [15]**   6/16 7/9
   7/13 42/4 51/3 52/15 53/7
   60/14 61/22 65/10 65/16
   70/14 70/20 78/4 78/6
**attributes [1]**   79/14
**audience [1]**   15/4
**availability [1]**   10/8
**AVENUE [1]**   2/5
**aware [2]**   75/5 78/11
**away [1]**   11/2
**awful [1]**   61/18

## B

**back [36]**   12/18 12/19 14/6
   15/8 23/19 27/20 28/3
   40/14 43/17 48/2 50/18
   53/16 56/1 56/19 58/4
   59/12 59/14 59/17 59/20
   60/4 60/8 61/1 61/15 62/22
   63/9 70/15 74/23 77/19
   84/25 86/18 91/9 91/15
   92/1 92/4 92/4 92/12
**background [1]**   36/17
**backing [1]**   79/10
**bacteria [12]**   43/6 72/13
   76/23 77/7 78/13 82/20
   82/24 83/1 83/10 84/20
   85/17 91/5
**Baptist [8]**   17/10 18/12
   73/24 79/17 79/19 79/20
   79/23 80/4
**bar [1]**   8/11
**Barbara [1]**   31/17
**barred [1]**   9/17
**barrier [5]**   71/24 72/4
   76/2 84/18 87/9
**base [1]**   64/18
**based [7]**   68/11 69/12
   73/21 76/20 77/17 81/12
   83/19
**basically [1]**   6/24
**basis [1]**   78/20
**be [177]**
**bear [1]**   64/18
**Bearman [3]**   73/14 74/7
   74/9
**bears [1]**   68/1
**beating [2]**   66/7 66/8
**beautiful [2]**   33/23 37/24
**because [33]**   7/13 9/13
   10/9 10/12 11/7 15/10
   23/11 24/12 25/5 32/19
   34/18 36/15 42/10 44/7
   45/6 47/11 51/19 53/9
   54/12 61/20 62/12 63/7
   68/11 68/23 77/20 82/25
   83/8 84/4 86/1 88/14 90/2
   90/10 90/24
**becoming [2]**   69/9 86/25
**been [34]**   4/21 5/6 9/17
   12/13 13/25 15/15 19/25
   36/15 37/11 42/19 45/14
   45/18 45/20 46/25 45/24
   45/24 46/4 47/24 48/12
   48/13 48/19 49/7 61/19
   67/8 68/21 69/10 70/13
   71/19 71/23 72/9 73/10
   78/15 84/5 84/15
**before [31]**   5/4 5/6 7/8
   7/9 10/19 10/22 11/5 11/14

   11/21 15/23 16/20 25/6
   26/9 28/23 31/3 32/21
   43/25 49/10 51/10 52/16
   58/4 59/23 60/13 61/2
   62/24 63/18 64/21 70/22
   80/13 82/7 83/5
**beginning [1]**   7/3
**behalf [3]**   4/14 13/14
   13/16
**behind [3]**   79/15 82/15
   86/18
**being [9]**   23/11 26/17
   26/18 46/25 52/23 56/9
   60/5 76/8 92/4
**belief [2]**   80/1 80/12
**believability [1]**   68/1
**believable [1]**   68/3
**believe [21]**   9/16 53/9
   65/17 67/14 67/14 67/15
   71/9 71/13 71/15 72/16
   72/25 73/12 73/18 73/20
   74/14 76/5 76/16 77/4 77/8
   77/18 86/24
**believing [1]**   71/18
**BEN [23]**   2/22 18/9 18/23
   79/2 83/20 83/25 84/8 85/4
   85/14 85/19 85/20 86/12
   86/14 87/5 87/17 88/4
   88/18 89/3 89/15 89/23
   89/24 91/13 91/19
**bench [5]**   7/25 9/13 52/15
   53/7 53/17
**benefit [2]**   73/8 86/20
**benefits [2]**   16/6 72/15
**best [3]**   22/16 86/16 86/17
**betrayal [8]**   82/2 82/3
   83/19 84/11 91/2 91/11
   91/13 91/21
**better [3]**   4/23 12/8 57/20
**between [3]**   7/13 16/12
   66/21
**beyond [5]**   50/3 50/6 50/7
   52/5 73/19
**bias [1]**   67/21
**bid [1]**   75/13
**big [4]**   83/8 87/19 87/20
   88/12
**bigger [1]**   82/9
**Bill [1]**   19/7
**bioburden [1]**   80/13
**bit [15]**   12/8 12/8 16/1
   19/21 20/4 21/24 25/1
   26/12 43/22 61/8 61/10
   62/20 68/7 85/13 92/2
**Blue [1]**   38/3
**board [3]**   19/9 89/7 89/8
**boat [1]**   22/23
**Bob [1]**   19/5
**body [3]**   84/20 88/18 88/18
**Bold [1]**   19/7
**books [1]**   69/8
**bored [1]**   53/12
**both [21]**   4/21 16/13 27/17
   35/3 40/20 41/13 50/23
   52/23 52/24 56/8 58/10
   60/16 66/19 70/22 72/3
   72/4 72/23 74/13 81/15
   83/4 86/4
**bother [1]**   21/14
**bound [1]**   86/2
**box [10]**   15/7 15/22 22/19
   22/20 22/22 22/23 22/24

   44/2 62/10 63/5
**Bozeman [1]**   89/22
**bragged [1]**   89/22
**bragging [1]**   90/15
**branding [1]**   76/9
**breach [8]**   47/25 48/3 48/5
   48/5 64/10 74/22 76/15
   76/18
**breached [1]**   16/12
**break [10]**   7/24 9/24 24/19
   56/17 56/18 60/18 61/13
   62/24 62/25 82/10
**breaking [2]**   83/11 91/25
**brief [1]**   64/1
**briefly [1]**   10/6
**bring [12]**   7/23 9/18 9/22
   9/24 29/22 31/8 32/15
   32/16 37/13 49/3 49/4
   88/19
**bringing [2]**   10/20 32/8
**brother [1]**   42/25
**brought [5]**   9/23 32/18
   37/11 77/13 89/16
**Bruce [5]**   17/12 18/13
   18/15 80/14 80/22
**build [1]**   89/17
**bundle [1]**   80/6
**burden [10]**   50/3 50/7 50/8
   50/11 50/17 52/24 64/7
   64/11 64/14 64/14
**Burns [2]**   5/8 5/13
**business [6]**   45/11 48/12
   64/4 82/4 90/21 90/22
**but [63]**   5/18 7/3 9/7 11/4
   11/23 12/2 15/8 19/18 22/8
   23/1 23/20 24/6 24/18
   24/25 25/12 26/12 28/4
   28/18 32/18 34/3 38/7
   39/21 41/22 41/24 42/12
   42/15 42/25 43/22 44/18
   46/16 47/5 47/15 49/2 51/7
   51/9 51/10 51/18 53/9
   57/14 58/9 58/20 59/13
   59/15 61/11 63/9 65/8 66/4
   66/9 69/25 71/19 72/6
   73/20 74/12 74/13 77/18
   78/5 78/7 84/2 84/9 84/13
   85/7 87/8 91/5

## C

**C-h-a-v-a-r-r-i-a [1]**
   14/11
**CA [1]**   1/24
**calendar [2]**   4/6 13/3
**CALIFORNIA [13]**   1/2 1/20
   2/5 2/13 2/17 4/1 18/14
   18/16 33/23 37/3 37/21
   38/20 64/6
**call [7]**   6/10 6/11 6/17
   8/12 8/17 8/17 15/14
**called [8]**   6/14 14/5 19/16
   19/19 71/22 73/13 77/3
   87/21
**calling [27]**   4/6 13/3 14/5
   17/2 17/3 17/4 17/5 17/7
   17/9 17/11 17/12 17/13
   17/13 17/16 17/17 18/8
   18/10 18/13 18/15 18/22
   18/23 18/24 18/25 19/5
   19/5 72/21 72/23
**came [3]**   8/11 89/18 90/5
**can [81]**   4/18 4/20 5/1 5/6

**C**

**can...** [77]   5/6 5/8 6/3
6/11 6/12 6/19 8/17 9/7
9/22 10/21 11/2 11/5 11/8
11/9 11/20 12/2 12/3 12/9
15/8 18/2 20/5 20/6 20/9
20/15 21/11 21/21 24/4
24/10 24/12 28/7 28/10
28/24 31/5 32/3 32/6 33/1
33/12 33/12 34/20 35/3
35/24 36/2 38/8 40/11
40/19 41/19 41/23 42/13
44/21 45/7 46/10 52/19
53/1 53/2 53/11 53/17
57/22 58/11 60/7 60/10
61/21 61/24 62/15 66/24
68/24 70/22 71/2 72/1 72/2
72/11 73/21 73/22 75/19
76/12 83/2 86/19 92/5
**can't** [20]   5/2 5/11 8/17
15/8 15/15 20/16 23/6 28/2
32/19 33/9 33/11 40/14
42/3 45/7 47/7 47/10 47/16
53/20 59/15 60/23
**cannot** [2]   8/22 67/5
**capable** [2]   89/24 89/25
**capturing** [1]   86/17
**cards** [1]   30/4
**care** [1]   11/19
**carefully** [2]   16/18 81/14
**cares** [1]   23/11
**case** [117]
**cases** [6]   21/6 49/21 50/19
50/22 50/23 81/19
**cause** [11]   27/14 28/19
29/19 33/17 53/23 53/24
54/1 54/17 59/23 72/1 72/2
**caused** [1]   78/13
**Cedars** [1]   39/14
**Cedars-Sinai** [1]   39/14
**cell** [1]   77/2
**CENTER** [1]   2/16
**centers** [1]   82/8
**CENTRAL** [2]   1/2 33/23
**CEO** [4]   17/8 19/4 19/7
72/24
**certain** [8]   10/9 23/2 23/2
23/3 23/4 23/4 23/5 65/2
**certainly** [2]   33/14 41/24
**certainty** [20]   84/4 84/5
87/12 87/12 87/21 87/21
87/23 87/24 88/8 88/8
88/14 88/14 89/11 90/9
90/10 90/17 90/17 90/20
90/20 91/20
**CERTIFICATE** [1]   93/1
**certify** [1]   93/3
**cetera** [5]   4/22 8/23 25/16
43/6 62/6
**challenge** [3]   54/3 54/13
54/20
**challenges** [4]   53/22 54/4
54/9 54/17
**challenging** [1]   42/10
**Chamber** [3]   33/24 34/5
41/3
**chance** [1]   7/5
**change** [3]   23/19 23/19
85/18
**changed** [3]   9/21 74/5 74/5
**changing** [1]   82/14

**channels** [1]   88/12
**character** [2]   81/4 81/17
**Charles** [1]   15/2
**Charlie** [1]   40/24
**Charlotte** [2]   14/11 26/25
**Chavarria** [2]   14/11 27/1
**chef** [1]   28/13
**chemical** [5]   8/6 17/23
75/23 77/4 77/4
**Chemicals** [1]   76/1
**Chevron** [1]   34/9
**CHICAGO** [1]   2/8
**chief** [9]   17/3 17/5 17/10
17/14 17/15 19/4 72/24
73/23 79/17
**choice** [1]   78/7
**circumstantial** [3]   66/15
66/18 66/22
**cite** [1]   74/8
**city** [2]   6/21 24/25
**civil** [7]   4/7 5/8 5/14
13/4 49/18 50/7 51/25
**civility** [1]   12/11
**claim** [10]   18/2 18/19
64/15 64/17 72/11 74/22
76/16 76/19 91/6 91/14
**CLAIMANT** [4]   1/10 2/10 3/7
3/10
**claimed** [1]   74/21
**claiming** [1]   91/4
**claims** [27]   16/6 16/9 38/2
64/7 64/8 71/15 71/16
71/18 71/20 72/21 73/1
73/4 73/7 73/11 73/18
74/11 74/13 74/14 74/18
74/19 74/25 77/9 77/10
77/13 77/20 91/17 91/17
**clarification** [3]   11/6
54/7 57/22
**Clarke** [1]   17/14
**Claudia** [2]   14/21 36/4
**cleanliness** [1]   80/8
**clear** [1]   22/5
**cleared** [1]   88/13
**client** [7]   10/24 20/24
58/5 58/7 58/9 65/16 82/9
**clients** [1]   79/8
**clinical** [2]   74/15 84/18
**clinically** [1]   72/14
**clock** [1]   62/16
**close** [5]   15/17 42/25
69/19 70/23 91/12
**closing** [3]   57/3 65/7
70/15
**clothing** [2]   75/2 82/24
**co** [1]   4/14
**co-counsel** [1]   4/14
**Coast** [1]   33/23
**Code** [1]   93/4
**codes** [1]   64/6
**coffee** [1]   62/7
**coincide** [1]   40/7
**colleague** [1]   16/24
**collectively** [1]   60/1
**combined** [2]   84/16 84/17
**come** [27]   6/2 6/7 6/8 14/6
14/12 15/11 28/7 32/3
39/22 46/10 56/18 58/4
61/15 62/22 63/9 69/6 73/3
89/7 89/8 89/15 89/15
89/16 90/3 90/25 91/9
91/15 92/1

**comes** [8]   6/1 11/21 44/17
44/18 69/2 69/25 70/18
83/11
**comfort** [1]   85/2
**coming** [5]   17/23 62/9 66/4
75/6 83/22
**commenced** [1]   92/15
**comment** [2]   10/10 76/20
**comments** [1]   61/2
**Commerce** [3]   33/24 34/5
41/4
**commercial** [1]   17/5
**commissioned** [1]   73/15
**committed** [2]   52/6 85/21
**communicate** [2]   68/16
68/17
**communicated** [1]   89/8
**communication** [2]   83/14
88/12
**communications** [3]   86/16
87/14 89/19
**community** [1]   78/15
**companies** [3]   72/5 75/10
82/3
**company** [7]   8/6 36/9 36/10
76/2 79/3 79/6 79/9
**company's** [2]   87/22 87/25
**compete** [1]   84/9
**competing** [3]   87/20 88/8
90/17
**competition** [2]   16/8 71/12
**competitor** [2]   81/10 87/2
**complaint** [1]   18/21
**complaints** [1]   74/3
**complete** [1]   87/17
**completed** [2]   68/10 81/18
**completely** [2]   35/23 63/24
**compliance** [3]   39/13 90/5
90/5
**compliant** [1]   90/25
**comport** [1]   83/8
**composer** [1]   38/17
**computer** [2]   11/20 35/1
**concept** [1]   61/5
**concerns** [1]   78/12
**concluded** [1]   74/16
**conclusion** [1]   77/15
**condition** [1]   81/4
**conduct** [3]   68/6 77/11
83/19
**conducted** [1]   85/19
**Conference** [1]   93/8
**conferences** [2]   7/25 9/14
**confidential** [7]   76/15
83/15 85/25 86/3 88/7
88/15 91/19
**confidentiality** [4]   74/23
83/12 86/2 88/2
**confirm** [1]   79/23
**conflict** [1]   41/20
**conformance** [1]   93/7
**confused** [1]   73/7
**connected** [2]   31/1 35/18
**consent** [1]   88/4
**consider** [11]   45/25 64/20
65/1 65/3 65/24 65/25
66/14 66/19 67/11 68/24
77/12
**considered** [1]   65/22
**considering** [1]   67/17
**consist** [1]   64/21
**construction** [3]   27/11

## C

**construction... [2]** 30/24
30/25
**consulting [1]** 69/1
**consumer [2]** 17/16 73/6
**consumers [8]** 16/10 71/17
71/19 71/20 73/6 77/17
77/22 81/8
**contact [3]** 38/5 77/2
79/24
**contends [1]** 64/9
**context [1]** 8/13
**continue [2]** 83/14 88/6
**continued [1]** 74/8
**continues [1]** 77/21
**continuity [1]** 23/23
**contract [12]** 16/12 47/25
47/25 48/3 48/5 48/5 48/22
48/24 64/10 74/23 76/15
76/18
**contractor [1]** 39/13
**contradicts [1]** 67/23
**control [2]** 66/24 73/22
**controls [4]** 65/10 65/12
65/14 67/22
**Convicted [1]** 50/23
**convince [1]** 82/23
**convinced [1]** 57/5
**cook [1]** 29/15
**cooperation [1]** 62/19
**copy [3]** 11/15 11/17 62/7
**correct [12]** 21/4 21/13
21/16 27/21 33/12 37/17
43/14 47/3 50/20 51/12
51/24 93/5
**COSTA [1]** 2/17
**costs [2]** 81/1 81/3
**could [28]** 19/20 26/20
27/16 28/22 30/1 33/20
36/21 36/22 39/2 39/6
40/19 41/3 46/14 47/1 48/6
49/6 50/5 50/17 53/19
53/20 57/3 59/14 59/17
66/19 69/15 83/14 84/22
90/18
**couldn't [1]** 49/25
**counsel [39]** 2/1 4/9 4/12
4/14 8/2 8/7 8/15 8/19
8/22 10/23 12/7 13/6 13/9
13/12 13/17 13/20 13/22
16/21 17/19 17/25 18/3
18/19 19/13 22/12 22/13
53/17 57/23 65/5 66/5
70/10 70/12 71/5 77/24
77/25 78/10 78/23 81/24
81/25 91/24
**count [2]** 56/25 57/1
**COUNTER [6]** 1/10 1/13 2/3
2/10 3/7 3/10
**COUNTER-CLAIMANT [2]** 1/10
3/10
**COUNTER-DEFENDANT [1]** 1/13
**counterclaim [2]** 16/8 78/4
**counterclaiming [1]** 78/3
**counterclaims [2]** 64/12
64/13
**countersue [1]** 74/19
**country [2]** 78/12 83/7
**couple [2]** 8/3 21/1
**course [6]** 6/1 22/11 24/11
24/12 68/15 84/24

**court [37]** 1/1 1/23 4/20
4/24 5/14 6/6 7/17 8/7
8/17 9/2 9/6 10/19 11/5
11/10 12/5 12/10 12/11
12/13 12/25 15/23 24/3
28/7 28/23 35/21 38/9
41/15 48/19 48/24 48/25
49/3 59/23 59/25 66/10
68/22 69/10 69/17 77/11
**Court's [3]** 5/22 65/18
81/13
**courtroom [4]** 60/11 62/14
69/4 69/7
**cover [3]** 4/18 6/6 92/17
**covered [1]** 83/17
**crime [1]** 52/6
**criminal [6]** 49/18 49/19
50/19 50/22 51/25 52/3
**critic [2]** 47/11 47/14
**cross [8]** 5/3 18/2 18/19
18/21 32/20 38/3 70/11
70/12
**cross-claim [2]** 18/2 18/19
**cross-complaint [1]** 18/21
**cross-examine [3]** 5/3
70/11 70/12
**cross-examined [1]** 32/20
**crowded [1]** 40/25
**CRR [1]** 1/23
**crush [1]** 84/15
**CSR [2]** 1/23 93/15
**culminated [1]** 80/12
**current [3]** 18/10 80/15
81/3
**curtail [1]** 78/19
**custody [2]** 27/5 27/6
**customers [2]** 16/7 86/7
**cut [1]** 8/10
**cut-off [1]** 8/10
**CV [1]** 1/7

## D

**D-e-p-e-r-a-l-t-a [1]**
14/20
**D-i-x-o-n [1]** 15/1
**D-o-n-o-v-a-n [1]** 14/25
**damages [2]** 73/10 77/16
**danger [1]** 82/14
**Daniel [2]** 14/23 37/2
**DARMSTADTER [4]** 2/7 4/11
13/11 16/25
**data [1]** 80/9
**date [3]** 23/2 23/4 93/10
**David [5]** 8/6 17/11 17/13
17/22 73/9
**Dawn [1]** 17/14
**day [11]** 1/17 6/10 6/10
7/1 10/22 19/17 19/18
41/25 42/5 91/8 92/3
**days [3]** 5/11 41/21 91/8
**DEAKINS [1]** 2/15
**deal [4]** 8/18 36/11 55/2
83/8
**dealing [3]** 35/19 38/7
42/21
**dealt [1]** 47/24
**death [2]** 7/16 53/12
**deceit [8]** 82/2 82/3 83/11
83/11 84/11 91/2 91/11
91/21
**deception [1]** 87/17
**decide [7]** 21/11 63/18

66/11 66/23 67/13 68/9
**decided [3]** 24/13 43/25
85/11
**deciding [4]** 64/20 65/3
67/11 67/13
**decision [3]** 64/18 81/12
81/20
**defendant [11]** 1/9 1/13
2/3 2/10 3/9 16/5 16/8
70/11 70/11 72/7 78/22
**DEFENDANT/COUNTER-CLAIMANT [1]**
2/10
**defense [9]** 18/2 55/7
55/23 56/12 64/15 64/17
78/1 78/2 78/3
**defined [1]** 22/9
**definitely [1]** 9/1
**degradation [1]** 72/2
**deliberate [1]** 70/16
**deliberated [1]** 51/10
**deliberation [3]** 21/21
49/12 68/10
**deliberations [4]** 51/7
63/21 69/20 81/17
**demand [1]** 76/14
**demonstrable [1]** 82/9
**demonstration [1]** 85/19
**denied [2]** 8/10 10/4
**denies [2]** 64/8 64/12
**deny [1]** 16/13
**Department [1]** 35/12
**depend [3]** 68/2 70/2 70/3
**depending [1]** 9/21
**Deperalta [2]** 14/20 35/8
**deposition [4]** 58/13 58/14
58/17 73/25
**depositions [1]** 10/13
**described [1]** 53/3
**deserves [1]** 68/5
**designed [1]** 88/6
**Designer [1]** 37/5
**desperate [1]** 86/18
**desperation [1]** 86/19
**destroy [3]** 84/3 89/18
89/19
**determine [10]** 22/3 22/6
22/14 26/14 28/8 28/24
32/5 58/3 69/10 81/6
**determined [1]** 29/23
**develop [1]** 79/10
**developed [1]** 86/21
**developing [4]** 84/6 84/6
84/8 85/11
**development [3]** 81/1 84/1
88/7
**device [2]** 72/8 72/10
**Diane [4]** 17/9 18/11 73/23
79/16
**dictionaries [1]** 69/1
**did [22]** 21/18 43/12 48/24
48/25 51/7 51/9 51/16
53/11 66/17 78/25 82/11
84/6 84/22 84/22 84/24
86/1 89/1 89/19 90/2 90/10
90/16 91/15
**didn't [6]** 13/20 44/19
44/19 46/10 51/5 56/25
**differ [1]** 65/9
**difference [1]** 72/6
**different [7]** 15/14 23/22
52/8 63/7 75/3 75/21 92/2

**D**

differently [2]  65/11
65/13
difficult [1]  32/21
dire [5]  3/5 4/18 6/15
7/25 12/20
direct [5]  66/15 66/15
66/16 66/22 79/24
directly [2]  15/7 15/21
director [1]  17/6
directors [1]  19/9
dirty [1]  44/25
disclosed [3]  76/7 88/2
88/16
disclosing [1]  74/8
discovery [1]  8/9
discuss [3]  60/19 68/21
92/7
discussing [2]  27/25 89/9
Discussion [1]  3/4
discussions [1]  85/6
disease [2]  72/12 74/10
disgorge [1]  77/19
dislikes [1]  63/16
dispute [1]  48/24
disregard [2]  65/21 67/10
distinction [3]  50/13
66/20 66/21
distracted [2]  77/10 77/13
DISTRICT [4]  1/1 1/2 1/3
1/23
DIVISION [1]  1/2
Dixon [2]  15/1 39/11
do [82]  5/4 5/8 6/12 7/20
9/18 10/14 11/8 11/20
12/10 14/8 15/12 15/25
18/3 20/15 20/15 20/16
20/16 21/5 22/4 22/18
23/12 24/24 25/22 26/17
26/18 26/20 27/10 29/7
29/14 29/24 30/1 31/5
31/16 32/6 32/21 33/1 33/9
33/11 33/12 34/21 35/10
35/24 36/20 38/11 39/25
40/11 40/14 41/18 42/24
44/2 44/21 44/25 45/19
46/14 47/7 47/10 49/22
51/6 52/16 53/1 53/2 53/3
53/12 56/17 58/22 59/22
60/23 62/21 62/22 63/19
63/22 63/23 65/25 68/8
68/16 68/17 68/18 68/25
69/2 71/2 88/9 90/11
document [1]  6/6
documents [3]  6/4 10/20
10/21
does [25]  11/12 19/23
20/19 23/3 23/13 24/15
27/10 29/14 32/17 35/22
40/8 40/9 41/9 43/2 43/3
44/4 45/4 46/12 52/20
52/21 68/2 72/2 76/1 77/6
84/11
doesn't [9]  6/7 7/10 15/8
23/6 28/7 32/3 57/1 75/25
76/1
dog [1]  22/23
doing [6]  14/9 33/17 47/1
53/4 53/13 91/20
dominance [2]  82/11 82/13
don't [49]  5/9 5/14 6/23
7/2 7/12 7/22 11/4 11/19
12/12 12/12 13/12 13/13
12/12 12/12 15/18 18/3
18/4 22/4 23/18 24/24 25/5
25/13 25/17 32/15 32/16
33/16 34/18 34/25 36/19
36/22 38/5 38/5 39/20
42/15 44/8 44/24 49/14
53/10 54/20 68/25 69/5
69/23 75/24 85/8 85/9
89/23 89/24 92/11
done [2]  22/17 55/1
Donovan [2]  14/25 38/16
Donovan-Jones [2]  14/25
38/16
door [4]  9/16 10/14 10/16
62/11
door's [1]  10/2
doubt [4]  50/4 50/6 50/8
52/5
Dow [5]  8/6 17/23 75/23
75/25 77/3
down [11]  4/17 6/13 7/7
14/14 26/7 28/10 36/2
42/13 42/23 48/23 56/8
downtown [1]  37/24
Dr. [5]  17/17 18/13 18/15
80/14 80/22
Dr. Bruce [4]  18/13 18/15
80/14 80/22
Dr. John [1]  17/17
DRIVE [2]  2/8 2/16
driven [1]  85/21
drug [1]  52/1
Drugs [1]  50/1
due [4]  74/4 74/16 77/17
80/1
during [15]  6/1 6/5 6/8
7/20 8/1 22/7 22/11 33/8
66/12 68/14 69/20 80/5
84/24 85/14 87/18
duties [1]  63/21
duty [15]  22/2 22/2 23/15
23/16 26/13 32/4 41/17
47/1 50/25 51/6 51/10
63/12 63/12 65/16 68/15

**E**

e-mails [4]  88/9 88/10
90/4 90/9
each [16]  4/25 5/19 7/15
16/16 20/6 20/7 20/8 24/12
24/19 24/20 54/3 56/22
57/22 59/22 69/12 70/6
earlier [5]  5/25 7/19
58/13 62/16 66/2
early [2]  61/18 80/5
earnest [1]  86/14
east [6]  1/24 25/2 25/24
25/25 26/2 26/3
eavesdrop [1]  53/15
effective [4]  60/14 84/19
88/22 91/4
effectiveness [2]  74/9
88/24
efficient [3]  5/5 60/15
62/15
effort [3]  81/21 82/13
83/21
efforts [2]  78/18 90/14
eight [8]  54/5 54/10 54/12
54/16 55/13 56/8 59/19
62/13
either [11]  11/9 20/6 22/5
9/20 10/3 20/11 36/21
37/16 38/12 45/20 49/6
53/23 58/11 66/15 66/22
electronically [3]  11/8
11/9 11/25
eloquent [1]  78/23
else [18]  6/9 6/22 7/5
32/2 32/20 34/19 36/15
40/19 43/16 45/3 47/23
48/11 48/14 50/25 60/19
61/4 61/7 92/8
else's [1]  57/21
embarrassing [1]  62/8
emerging [1]  75/5
emphatically [2]  82/5
employee [3]  8/6 19/2 19/3
employees [5]  72/22 72/22
79/22 79/24 80/19
end [12]  10/22 23/17 23/20
26/16 41/16 41/23 41/24
62/3 63/19 68/10 68/15
91/8
engaged [4]  16/7 16/9 64/4
64/9
engineer [1]  35/16
enough [5]  24/8 33/11 47/6
47/17 62/3
ensure [1]  69/11
enter [2]  14/14 81/17
entered [1]  85/5
entire [4]  5/8 5/14 69/16
78/7
entities [2]  75/12 91/2
entitled [1]  93/6
entrepreneur [1]  36/9
environmental [1]  80/7
EPA [1]  74/13
epidem [1]  80/10
epidemiologist [1]  80/11
equipment [4]  36/11 38/6
38/8 39/21
ERICKSEN [1]  2/12
establish [1]  73/18
established [1]  79/4
establishes [1]  73/6
et [5]  4/22 8/23 25/16
43/6 62/6
et cetera [5]  4/22 8/23
25/16 43/6 62/6
evaluation [1]  80/24
even [5]  15/20 34/15 49/7
54/13 90/19
ever [2]  43/2 43/3
every [2]  6/10 60/18
everybody [5]  20/11 34/19
46/24 54/17 61/6
Everybody's [1]  13/25
everyone [2]  33/5 57/20
everything [7]  7/5 34/19
36/14 42/13 67/15 69/8
86/4
evidence [147]
evidentiary [1]  5/23
evolved [1]  79/9
Exactly [2]  55/3 59/4
examine [3]  5/3 70/11
70/12
examined [1]  32/20
exception [1]  61/10
excited [1]  89/3

**E**

exclude [3]   8/8 8/16 58/8
excluded [2]   6/2 65/20
exclusively [1]   61/11
excuse [13]   13/19 29/7
34/11 55/8 55/16 55/24
56/2 62/21 67/23 68/19
84/20 87/15 92/3
excused [6]   55/25 59/12
59/13 60/4 60/11 62/1
excusing [1]   61/24
executed [1]   74/23
executive [2]   72/24 79/18
exercise [2]   54/10 54/13
exhibit [5]   10/23 11/9
67/1 67/4 67/5
exhibits [5]   4/23 11/8
22/10 64/22 65/1
exited [1]   60/11
expand [1]   82/13
expect [2]   12/14 70/8
expected [1]   4/21
expensive [1]   75/16
experience [14]   23/10 40/1
40/8 42/18 42/25 43/9
43/16 45/5 45/14 48/4 49/7
50/25 51/7 60/17
experienced [2]   38/7 44/6
experiences [10]   28/6
29/24 31/8 33/6 33/10
37/11 38/24 39/19 40/7
42/17
expert [5]   17/17 19/10
73/5 73/9 80/15
experts [1]   17/11
explain [5]   5/13 22/16
50/14 80/25 81/13
explained [2]   5/14 5/24
exposed [4]   43/19 43/20
68/13 69/17
exposure [4]   39/21 39/25
42/18 42/19
express [5]   60/20 60/23
61/3 61/3 92/8
extent [3]   44/12 76/5 76/7
extremely [1]   4/21

**F**

fabric [11]   72/2 72/9 72/9
73/16 74/5 74/6 74/7 75/12
75/16 77/6 84/21
fabrics [2]   74/10 79/11
face [8]   44/2 86/22 86/23
87/1 87/2 87/3 87/5 87/10
faces [2]   86/21 87/16
facilities [1]   39/18
fact [13]   27/24 46/23
66/16 66/19 67/25 68/2
71/13 73/7 74/14 75/1
76/25 77/4 89/21
facts [29]   22/3 22/6 22/13
22/14 23/13 23/14 23/25
24/3 24/6 26/15 28/19
28/25 30/5 32/5 35/2 35/3
39/3 41/14 44/4 52/20
52/21 63/13 63/14 64/21
64/23 65/3 65/9 66/18
67/13
fair [13]   27/16 35/3 36/21
40/20 41/12 41/13 41/19
42/2 49/6 52/23 52/24
69/12 71/12
fairly [2]   60/13 60/13
fairly — well [1]   60/13
fairness [1]   69/14
fall [1]   30/4
false [22]   16/5 16/9 45/10
45/20 45/21 45/25 64/4
64/9 71/15 71/17 72/17
73/1 73/11 74/21 76/20
77/18 77/20 81/7 82/12
83/12 88/4 91/17
falsely [2]   91/3 91/3
familiar [1]   21/23
family [2]   10/9 82/22
far [7]   7/12 14/6 14/7
23/12 24/15 42/17 70/17
fast [1]   4/23
father [3]   27/9 29/13
30/23
favor [2]   81/20 91/16
FAVRET [22]   2/22 18/9
18/23 72/23 79/2 83/20
83/25 84/8 85/4 85/10
85/14 86/12 87/5 87/17
88/4 88/18 89/3 89/15
89/23 89/24 91/13 91/19
FDA [3]   72/10 74/13 88/25
feel [10]   27/16 36/20
37/15 38/11 39/2 40/14
45/24 46/5 53/2 70/1
feelings [3]   34/23 44/9
81/16
fellow [1]   68/9
felt [2]   33/8 47/1
Fernando [2]   30/12 35/9
few [4]   4/18 68/6 78/11
91/8
field [8]   27/21 32/1 35/18
35/20 37/12 37/12 38/6
42/20
fields [1]   45/5
figure [2]   24/21 49/25
fill [1]   14/8
filled [1]   14/7
final [2]   63/20 63/20
finally [1]   73/9
finances [1]   18/17
financial [7]   19/4 41/2
41/5 50/1 79/10 80/25 81/3
find [3]   41/12 63/13 66/19
fine [2]   12/2 58/20
finish [2]   5/18 19/18
firm [3]   16/24 20/25 21/2
first [23]   4/19 7/1 14/7
14/21 15/3 15/12 19/18
22/2 23/15 24/20 36/3
41/11 41/25 53/22 54/6
54/7 54/10 54/12 54/16
55/13 68/8 70/5 70/21
fit [2]   75/21 85/2
five [4]   4/24 5/18 42/5
57/4
five-day [1]   42/5
fixing [2]   89/24 89/25
flaw [2]   86/13 86/13
floods [2]   8/22 9/5
Florida [5]   8/22 8/22 9/3
9/5 17/10
flow [1]   88/6
fluid [7]   71/24 71/24 72/4
76/1 80/3 84/17 87/9
focus [1]   85/2
focused [1]   82/18
focusing [2]   11/4 24/10
Foley [7]   7/14 24/1
25/12 25/14 26/14 63/15
64/1
follow-up [2]   25/12 25/14
following [4]   10/3 17/2
59/8 70/5
footwear [1]   75/3
foregoing [1]   93/4
forensic [2]   17/12 73/10
forget [1]   49/11
forgot [1]   17/20
form [5]   60/19 60/23 61/2
82/4 92/8
format [1]   93/7
former [4]   17/4 19/2 19/3
72/22
Forty [1]   57/11
forward [1]   14/12
found [1]   73/16
founder [4]   17/8 18/10
72/23 79/3
four [6]   18/8 19/17 25/11
42/5 54/4 59/11
four-day [1]   19/17
framing [1]   63/7
Frank [3]   14/19 33/22 35/4
Frattarelli [3]   8/6 8/11
17/22
free [1]   70/1
Frequently [1]   76/21
Friday [4]   6/25 19/18
41/20 41/22
friends [1]   48/13
front [5]   6/5 7/21 8/15
9/6 10/20
functions [1]   34/21
further [1]   78/18

**G**

G-r-a-d-i-n [1]   14/23
gain [2]   9/2 34/8
gained [1]   79/10
garments [2]   40/6 82/19
GARY [1]   1/3
gave [7]   51/17 84/10 86/4
86/5 86/7 86/8 86/11
gee [2]   28/3 44/19
general [7]   20/6 20/9
20/10 20/15 24/17 42/9
48/17
gentleman [4]   40/13 43/25
45/4 45/8
gentlemen [15]   14/4 15/3
15/23 19/14 51/2 52/14
60/12 63/9 71/8 78/11
87/23 88/11 91/1 91/20
91/25
get [36]   5/10 7/4 7/5 7/6
7/7 7/8 7/12 9/8 12/8
12/12 12/20 16/20 20/11
25/4 32/9 36/2 42/10 42/12
42/23 43/17 44/25 45/13
46/2 47/1 48/2 51/9 54/12
57/22 57/23 61/20 62/7
62/16 62/16 62/23 81/19
92/3
gets [1]   12/19
getting [2]   12/9 41/22
give [29]   4/24 5/3 5/19
6/18 7/4 8/13 20/14 23/17
23/20 24/6 24/10 25/1 25/2

## G

**give... [16]**   26/16 40/9
41/13 41/15 46/24 50/17
56/18 62/22 63/14 63/15
63/20 64/1 66/3 66/8 66/23
71/9
**given [5]**   5/20 48/14 66/20
66/22 69/20
**gives [1]**   61/15
**giving [2]**   4/25 23/25
**gloves [1]**   78/18
**go [46]**   7/1 7/3 7/11 7/18
9/19 11/12 12/6 13/22
14/14 20/7 20/17 23/7
23/18 23/19 27/20 38/1
42/17 46/3 47/16 48/24
48/25 50/10 52/24 56/19
58/16 59/12 59/14 59/17
60/4 60/6 60/7 61/1 61/13
61/15 61/19 61/21 62/18
63/9 69/5 69/7 70/15 70/19
70/24 73/18 77/24 89/4
**goals [1]**   79/5
**God [1]**   59/25
**goes [4]**   55/11 55/12 55/22
56/1
**going [126]**
**gonna [1]**   47/4
**good [23]**   4/10 4/13 10/12
12/14 13/7 13/10 13/13
13/15 16/23 18/20 22/8
26/17 26/20 34/15 37/15
38/11 41/11 53/15 57/14
60/15 60/16 60/16 82/1
**got [10]**   20/3 51/4 51/23
53/12 55/3 59/11 76/19
78/3 89/12 91/19
**gotta [4]**   7/11 28/5 60/6
69/6
**govern [1]**   63/21
**governing [1]**   88/18
**government [3]**   50/4 52/6
83/6
**governmental [1]**   81/9
**Gradin [2]**   14/23 37/2
**grant [2]**   9/20 58/11
**granted [1]**   10/4
**gravity [1]**   90/7
**great [1]**   45/2
**greater [1]**   90/19
**group [6]**   18/16 79/19
80/16 80/23 82/18 88/19
**guarantee [1]**   61/22
**guess [4]**   22/16 49/1 50/16
67/7
**guilty [2]**   50/5 81/7

## H

**H-a-t-z-m-a-n [1]**   14/19
**H-u-t-c-h-i-n-s-o-n [1]**
15/2
**had [31]**   8/2 9/6 23/21
24/8 24/9 28/6 28/7 29/24
31/9 39/22 42/17 42/19
43/16 46/9 50/5 50/19
50/25 75/11 75/18 80/2
80/4 84/5 84/15 84/25 85/1
85/2 85/16 86/16 86/17
87/4 91/6
**half [1]**   57/4
**halfway [1]**   61/22
**hand [13]**   15/19 20/12
27/17 31/3 40/24 43/15
47/17 48/7 48/11 48/15
78/16 78/17 80/7
**hand-washing [2]**   78/17
80/7
**handle [1]**   70/18
**hands [2]**   21/21 59/21
**HANNA [8]**   2/4 3/8 4/10
13/7 16/23 53/24 55/5 56/5
**happen [3]**   44/19 44/20
45/7
**happened [7]**   23/2 23/4
34/16 40/9 44/7 90/7 90/15
**happening [1]**   90/1
**happens [2]**   28/4 40/14
**happy [2]**   8/13 42/1
**hard [3]**   24/21 46/20 92/3
**harm [1]**   81/10
**has [38]**   4/21 8/7 9/16
16/8 23/20 24/13 29/22
32/2 36/9 37/25 42/19
42/19 43/6 45/18 45/19
47/24 48/18 58/5 64/7
64/11 64/14 69/10 69/13
70/13 71/18 74/15 75/17
76/6 76/19 77/11 77/17
77/19 77/20 77/21 79/6
79/12 81/2 83/1
**Hatzman [2]**   14/19 33/22
**have [166]**
**haven't [2]**   26/11 28/17
**having [3]**   61/25 72/9 72/9
**he [33]**   8/6 17/3 17/8
17/22 18/14 18/16 21/2
27/10 29/14 30/23 36/9
39/17 43/2 43/3 43/3 43/6
51/22 73/3 79/12 80/16
80/19 80/24 84/15 85/21
86/1 86/6 86/7 86/11 86/18
89/3 89/8 89/8 89/9
**he'll [2]**   17/23 81/2
**He's [7]**   29/15 35/15 79/2
79/4 79/7 79/8 80/23
**head [5]**   19/6 26/7 45/16
45/22 48/23
**health [6]**   16/6 18/13
79/17 79/19 79/20 79/23
**healthcare [11]**   30/15 31/1
31/3 78/14 78/19 79/13
79/21 82/20 82/21 82/25
83/9
**hear [26]**   15/19 19/7 19/8
24/3 28/23 34/18 38/9
38/25 48/6 51/16 53/10
53/11 61/1 61/2 65/11
66/10 67/19 69/25 74/2
77/3 79/1 79/5 79/20 79/25
80/4 80/9
**heard [21]**   15/13 18/8
18/12 26/11 27/12 27/24
28/17 32/2 34/19 34/22
36/14 37/10 38/7 42/19
51/13 61/5 66/17 78/23
81/5 91/13 91/14
**hearing [10]**   9/22 15/15
18/11 27/14 28/20 29/19
69/24 73/7 73/13 76/24
**held [3]**   13/1 63/2 93/6
**help [10]**   59/25 64/1 65/8
70/2 70/7 70/17 71/2 80/8
84/1 89/17
**helps [1]**   69/25
**her [13]**   67/14 70/19 70/22
**here [48]**   5/10 6/9 7/4 7/7
9/2 10/11 10/12 10/15
12/15 12/19 14/14 15/7
15/11 15/22 18/14 18/16
22/10 24/3 25/4 28/2 28/5
28/7 29/23 32/3 35/22 38/9
41/15 42/19 48/3 52/15
53/7 56/9 58/1 61/10 62/10
62/11 62/18 64/22 69/6
69/10 71/13 71/21 71/25
72/7 73/20 78/25 82/4 82/7
**Here's [2]**   89/5 89/6
**hereby [1]**   93/3
**Hey [4]**   33/9 33/11 47/7
47/18
**Hi [4]**   30/10 35/8 36/4
37/20
**high [2]**   38/17 50/4
**HIGHTOWER [6]**   2/12 3/9
4/15 13/23 18/6 78/21
**Hills [1]**   35/9
**him [11]**   8/12 8/17 84/14
84/14 85/22 85/23 85/23
86/6 86/7 86/8 89/9
**hired [1]**   80/16
**his [9]**   21/5 36/9 43/2
43/3 80/23 80/24 86/6
86/13 86/18
**history [2]**   87/22 87/25
**hmm [5]**   12/23 46/1 56/14
71/7 89/14
**Hollywood [1]**   40/25
**home [26]**   25/9 25/9 26/8
26/9 27/7 27/8 28/14 28/15
29/11 29/12 30/19 30/20
31/19 34/11 34/11 34/12
35/14 35/14 36/5 37/7 37/8
39/15 39/16 41/6 41/7
50/10
**homes [1]**   78/14
**honest [5]**   46/21 46/23
46/23 46/25 47/4
**Honor [30]**   4/10 4/13 8/3
8/10 8/20 9/11 10/6 10/17
10/18 11/3 11/22 12/21
13/7 13/10 13/13 13/15
14/2 14/3 16/22 55/15
56/15 57/7 58/4 59/4 59/6
71/4 71/6 78/10 81/23
89/13
**HONORABLE [1]**   1/3
**hook [2]**   40/18 40/22
**hooked [1]**   85/20
**hope [2]**   12/7 60/16
**hopefully [4]**   12/6 12/7
41/24 62/23
**hospital [9]**   16/6 16/10
17/10 43/18 71/14 72/13
73/24 74/1 75/4
**hospitals [1]**   79/18
**hot [1]**   55/21
**hour [5]**   5/3 61/16 61/16
84/21 88/24
**hours [9]**   4/25 4/25 5/1
5/8 5/12 5/12 5/18 5/19
57/3
**housekeeping [2]**   9/10
62/20
**how [40]**   9/18 11/19 21/20
22/3 28/17 35/18 37/10

**H**

**how... [33]** 38/5 38/5
38/21 39/19 39/20 43/5
43/24 48/12 49/10 49/11
51/22 66/23 68/3 68/4
70/18 75/19 76/22 76/25
77/2 77/4 79/6 79/9 79/12
80/19 80/25 81/3 83/16
85/18 86/18 88/9 88/14
90/22 90/22
**however [1]** 8/10
**huge [1]** 62/14
**humbling [1]** 23/10
**hundred [2]** 6/6 6/7
**hundred-page [1]** 6/6
**hurricane [1]** 10/10
**husband [5]** 35/15 36/8
38/3 38/17 39/17
**Hutchinson [2]** 15/2 40/25
**hyphen [1]** 14/25

**I**

**I'd [4]** 10/2 10/6 24/17
47/16
**I'll [13]** 5/13 7/4 9/20
9/22 10/3 14/8 24/9 33/19
40/12 57/2 60/18 65/3
81/19
**I'm [89]** 4/25 5/18 6/9
6/15 6/25 11/16 13/5 13/20
14/12 15/12 15/16 15/20
15/25 16/1 16/15 16/17
16/23 17/12 17/13 17/20
22/16 23/25 24/20 25/11
25/12 25/16 27/5 27/6
28/13 29/22 31/15 32/9
32/15 32/22 32/23 32/24
32/25 33/16 34/1 34/2 34/3
34/15 35/8 35/11 35/13
36/1 36/5 37/22 38/16
39/20 40/9 41/2 41/5 41/20
42/1 42/25 43/3 43/19
43/20 46/8 47/4 48/22
49/23 51/2 52/14 53/6
53/13 53/14 54/23 55/11
56/3 56/16 56/18 56/22
57/8 58/11 59/8 59/16
59/17 59/19 60/23 61/8
61/23 61/24 62/18 62/21
78/25 82/7 91/15
**I've [16]** 5/20 7/9 7/11
7/12 19/20 34/22 42/4
43/23 52/17 53/3 60/13
61/19 64/21 66/2 68/6
70/19
**idea [1]** 75/19
**ideas [1]** 82/11
**identify [7]** 6/19 10/25
11/18 11/19 11/21 53/19
53/20
**if [95]**
**ignore [2]** 67/7 67/10
**illegal [1]** 87/2
**ILLINOIS [1]** 2/8
**illness [1]** 74/4
**illnesses [2]** 72/12 78/13
**imagine [1]** 42/3
**immediate [1]** 72/24
**immediately [6]** 68/22
69/18 76/23 77/1 77/7 91/5
**impartial [2]** 27/17 41/13

**impeach [2]** 10/8 10/8
**implementing [3]** 87/20
88/22 89/7
**importance [2]** 71/11 79/21
**important [14]** 22/21 23/8
28/1 35/19 43/24 46/25
62/2 68/3 69/25 71/25 78/2
87/22 87/24 90/22
**importantly [1]** 90/19
**improper [3]** 65/17 82/17
88/1
**improperly [1]** 82/10
**in [282]**
**in limine [3]** 5/20 5/22
5/23
**INC [17]** 1/5 1/8 1/9 1/12
2/3 2/11 3/8 3/9 3/11 4/7
4/8 13/4 13/11 18/7 18/25
19/10 82/8
**inception [1]** 79/7
**included [1]** 8/9
**including [4]** 55/14 75/3
80/2 80/7
**Incorporated [1]** 64/7
**incorporating [1]** 52/17
**increased [2]** 78/12 78/17
**incurred [2]** 73/11 81/1
**indeed [1]** 48/25
**indicate [1]** 20/12
**indicated [3]** 5/4 85/8
89/5
**individual [3]** 19/6 19/8
61/7
**individually [1]** 42/14
**individuals [3]** 43/20
75/10 88/20
**industry [13]** 75/1 75/2
75/2 75/4 79/11 79/13
81/11 83/18 83/23 85/18
86/11 88/25 90/2
**ineffective [3]** 76/23 77/7
91/5
**infection [4]** 72/13 73/22
74/10 74/16
**infections [1]** 80/9
**inflexible [1]** 75/18
**influence [1]** 21/8
**influenced [2]** 63/16 65/18
**information [13]** 68/14
69/17 76/16 79/14 83/16
85/25 86/3 86/9 88/1 88/3
88/7 88/15 91/19
**informed [1]** 15/21
**inhibits [1]** 77/2
**injure [1]** 77/21
**injured [3]** 71/19 71/20
77/20
**innovative [1]** 79/11
**input [1]** 80/10
**insofar [1]** 5/25
**instance [1]** 66/6
**instead [6]** 74/7 77/9 84/2
84/2 84/9 89/17
**instituted [1]** 80/13
**instruct [6]** 25/15 25/15
56/19 63/12 65/24 70/13
**instructed [2]** 50/3 65/21
**instruction [1]** 60/22
**instructions [10]** 3/6
51/16 59/24 62/23 63/20
63/21 63/22 68/12 68/24
70/17

**intend [4]** 6/10 6/11 6/17
**intended [1]** 65/7
**intentions [1]** 87/4
**interacted [1]** 79/12
**interaction [1]** 79/8
**interest [1]** 67/20
**interested [5]** 35/21 35/21
44/4 86/24 86/25
**interfere [1]** 69/24
**internal [6]** 86/16 87/14
89/19 90/4 90/8 90/14
**Internet [1]** 69/1
**interpersonal [1]** 46/17
**interpret [1]** 65/8
**interpretations [1]** 47/25
**interrogated [1]** 51/22
**into [29]** 7/1 7/3 12/4
12/12 12/20 22/11 29/22
37/13 39/23 49/3 49/4 51/9
55/11 55/12 55/22 56/1
56/19 58/17 62/23 63/22
64/23 65/1 66/25 67/1
67/18 75/7 81/22 85/6 85/6
**introduce [5]** 6/16 6/17
10/24 16/2 16/16
**introduced [6]** 13/25 18/23
19/14 19/22 19/22 58/17
**introducing [2]** 6/4 16/18
**investigate [1]** 69/7
**investigation [2]** 69/3
69/3
**investments [1]** 75/12
**investors [1]** 79/10
**invitation [1]** 83/24
**involve [1]** 84/12
**involved [8]** 16/16 19/1
19/24 20/19 32/1 45/18
47/24 48/12
**involves [3]** 19/22 41/11
68/14
**irritations [1]** 74/3
**IRVINE [1]** 2/5
**is [263]**
**Isaacson [2]** 18/13 80/14
**isn't [1]** 32/22
**issue [4]** 8/20 11/7 71/13
71/21
**issues [6]** 42/24 10/9 36/15
50/1 51/21 68/14
**it [201]**
**it'd [2]** 33/17 56/22
**it's [53]** 5/5 5/12 5/16
9/21 9/23 10/1 11/11 12/4
22/2 22/9 22/21 23/5 23/7
23/8 23/10 27/25 28/5
32/19 36/9 40/10 42/11
44/25 50/10 50/11 52/17
53/12 62/2 62/17 65/8
65/10 65/12 65/13 66/4
67/2 69/6 69/24 70/24
70/25 71/22 71/25 76/6
76/8 77/3 77/7 78/2 78/13
88/17 89/1 89/6 90/20 91/6
92/2 92/3
**item [2]** 4/6 13/3
**items [1]** 46/5
**its [11]** 28/6 79/6 79/14
80/17 81/8 81/8 82/9 82/11
83/11 83/15 88/17

**J**

**J-o-n-e-s [1]** 14/25

**J**

**Jackson [1]** 17/10
**Jamie [2]** 14/10 25/21
**January [1]** 85/4
**January 2011 [1]** 85/4
**JD [1]** 17/4
**jealous [1]** 25/6
**jeopardizes [1]** 69/14
**jigsaw [1]** 22/18
**job [2]** 36/6 39/20
**John [7]** 6/18 14/18 17/17
31/13 62/2 62/4 73/2
**join [3]** 89/15 89/16 89/16
**joined [1]** 83/25
**Jones [2]** 14/25 38/16
**JOSE [1]** 2/13
**judge [4]** 1/3 12/22 51/16
62/10
**judges [1]** 24/9
**judgment [1]** 77/16
**Judicial [1]** 93/8
**jump [1]** 20/12
**June [2]** 8/9 89/2
**June 7th [1]** 8/9
**juror [50]** 14/13 20/6 20/8
23/11 23/15 23/16 25/19
26/14 26/17 26/20 26/24
27/17 27/19 27/20 28/11
29/3 30/9 31/12 33/18
33/21 34/17 35/7 36/21
37/1 37/16 37/19 38/12
38/15 39/10 40/23 41/13
41/20 43/17 46/2 48/2
51/13 53/1 53/3 55/16
55/21 55/22 56/9 59/10
59/10 59/10 59/10 59/16
60/23 69/13 69/16
**juror is [1]** 26/14
**jurors [23]** 3/4 4/5 13/2
14/5 15/7 15/11 22/1 32/19
41/10 59/7 59/9 59/19 60/1
60/3 60/3 60/11 61/1 61/2
61/19 62/9 62/13 63/5
68/10
**jury [66]** 1/16 3/5 3/6
4/17 5/13 5/17 6/5 6/15
6/19 6/20 7/7 7/10 7/21
7/24 9/3 9/6 9/7 9/24
10/11 10/19 10/21 11/11
11/12 12/4 12/15 12/19
15/6 15/18 15/22 19/23
21/20 22/2 23/24 24/8 24/9
24/20 25/15 28/3 45/18
50/25 51/6 51/10 51/23
52/19 54/5 56/16 59/12
59/14 60/4 60/8 60/21
60/25 61/5 61/24 62/10
63/3 63/5 63/11 63/11
68/15 68/20 69/9 70/15
78/11 81/17 92/10
**just [66]** 6/12 6/18 7/15
7/21 8/12 9/8 9/10 9/19
10/2 10/6 11/6 11/24 12/3
15/23 20/14 21/1 23/5 23/7
23/10 24/25 25/5 26/14
27/20 28/8 31/3 31/7 32/4
32/4 32/12 32/23 33/15
34/2 35/3 36/22 40/8 40/18
41/14 43/23 44/9 44/20
46/11 47/16 48/6 49/14
52/9 52/16 52/20 53/3

56/18 57/5 58/7 58/24 59/9
59/19 61/7 62/16 62/23
63/19 75/11 78/23 87/5
87/6 90/20 91/1 91/1 91/6

**K**

**K-i-n-y-a-h [1]** 15/1
**K-n-i-t-t-l-e [1]** 14/22
**KARMAN [1]** 2/5
**keep [8]** 10/7 15/21 59/14
68/8 69/22 81/16 86/2
88/11
**keeping [2]** 83/13 87/4
**Ken [2]** 5/8 5/13
**Kevin [1]** 19/9
**key [2]** 86/9 88/14
**kill [1]** 72/13
**kind [5]** 25/14 42/9 42/10
60/22 88/20
**kinds [1]** 66/20
**Kinyah [2]** 15/1 39/11
**KLAUSNER [1]** 1/3
**knew [3]** 74/12 87/19 91/18
**Knittle [3]** 14/22 36/5
55/20
**knockoff [2]** 87/13 87/20
**know [59]** 6/13 6/23 7/2
10/2 12/3 15/19 16/19
19/23 20/13 20/14 20/19
21/18 22/5 22/18 22/22
23/1 23/9 24/8 24/11 24/25
26/11 26/14 32/4 32/15
32/17 32/18 32/19 33/5
33/7 33/9 35/20 36/15
36/17 37/11 38/5 38/5
38/21 39/20 40/15 41/16
44/15 44/18 46/7 47/6
47/10 50/9 69/5 69/7 71/16
78/16 79/2 81/16 88/9
90/18 91/21
**knowledge [4]** 28/6 42/20
45/14 84/2
**knows [2]** 6/20 53/21
**Koreatown [1]** 29/6

**L**

**L.A [4]** 25/1 25/2 25/2
28/13
**labeled [1]** 15/24
**lack [3]** 10/8 12/10 73/3
**ladies [15]** 14/4 15/3
15/22 19/14 51/2 52/14
60/12 63/6 71/8 78/10
87/23 88/11 91/1 91/20
91/25
**large [1]** 11/12
**larger [1]** 81/10
**last [6]** 11/6 14/16 15/1
25/8 48/18 78/7
**Lastly [1]** 10/18
**late [6]** 62/6 62/12 62/17
62/17 63/8 75/6
**later [3]** 15/10 85/13
89/11
**launch [3]** 87/22 87/23
**law [32]** 2/4 2/7 2/12 2/15
2/16 16/23 20/25 21/2 22/5
23/16 23/18 23/20 23/22
24/6 24/10 25/15 26/15
30/6 39/6 41/15 45/14

45/14 52/22 63/12 63/14
69/11 70/14 81/13
**lawsuit [2]** 77/10 77/14
**lawsuits [1]** 47/24
**lawyer [3]** 66/25 67/1 67/3
**lawyering [1]** 60/16
**lawyers [3]** 64/23 65/6
65/15
**lead [18]** 85/15
**leader [4]** 17/23 18/24
75/1 75/4
**leadership [1]** 88/19
**leading [2]** 82/18 83/21
**leaning [1]** 36/22
**learn [9]** 69/3 84/4 84/23
85/12 90/7 90/8 90/12
90/18 91/5
**learned [2]** 83/23 91/13
**learning [2]** 83/19 85/10
**least [1]** 62/23
**leave [10]** 28/7 32/3 38/8
40/7 43/12 44/5 44/20
46/10 48/6 59/16
**leaves [1]** 12/15
**leaving [2]** 41/20 82/14
**led [1]** 86/24
**left [1]** 89/12
**legal [2]** 12/16 68/23
**legitimate [1]** 82/4
**Lessem [1]** 17/3
**let [18]** 9/22 15/19 20/4
20/13 20/17 21/1 21/19
21/22 27/20 28/4 31/16
33/4 40/15 48/9 49/2 51/9
68/6 68/17
**let's [10]** 6/9 22/1 25/4
25/19 42/9 42/23 43/17
45/13 46/2 48/2
**leverage [1]** 86/19
**Lia [2]** 14/25 38/16
**life [3]** 29/21 33/5 39/22
**light [1]** 67/25
**like [33]** 5/9 7/22 8/21
10/3 10/6 23/9 23/14 23/17
23/18 23/22 24/1 24/7
27/25 28/23 29/19 30/3
33/6 37/12 39/3 39/7 45/15
46/16 47/25 49/14 49/22
53/15 55/8 55/16 55/24
57/14 57/20 69/6 69/8
**likes [2]** 10/19 63/16
**limine [6]** 5/20 5/22 5/23
8/8 9/18 9/21
**limit [3]** 24/5 28/22 31/7
**limited [6]** 28/1 58/9
65/24 65/25 66/13 73/17
**line [1]** 24/4
**lines [6]** 43/7 45/21 48/15
75/3 75/18 83/14
**lips [1]** 53/15
**list [3]** 6/10 8/5 65/3
**listen [6]** 15/9 15/10
16/17 61/4 77/12 81/14
**listening [1]** 15/15
**literally [3]** 72/17 77/5
77/7
**litigation [1]** 76/13
**little [21]** 12/8 12/8 16/1
19/21 20/4 21/24 23/1 25/1
26/12 40/2 40/4 42/11
43/22 61/8 61/10 62/20

**L**

little... [5]  63/7 68/7
85/13 89/11 92/2
live [19]  6/19 6/21 24/24
25/1 25/1 25/22 27/1 27/2
29/5 30/12 31/16 35/9 36/5
37/21 37/22 38/19 39/12
39/18 40/25
lives [4]  25/8 30/19 34/11
37/7
living [1]  37/6
LLP [2]  2/4 2/7
location [1]  69/5
locations [2]  75/21 78/14
logistical [1]  42/12
long [1]  12/14
longer [3]  5/12 62/18 74/6
looked [1]  88/25
looking [5]  23/24 41/12
75/8 80/2 85/1
looks [1]  69/6
LOS [8]  1/20 1/24 4/1
25/23 26/3 29/6 39/12 62/5
Los Angeles [4]  25/23 29/6
39/12 62/5
lose [2]  54/20 92/6
losing [1]  71/19
loss [2]  77/17 81/2
lost [1]  17/11
lot [11]  5/14 6/22 7/13
8/24 32/17 37/10 47/12
62/5 85/22 85/23 85/25
lunch [7]  61/14 62/24
70/22 70/23 92/1 92/11
92/15

**M**

M-a-r-i-n [1]  14/24
M-e-n-d-e-z [1]  14/16
ma'am [1]  59/17
MacNEIL [3]  1/23 93/14
93/15
made [10]  7/23 16/5 16/13
74/3 74/14 76/14 77/19
87/4 87/25 91/7
mails [4]  88/9 88/10 90/4
90/9
maintain [1]  82/13
maintenance [2]  34/8 39/18
major [1]  47/11
make [22]  7/19 7/20 7/21
8/12 10/10 24/15 33/7
33/15 52/19 52/25 58/24
59/11 61/24 68/25 69/2
69/23 70/6 70/9 70/14
73/17 81/12 83/7
makes [6]  6/1 25/5 66/20
66/21 71/14 71/14
making [3]  4/22 75/10 84/9
managing [1]  80/22
manner [1]  67/20
manpower [1]  62/13
manufacture [1]  75/19
many [8]  22/19 42/9 49/10 49/11
72/20 75/2 75/9 75/16
75/18
mapping [1]  34/14
marbles [1]  50/10
Marc [1]  17/3
Marin [2]  14/24 37/21
mark [2]  85/15 88/20

market [21]  72/8 75/7
82/11 83/19 83/20 85/21
85/9 85/16 85/21 85/24
86/5 86/18 86/25 87/5
87/11 88/5 88/17 89/5 89/6
89/18 90/10
market's [1]  85/8
marketers [1]  85/15
marketing [9]  17/3 17/6
19/2 19/3 76/9 82/17 88/1
88/16 90/15
markets [1]  72/8
Markowski [1]  85/15
masks [1]  78/18
massive [1]  85/16
material [7]  31/2 35/19
39/21 40/1 42/21 43/5
44/16
materials [2]  69/2 86/8
matter [9]  4/16 60/20
60/24 63/24 68/21 83/5
91/22 92/9 93/6
max [1]  57/4
maximum [2]  42/6 56/23
may [53]  7/3 9/17 10/1
11/2 12/5 15/10 19/15
19/15 19/19 20/8 22/22
27/23 32/17 32/18 32/25
32/25 36/15 36/16 40/6
40/7 43/5 43/5 53/9 57/7
57/9 60/22 61/3 61/10
61/18 63/23 64/25 65/6
65/13 65/23 65/23 66/5
66/8 66/10 66/13 66/15
67/3 67/4 67/9 67/13 67/15
67/17 69/22 70/6 70/11
70/12 78/5 78/5 78/6
maybe [7]  6/25 21/19 22/16
41/24 42/5 45/14 56/23
me [45]  4/14 5/9 6/13 8/15
9/7 13/19 15/21 20/4 20/13
20/14 20/17 21/1 21/19
21/22 22/4 25/5 25/6 25/6
27/20 28/4 29/7 31/16 33/4
34/11 43/20 44/7 44/19
44/20 46/6 46/20 49/2
49/10 49/14 50/14 51/9
57/5 59/9 67/23 68/7 68/19
84/21 87/15 89/5 91/10
92/3
mean [7]  10/24 15/8 36/14
47/9 50/10 60/23 71/23
meaning [2]  66/3 66/8
means [8]  5/24 44/5 62/4
62/17 63/17 64/16 67/11
69/5
Meanwhile [1]  87/7
mechanical [1]  35/16
medic [1]  42/25
medical [22]  26/5 26/6
27/21 27/23 27/25 32/1
35/18 35/20 36/11 37/12
38/6 38/6 38/8 39/21 39/21
40/1 42/18 42/20 72/8
72/10 72/11 78/18
medicine [1]  38/8
meet [4]  80/14 80/22 84/23
90/18
meeting [2]  79/2 85/14
meetings [2]  80/4 87/18
Melanie [2]  14/24 37/20
member [4]  19/3 19/9 24/20

79/18
members [3]  63/11 80/11
82/22
memory [6]  65/10 65/12
65/13 67/19 70/2 70/3
Mendez [2]  14/16 29/4
mentioned [5]  19/25 28/4
58/13 68/6 72/19
merchandiser [1]  29/10
merit [1]  74/25
merits [1]  68/18
MESA [1]  2/17
met [4]  5/7 85/4 85/14
87/17
method [1]  76/4
mic [4]  36/2 42/11 42/13
42/23
Michael [1]  18/24
MICHELMAN [4]  2/4 2/7
16/24 20/25
microbiologist [2]  17/18
73/2
microphone [2]  48/2 53/8
mid [1]  89/2
mid-June [1]  89/2
might [17]  5/4 6/2 9/6
23/17 23/18 25/18 27/13
31/4 32/2 35/20 37/13
39/22 44/5 46/20 59/13
67/8 71/2
MIKE [11]  2/21 17/8 85/4
85/7 85/14 87/18 87/21
87/24 89/8 89/9 89/10
milk [1]  83/15
mill [2]  5/10 76/3
million [2]  90/21 90/21
mills [1]  75/20
mind [4]  10/7 68/8 69/23
81/16
mine [1]  57/19
minutes [19]  7/6 56/17
56/22 56/23 56/23 57/6
57/7 57/9 57/10 57/23
57/24 62/12 62/12 62/21
62/21 70/21 78/5 78/8
89/12
misappropriated [2]  16/11
64/10
misappropriation [3]  74/20
76/17 82/16
mislead [1]  65/12
misleading [8]  16/6 64/5
71/15 71/17 72/18 73/1
73/11 74/11
misled [1]  73/7
missed [1]  12/18
mission [3]  79/5 79/20
83/9
mistake [1]  7/23
mistrial [1]  69/15
Mitchell [3]  17/15 17/17
73/3
Mm [5]  12/23 46/1 56/14
71/7 89/14
Mm-hmm [5]  12/23 46/1
56/14 71/7 89/14
MMR [2]  18/14 80/16
Mobley [1]  19/3
moisture [1]  80/3
molehills [1]  4/22
mom [1]  36/5
MONA [7]  2/4 4/10 13/7

## M

**MONA... [4]**  16/23 53/24
  55/5 56/5
**Monday [1]**  7/1
**Monday's [1]**  7/2
**monetary [1]**  77/16
**monitor [1]**  11/10
**Monrovia [1]**  36/5
**Montana [1]**  17/18
**more [24]**  4/24 5/1 5/4
  5/15 6/18 6/23 8/13 9/9
  17/20 20/18 25/1 32/18
  33/6 42/4 62/8 62/15 63/9
  64/17 66/18 68/7 69/25
  81/19 84/13 90/19
**morning [12]**  4/10 4/13
  13/7 13/10 13/13 13/15
  16/23 18/20 41/22 61/12
  61/16 82/1
**most [6]**  21/18 22/17 25/13
  61/19 87/21 87/24
**motion [7]**  8/8 8/8 8/10
  8/11 8/15 9/17 9/21
**motions [3]**  5/20 5/22 5/23
**mountains [1]**  4/22
**mouths [1]**  66/4
**move [1]**  11/1
**Mr [3]**  3/11 18/23 85/10
  72/23 75/8
**Mr. [5]**  8/11 17/8 19/5
  72/23 75/8
**Mr. Bob [1]**  19/5
**Mr. Favret [1]**  72/23
**Mr. Frattarelli [1]**  8/11
**Mr. Mike [1]**  17/8
**Mr. Singer [1]**  75/8
**Ms [2]**  3/8 3/9
**Ms. [2]**  14/12 55/20
**Ms. Knittle [1]**  55/20
**Ms. Ramirez [1]**  14/12
**much [20]**  17/25 18/5 19/13
  21/17 24/18 24/22 26/12
  28/18 36/1 38/5 38/5 39/20
  39/25 41/16 60/5 62/15
  66/23 68/4 77/23 81/10
**muck [4]**  89/20 89/21 90/6
  90/23
**mucking [2]**  89/22 90/8
**multiple [1]**  75/20
**multiplied [1]**  62/13
**music [1]**  38/17
**must [16]**  22/3 22/6 44/6
  63/16 63/17 64/16 65/2
  65/21 65/25 67/7 67/7
  67/11 68/11 68/13 68/20
  81/12
**my [42]**  4/14 10/8 16/23
  16/24 17/11 18/6 18/20
  26/25 27/9 28/12 29/13
  30/10 30/23 31/20 33/9
  34/14 35/15 36/4 36/8
  37/20 38/3 38/17 39/11
  39/17 40/24 41/8 41/20
  42/25 44/25 47/9 47/22
  50/16 53/2 57/9 58/4 58/6
  59/12 63/12 71/8 78/21
  82/6 82/9
**myself [1]**  43/19

## N

**name [20]**  14/16 15/1 16/23
  18/6 18/20 19/2 19/6 19/8
  19/10 24/23 25/19 26/25
  28/12 27/12 31/11 37/20
  39/11 40/24 78/21 82/6
**name's [2]**  14/5 36/4
**named [1]**  35/4
**names [5]**  6/12 14/5 16/18
  18/9 19/25
**Nanotex [1]**  76/2
**NASH [1]**  2/15
**necessarily [1]**  68/2
**necessary [1]**  87/16
**need [5]**  5/15 6/9 8/13
  35/1 90/4
**negative [1]**  44/8
**Nellor [1]**  19/6
**never [4]**  5/6 51/10 51/23
  76/14
**nevertheless [1]**  74/13
**new [8]**  17/17 55/14 55/17
  55/18 55/20 56/3 56/8
  88/22
**New York [1]**  17/17
**next [26]**  7/1 7/3 7/24
  9/22 9/23 9/24 19/18 19/20
  22/8 26/24 29/3 30/9 31/12
  32/9 33/20 35/7 37/1 37/19
  38/15 39/10 40/23 41/20
  41/22 41/25 91/8 92/3
**next -- well [1]**  7/1
**nine [1]**  41/21
**no [79]**  1/7 4/6 5/1 5/17
  7/25 8/8 8/15 9/2 9/13
  14/13 20/1 20/2 20/12
  20/21 21/7 21/10 23/23
  26/10 26/19 27/15 28/16
  28/21 29/20 32/13 34/1
  34/17 34/22 36/13 36/19
  37/9 39/1 40/21 43/8 43/9
  43/11 45/12 46/22 47/2
  48/10 48/16 48/20 48/22
  49/16 49/24 54/9 55/9
  55/11 55/11 55/12 55/19
  55/22 55/24 55/25 56/1
  56/2 56/3 56/9 57/1 57/1
  57/2 57/3 57/3 57/12 57/24
  59/18 65/12 66/20 66/21
  71/4 74/6 74/15 74/24
  75/21 76/17 85/2 87/4 91/6
  91/22 93/15
**No. [18]**  4/7 13/3 13/4
  25/19 27/19 27/20 28/11
  43/17 46/2 48/2 55/16
  55/22 56/9 59/10 59/10
  59/10 59/10 59/16
**No. 1 [3]**  13/3 25/19 27/20
**No. 10 [2]**  55/22 59/10
**No. 11 [1]**  59/10
**No. 12 [2]**  56/9 59/16
**No. 13 [1]**  46/2
**No. 3 [2]**  27/19 28/11
**No. 6 [2]**  55/16 59/10
**No. 7 [1]**  48/2
**No. 8 [1]**  43/17
**No. 9 [1]**  59/10
**No. Civil [2]**  4/7 13/4
**nobody [3]**  23/11 28/3
  53/14
**nobody's [3]**  22/22 22/24
  23/1
**Nods [2]**  26/7 48/23
**none [2]**  37/14 67/16
**normally [4]**  5/11 9/23

  85/22 85/24
**north [2]**  41/13 25/2
**not [139]**
**notary [1]**  38/3
**notepad [1]**  6/12
**notes [5]**  69/22 69/22
  69/23 70/1 70/1 70/1 70/3
**nothing [8]**  29/21 35/5
  38/23 44/15 49/22 53/12
  62/8 91/15
**notify [1]**  69/17
**now [30]**  4/20 10/1 19/14
  20/9 23/17 24/7 24/9 25/4 25/5
  26/11 31/1 32/12 32/14
  40/5 40/22 41/21 43/23
  53/6 55/13 55/23 56/8
  59/16 59/23 62/2 63/11
  64/14 68/6 70/5 79/4 87/14
  90/24
**number [13]**  18/22 37/25
  41/12 46/4 47/12 55/8
  55/10 55/11 55/12 55/25
  68/2 82/24 85/17
**nurse [2]**  18/12 35/11
**nursing [3]**  17/10 73/24
  79/17

## O

**o'clock [6]**  61/13 61/20
  61/22 61/24 62/1 92/2
**oOo [1]**  92/20
**oath [3]**  22/10 63/19 64/22
**object [2]**  65/16 67/3
**objected [1]**  8/7
**objection [6]**  7/20 7/21
  65/18 67/3 67/5 67/6
**objections [2]**  7/19 65/15
**objective [1]**  23/5
**obligation [2]**  33/10 33/17
**obnoxious [1]**  7/16
**obtained [1]**  80/10
**obviously [1]**  33/7
**occupation [10]**  25/3 25/4
  25/6 25/10 26/4 27/4 29/8
  30/14 34/7 37/4
**October [2]**  34/13 34/16
**October 31st [2]**  34/13
  34/16
**odor [1]**  72/1
**off [6]**  8/10 40/18 40/22
  44/10 53/9 88/12
**offense [1]**  50/6
**offers [1]**  67/1
**office [1]**  89/23
**officer [11]**  7/15 17/3
  17/5 17/10 17/14 17/15
  19/4 39/13 51/22 73/24
  79/17
**officers [3]**  7/14 12/13
  72/25
**offices [2]**  78/14 78/18
**Official [1]**  1/23
**OGLETREE [1]**  2/15
**oh [6]**  5/15 51/5 54/9
  55/11 59/1 59/3
**okay [168]**
**old [1]**  62/3
**on [119]**
**once [4]**  14/7 81/5 81/19
  83/4
**one [53]**  6/7 8/5 8/20 8/24
  9/2 9/8 9/19 12/9 12/11

**Q**

one... **[44]**   15/11 17/20
18/9 20/18 21/8 21/14
21/22 24/13 24/19 24/23
24/24 27/24 31/25 36/22
43/4 45/9 45/13 46/9 48/3
50/9 51/4 52/9 52/16 52/24
54/7 55/14 58/7 58/9 58/12
58/16 61/9 62/24 63/23
66/18 73/12 75/4 75/12
75/17 76/20 78/6 80/18
83/2 85/15 86/22
one's **[2]**   52/8 65/12
only **[38]**   6/4 6/7 11/11
22/6 22/13 24/5 26/15
28/23 29/23 34/3 37/25
41/14 41/20 46/12 54/10
54/16 57/4 58/7 58/9 65/1
65/25 66/8 66/11 66/14
68/11 71/18 72/5 74/11
75/16 77/16 77/20 78/6
78/7 81/13 83/5 88/5 91/2
91/18
onto **[1]**   11/12
open **[10]**   7/2 10/2 10/7
10/14 68/8 81/16 83/14
88/12 89/7 90/9
opened **[2]**   9/17 10/15
opening **[18]**   3/7 3/9 3/10
56/19 57/2 57/6 57/9 62/24
65/6 70/6 70/6 70/9 70/19
70/20 70/21 78/1 86/25
90/13
operating **[2]**   44/24 45/1
opinion **[2]**   61/4 63/23
opinions **[5]**   60/20 60/24
61/3 63/17 92/8
opportunity **[8]**   67/18
69/13 71/9 75/14 75/15
81/19 91/9 91/10
Opposing **[1]**   8/7
or **[173]**
order **[5]**   6/11 6/13 9/1
67/9 82/20
ordered **[1]**   68/21
orders **[1]**   12/5
ordinary **[1]**   5/9
original **[1]**   56/9
OSHA **[1]**   83/5
other **[37]**   5/2 7/15 7/25
8/20 11/9 15/13 18/25
20/25 21/9 21/15 24/4
29/12 29/18 35/18 36/22
40/17 40/18 42/19 45/4
45/7 50/18 52/24 58/16
61/2 63/24 65/7 66/1 67/1
67/22 67/23 67/25 67/25
68/13 69/2 72/6 80/8 87/1
otherwise **[3]**   57/3 61/3
68/16
our **[5]**   15/14 71/9 78/12
78/14 78/15
out **[32]**   4/22 12/2 12/3
15/4 20/8 21/22 22/19
22/20 24/22 28/8 32/3 32/3
32/22 38/8 40/8 43/12 44/5
44/17 44/18 44/20 46/10
48/6 49/25 51/19 56/7 60/3
60/25 61/20 69/7 71/3 72/6
75/11
outcome **[1]**   67/21

outdoor **[1]**   37/6
outfit **[1]**   71/2 71/6
71/9
outside **[28]**   3/4 4/5 25/9
26/8 27/8 28/15 29/12
29/21 29/24 30/20 31/5
31/8 31/18 34/11 34/12
35/14 35/20 37/8 38/7
39/16 39/20 41/7 44/6
44/25 47/16 68/25 69/4
69/17
over **[9]**   6/25 20/14 42/4
48/14 52/15 53/7 62/18
69/16 81/1
overall **[1]**   57/2
overblown **[1]**   4/21
overnight **[1]**   29/10
overrule **[1]**   67/3
overtake **[1]**   33/10
own **[14]**   28/8 36/9 74/14
75/24 75/25 76/1 80/10
84/19 89/19 90/4 90/8
90/14 90/15 90/24
Oxnard **[4]**   37/21 37/23
37/24 37/25

**P**

P-e-n-a **[1]**   14/17
page **[5]**   3/3 6/6 6/7 76/21
93/6
pages **[4]**   1/17 6/4 6/7 6/7
paid **[2]**   73/15 88/12
PAISAN **[3]**   2/16 4/15 13/15
Palenik **[1]**   19/11
paper **[1]**   7/15
paramount **[1]**   79/21
PARK **[1]**   2/17
parking **[1]**   39/14
part **[8]**   15/6 15/18 25/24
36/6 58/24 67/15 76/11
80/6
part-time **[1]**   36/6
participants **[1]**   80/21
participated **[1]**   22/17
particular **[2]**   4/16 85/12
particularly **[3]**   42/20
53/10 78/19
parties **[9]**   6/16 6/16
10/22 16/13 16/13 19/22
69/12 70/8 81/18
Partner's **[1]**   17/6
partnering **[2]**   85/6 86/15
partners **[47]**   1/5 1/12 2/3
3/8 4/7 4/11 13/4 13/8
13/11 15/24 16/4 16/9
16/11 16/25 17/9 18/25
19/10 64/3 64/6 64/9 64/12
71/19 72/3 74/20 74/22
75/1 75/7 75/11 75/14
75/15 75/17 75/20 75/23
75/25 76/1 76/7 76/9 76/14
76/19 77/1 77/17 77/21
78/24 81/10 82/8 86/25
88/4
Partners' **[2]**   76/21 77/6
partnership **[4]**   82/12
83/13 84/10 86/23
party **[3]**   64/14 69/13 70/9
Pasadena **[1]**   38/19
pass **[16]**   28/10 33/20
53/24 54/1 54/19 54/22
54/24 55/1 55/5 55/6 56/10

56/11 56/15 82/19 82/23
83/5
passed **[3]**   75/15 75/22
83/5
passing **[1]**   84/7
passionate **[2]**   85/20 86/14
past **[1]**   85/1
Pastry **[1]**   28/13
pathogens **[1]**   72/12
patient **[1]**   79/24
patients **[2]**   72/13 79/22
patterns **[1]**   61/20
pave **[1]**   87/12
pay **[3]**   15/17 69/19 70/23
PC **[1]**   2/15
Pena **[2]**   14/17 30/10
pending **[1]**   86/10
penetrate **[1]**   88/17
Pennsylvania **[1]**   17/24
people **[22]**   5/15 15/4 16/3
16/16 16/19 16/20 19/24
23/21 34/4 34/23 35/18
37/25 42/17 49/10 49/11
62/6 62/10 62/13 65/11
78/11 89/16 90/15
percent **[5]**   20/3 50/9
82/13 84/19 88/23
perception **[1]**   80/21
peremptories **[1]**   54/8
peremptory **[8]**   54/3 54/4
54/6 54/9 54/13 54/20
55/13 55/23
Peremptory's **[1]**   55/4
perfect **[4]**   28/10 31/11
52/25 53/3
performance **[1]**   82/19
performed **[2]**   73/15 73/16
perhaps **[1]**   85/6
period **[1]**   63/10
permanent **[1]**   5/22
permitted **[2]**   65/23 67/2
person **[8]**   21/5 21/22 36/3
42/11 42/12 52/9 52/10
83/2
personal **[4]**   9/5 33/9
63/16 81/15
personally **[4]**   25/13 25/17
42/24 66/17
persuaded **[1]**   64/16
pertains **[1]**   36/17
PG **[1]**   34/14
physical **[2]**   11/15 11/17
physician **[2]**   31/20 31/21
Physics **[2]**   31/23 31/24
pick **[3]**   54/5 61/25 83/6
picked **[2]**   22/1 51/13
pictured **[1]**   22/25
piece **[1]**   88/15
pieces **[5]**   22/20 22/25
23/9 44/3 73/12
Pierpoint **[1]**   19/5
place **[3]**   17/11 23/3 23/5
places **[1]**   92/4
plaintiff **[11]**   1/6 2/3 3/7
10/10 16/4 54/6 55/4 56/1
58/5 70/10 70/12
plaintiff's **[1]**   8/5
Plaintiff/Counter-Claimant **[1]**
3/7
PLAINTIFF/COUNTER-DEFENDANT **[1]**
2/3
plaintiffs **[1]**   56/13

**P**

**plan [4]**   82/17 82/17 88/11 88/16
**plane [1]**   41/22
**plans [5]**   61/24 61/25 86/5 87/11 88/1
**playing [2]**   8/24 88/6
**pleasant [1]**   92/11
**please [16]**   4/9 13/6 14/6 25/20 28/11 30/9 33/21 43/17 59/9 59/20 59/21 60/2 63/22 69/17 70/23 71/5
**Plus [9]**   84/5 87/13 87/21 87/24 88/8 88/14 90/10 90/17 90/20
**podium [1]**   18/4
**point [1]**   88/21
**police [1]**   51/22
**policy [3]**   79/24 80/1 80/13
**position [2]**   55/11 55/12
**positions [1]**   64/2
**positive [1]**   44/9
**possible [3]**   24/18 83/7 87/25
**potential [4]**   19/15 19/19 75/9 85/16
**potentially [1]**   82/22
**practices [1]**   64/5
**practitioner [1]**   35/11
**pre [4]**   3/6 25/15 56/19 70/17
**pre-instruct [2]**   25/15 56/19
**pre-instructions [2]**   3/6 70/17
**prejudice [2]**   63/17 67/22
**preliminary [1]**   62/23
**prepare [1]**   7/5
**prepared [3]**   5/16 80/18 80/20
**preponderance [4]**   50/8 50/11 52/9 64/15
**presence [5]**   3/4 4/5 13/2 59/7 63/3
**present [8]**   2/20 10/11 70/10 70/11 72/15 73/2 73/23 74/24
**presentation [1]**   78/24
**presented [7]**   5/17 22/7 44/1 69/10 70/13 80/17 81/15
**presenting [4]**   72/19 73/9 73/24 79/16
**presents [1]**   64/19
**preservation [2]**   90/20 90/21
**preserve [1]**   82/11
**preserved [1]**   91/18
**president [5]**   18/10 18/12 79/4 80/15 87/18
**pressured [1]**   52/23
**presumed [1]**   44/1
**pretrial [2]**   6/23 6/23
**pretty [3]**   41/11 41/16 52/15
**prevail [1]**   50/4
**prevent [3]**   72/12 74/10 80/8
**preventive [1]**   80/7

**prevents [1]**   71/24
**previous [2]**   63/11 84/2
**primarily [1]**   80/18
**principal [1]**   80/22
**prior [2]**   72/24 76/13
**probably [5]**   19/17 19/17 25/12 46/24 64/17
**problem [11]**   5/17 20/10 29/19 32/13 33/17 42/12 46/8 47/2 62/8 78/19 90/2
**problems [6]**   9/5 11/24 26/17 27/14 28/19 62/5
**procedure [2]**   49/2 49/3
**proceed [6]**   10/2 13/18 14/1 20/9 70/5 71/5
**proceedings [5]**   3/3 53/18 69/15 92/17 93/5
**proceeds [1]**   6/3
**process [10]**   21/23 21/24 69/16 89/17 89/20 89/21 89/22 90/6 90/8 90/24
**processes [1]**   76/4
**produce [1]**   87/8
**produced [1]**   87/20
**producing [1]**   8/23
**product [25]**   13/5 75/17 75/18 80/6 84/4 84/5 84/9 84/12 84/13 84/20 84/22 84/25 85/3 85/5 85/12 85/19 87/9 87/22 87/25 88/8 88/25 90/3 90/4 90/17 91/4
**production [2]**   19/7 43/5
**products [8]**   46/5 75/19 75/24 81/8 87/6 88/17 89/7 90/25
**profession [3]**   12/16 12/17 43/3
**professional [2]**   12/14 12/16
**profits [1]**   77/19
**progress [2]**   83/16 84/1
**progressed [1]**   79/6
**promise [6]**   82/12 83/13 84/10 86/1 88/2 88/4
**promised [1]**   89/18
**promises [2]**   83/12 87/4
**promoting [2]**   83/9 83/17
**proof [9]**   50/3 50/7 50/8 50/11 50/17 52/5 52/8 66/16 66/18
**properly [5]**   5/16 5/16 5/17 68/24 68/24
**properties [2]**   19/12 80/3
**property [1]**   81/8
**prospective [7]**   3/4 4/5 13/2 14/13 34/17 59/7 60/11
**protect [1]**   72/13
**protective [17]**   1/8 1/9 2/10 3/9 3/11 4/8 13/5 15/24 16/5 18/7 64/3 64/8 64/11 64/13 78/22 82/6 85/2
**proud [1]**   82/7
**prove [2]**   52/21 87/12
**proved [2]**   46/11 48/7
**proven [1]**   72/14
**proves [1]**   50/9
**provide [6]**   73/8 80/20 85/25 85/25 91/9 91/9
**provided [1]**   86/3

**providers [1]**   78/15
**providing [3]**   78/13 79/10 81/7
**proving [3]**   64/7 64/12 64/14
**public [6]**   38/3 41/8 41/9 76/10 76/11 78/14
**publish [2]**   11/2 11/5
**published [3]**   10/19 10/21 12/5
**publishing [1]**   11/11
**purchase [1]**   75/12
**purchased [3]**   46/5 71/17 73/25
**purports [1]**   80/20
**purpose [8]**   23/24 65/24 65/25 66/1 66/14 66/14 67/12 83/13
**pursuant [1]**   93/3
**push [1]**   88/20
**put [8]**   5/16 22/19 22/20 22/23 22/25 44/3 44/9 81/22
**putting [3]**   22/17 22/21 81/15
**puzzle [2]**   22/23 22/25
**puzzles [1]**   22/18

**Q**

**qualified [1]**   80/15
**qualities [1]**   85/3
**quality [1]**   79/21
**quarter [2]**   4/17 12/19
**quarter of [1]**   4/17
**question [34]**   8/2 9/11 9/20 10/3 11/7 15/12 19/20 20/8 21/20 25/3 25/8 29/17 32/10 32/15 33/1 33/4 35/17 40/13 50/16 51/7 52/4 52/16 53/2 53/22 54/3 61/23 61/23 65/17 66/5 66/25 67/4 67/5 67/6 67/7
**question's [1]**   22/8
**questioning [1]**   24/4
**questions [41]**   5/1 5/2 7/8 15/7 15/10 15/13 15/16 15/21 20/5 20/6 20/6 20/7 20/9 20/10 20/16 20/17 21/1 21/25 24/18 24/19 24/21 25/11 25/13 25/14 31/25 41/18 42/9 42/14 46/8 48/17 52/17 65/15 66/2 66/2 66/3 66/9 71/2 76/21 85/22 85/23 85/23
**quick [1]**   8/3
**quickly [1]**   20/9
**quiet [1]**   53/13

**R**

**R-a-m-i-r-e-z [1]**   14/10
**Raines [4]**   17/9 18/11 73/23 79/17
**raise [8]**   15/19 20/12 21/21 33/11 40/15 47/6 47/17 59/21
**raised [1]**   36/15
**Raises [3]**   48/21 49/13 51/1
**Ramirez [3]**   14/10 14/12 25/21
**rapidly [1]**   82/14
**rather [4]**   50/18 58/10

**R**

**rather...** [2]  61/20 90/5
**Raymundo** [2]  14/15 28/12
**reach** [2]  50/21 51/7
**reaching** [1]  64/25
**read** [4]  16/1 53/15 63/22
  69/8
**ready** [11]  13/18 14/1
  61/25 71/5 85/8 85/9 87/6
  87/6 88/5 89/5 89/6
**real** [3]  10/6 28/5 32/22
**realize** [4]  22/21 28/1
  43/24 78/2
**really** [12]  12/11 22/9
  23/11 25/14 28/4 36/21
  39/2 41/12 52/16 52/17
  62/6 91/11
**reason** [6]  8/23 16/18
  19/19 23/21 47/15 60/25
**reasonable** [4]  50/3 50/6
  50/8 52/5
**reasonableness** [1]  67/24
**reasons** [2]  10/12 75/16
**recall** [1]  63/19
**receive** [4]  11/1 29/23
  41/15 68/23
**received** [10]  6/6 11/1
  12/4 22/11 65/1 66/12
  66/25 67/4 67/6 68/12
**recess** [4]  12/25 13/1 63/2
  92/15
**recognized** [1]  90/1
**recommend** [1]  92/4
**record** [4]  63/4 67/10
  76/10 76/11
**recorded** [1]  58/22
**recording** [1]  58/21
**recruiter** [1]  30/15
**reduce** [3]  82/20 82/24
  83/2
**reducing** [3]  83/1 84/19
  85/17
**reduction** [3]  74/16 80/12
  83/10
**refer** [3]  6/5 6/8 9/2
**reference** [3]  8/22 11/9
  69/2
**referencing** [1]  10/20
**referring** [1]  71/21
**reflect** [1]  63/4
**regarding** [7]  10/7 63/23
  73/3 73/6 76/15 80/20
  80/21
**regardless** [1]  64/19
**regimented** [1]  63/10
**registered** [1]  72/10
**registration** [1]  81/9
**regulations** [3]  74/13
  86/10 93/7
**regulatory** [2]  17/15 82/18
**reject** [1]  91/17
**relates** [1]  10/9
**relations** [1]  41/9
**relatives** [1]  48/13
**relax** [1]  15/9
**release** [2]  88/13 91/20
**relevant** [1]  6/2
**reliance** [1]  73/13
**remaining** [1]  60/3
**remember** [13]  4/25 5/23
  7/8 7/19 7/24 15/17 61/23

**64** 62/4 65/9 65/11 70/24 89/4
**remembers** [1]  78/17
**reminders** [1]  78/17
**reminding** [1]  60/18
**Renata** [2]  17/5 19/1
**render** [2]  59/24 77/6
**rendering** [1]  52/22
**renders** [2]  76/23 91/4
**repeat** [1]  42/15
**repeated** [1]  15/19
**repellancies** [1]  80/4
**report** [1]  68/22
**reported** [1]  93/5
**Reporter** [1]  1/23
**REPORTER'S** [1]  1/16
**represent** [4]  18/6 18/21
  78/21 82/6
**representations** [1]  73/21
**representative** [2]  58/7
  58/9
**representatives** [3]  58/5
  79/13 80/5
**representing** [2]  13/23
  16/25
**reproducing** [1]  77/2
**request** [1]  81/14
**requested** [1]  75/13
**require** [1]  69/15
**required** [3]  70/9 74/1
  75/20
**requires** [1]  69/11
**research** [3]  17/7 17/22
  68/25
**respect** [5]  10/18 71/10
  74/3 76/19 77/16
**respected** [2]  12/16 80/15
**respective** [1]  63/5
**respond** [1]  68/21
**responded** [2]  20/4 60/1
**response** [9]  20/11 20/13
  20/15 46/23 46/24 61/21
  74/18 74/19 77/13
**rest** [1]  78/25
**restrictions** [2]  69/11
  69/14
**restroom** [1]  56/18
**result** [5]  69/15 71/18
  73/11 74/4 77/20
**resulted** [3]  81/2 81/3
  81/9
**results** [4]  30/3 73/17
  80/17 80/20
**retail** [1]  36/6
**retire** [2]  60/21 92/9
**retired** [2]  25/5 25/7
**return** [2]  68/25 76/15
**review** [3]  80/16 80/23
  80/24
**revolutionary** [1]  84/25
**revolves** [1]  82/16
**RGK** [3]  1/7 4/7 13/4
**Richards** [1]  20/25
**right** [18]  4/20 11/2 13/21
  18/5 23/12 24/1 24/11
  32/12 32/25 34/13 34/17
  36/20 54/18 54/25 59/11
  59/21 62/4 92/5
**rigorous** [1]  82/19
**rise** [3]  12/24 63/1 92/13
**risk** [1]  83/2
**Ritcheson** [2]  17/6 19/1
**RMR** [1]  1/23

**ROBINSON** [3]  2/4 2/7 16/24
  83/19
**room** [12]  28/3 44/25 45/1
  56/7 59/12 59/14 60/4 60/8
  60/21 70/16 81/17 92/10
**Rosemead** [2]  27/1 27/2
**Roth** [2]  17/16 73/5
**row** [5]  14/6 14/8 14/21
  36/3 59/20
**RPR** [1]  1/23
**rule** [1]  7/22
**rules** [9]  23/25 24/1 24/2
  24/13 24/14 25/4 65/17
  66/24 67/2
**ruling** [4]  5/22 7/23 8/21
  65/19
**rulings** [1]  5/23
**run** [2]  5/10 62/15
**run-of-the-mill** [1]  5/10
**Running** [1]  56/7
**ruse** [3]  88/6 88/6 88/9

**S**

**Sacramento** [1]  23/19
**sad** [1]  7/13
**safe** [1]  46/5
**safety** [2]  39/13 79/22
**safety/compliance** [1]
  39/13
**said** [14]  12/13 15/18 28/1
  33/8 42/13 47/2 53/6 56/24
  60/12 66/2 66/13 89/10
  89/15 89/23
**same** [10]  10/1 29/17 31/2
  35/17 40/13 46/24 49/2
  52/4 69/12 85/1
**SAN** [3]  2/13 30/12 35/9
**SANDRA** [3]  1/23 93/14
  93/15
**sanitizers** [1]  78/16
**Santa** [1]  31/17
**sat** [2]  21/20 24/9
**satisfy** [1]  84/6
**saving** [1]  90/16
**saw** [2]  66/17 86/13
**say** [37]  5/15 10/3 10/15
  11/2 20/11 23/6 23/10
  23/13 24/12 32/21 33/16
  35/2 35/3 40/8 40/9 44/3
  44/4 44/19 46/11 46/16
  47/7 47/15 47/17 52/20
  60/22 61/8 61/18 61/23
  62/2 62/6 63/23 65/6 66/5
  70/19 82/5 90/9 92/2
**saying** [6]  23/21 28/3
  29/22 33/16 44/6 90/4
**says** [17]  8/17 11/5 22/6
  23/6 23/8 28/24 31/4 32/5
  32/23 32/24 33/1 40/10
  40/10 40/11 44/21 66/6
  67/15
**scale** [1]  50/11
**school** [3]  38/17 45/15
  75/3
**science** [3]  31/22 76/24
  79/15
**scientific** [9]  32/8 32/14
  32/16 37/12 45/5 45/6
  72/17 73/4 73/17
**scientist** [1]  31/15
**screen** [1]  11/12
**scribble** [1]  6/12

#:

**scrub [3]**   71/22 71/22 79/11

**scrubs [39]**   16/7 16/10 27/25 40/6 42/22 43/19 43/19 43/20 44/9 44/25 71/14 71/15 71/18 71/23 71/23 72/3 72/6 72/6 72/8 72/9 72/11 72/15 73/8 73/21 73/22 74/1 74/4 74/17 75/4 75/6 75/9 75/10 79/14 79/25 80/2 80/13 81/11 83/2 83/10

**SEAN [3]**   2/16 4/14 13/15

**search [1]**   80/6

**searching [1]**   69/1

**seat [9]**   14/6 14/7 14/14 14/21 15/11 55/21 55/22 59/18 60/2

**seats [1]**   63/5

**second [13]**   9/8 14/8 14/21 15/23 23/16 24/4 24/24 27/20 32/14 36/3 54/3 68/11 70/23

**secret [4]**   76/6 76/8 76/16 88/15

**secretly [3]**   84/5 84/6 84/8

**secrets [7]**   16/12 48/14 64/11 74/20 76/11 82/10 86/1

**section [3]**   61/16 61/16 93/3

**see [22]**   4/20 6/9 6/19 12/18 16/19 26/17 36/2 51/5 53/17 53/20 60/15 65/11 65/13 66/10 67/19 69/5 83/25 87/14 87/17 88/9 88/10 92/12

**seen [4]**   7/12 31/4 78/17 81/5

**sense [2]**   24/15 41/11

**separate [1]**   92/17

**SEPTEMBER [3]**   1/18 4/1 93/10

**series [1]**   87/18

**serve [2]**   41/21 42/1

**served [1]**   49/11

**service [1]**   68/20

**services [2]**   31/1 31/3

**session [1]**   66/11

**set [3]**   23/25 24/13 25/4

**SETH [4]**   2/7 4/11 13/10 16/24

**setting [2]**   72/14 78/19

**seven [5]**   4/25 5/1 5/3 5/11 5/19

**several [2]**   42/17 72/19

**shared [1]**   61/6

**SHARON [5]**   2/12 4/15 13/23 18/6 78/21

**she [12]**   17/6 17/7 17/9 32/2 41/9 42/13 53/20 53/20 53/21 60/10 73/23 73/25

**She's [1]**   79/17

**Shelly [2]**   14/20 35/8

**Sheraton [1]**   29/16

**sheriff [2]**   27/6 27/6

**Shook [2]**   45/16 45/22

**short [2]**   57/19 61/9

**shortly [2]**   53/16 74/2

**should [12]**   7/16 14/11 14/16 15/13 36/11 38/21 41/23 42/5 58/7 60/13 60/14 61/9 64/18 64/18 65/18 66/19 68/9

**show [38]**   10/24 10/25 11/4 11/10 11/13 12/10 23/4 32/17 35/22 40/8 46/12 50/5 70/8 71/1 71/10 71/14 71/16 72/7 72/10 72/16 73/14 73/21 74/11 76/5 76/13 76/17 77/5 78/25 83/15 84/3 86/12 86/22 87/3 87/10 87/16 88/5 88/10 88/13

**showed [1]**   73/19

**showing [2]**   11/24 74/9

**shown [6]**   5/5 12/4 72/25 83/1 84/18 84/18

**shows [1]**   28/2

**sic [1]**   89/2

**side [30]**   4/25 5/2 5/19 16/16 21/11 21/12 36/21 37/16 38/12 45/16 45/17 45/22 45/23 49/6 50/9 52/15 53/7 53/17 53/23 58/11 64/19 67/2 70/6 86/22 86/22 86/23 87/1 87/2 87/3 87/4

**side's [1]**   54/4

**sidebar [1]**   53/18

**sided [1]**   87/10

**sides [12]**   4/22 13/18 14/1 27/17 35/3 40/20 41/13 52/23 52/24 58/1 60/16 81/15

**signed [1]**   74/23

**significant [1]**   90/23

**Silvadur [2]**   77/3 77/6

**simple [1]**   22/2

**simply [2]**   70/7 72/15

**Sinai [1]**   39/14

**since [2]**   21/18 79/6

**SINGER [12]**   2/21 17/8 18/24 75/8 85/4 85/8 85/14 87/19 87/21 89/8 89/9 89/10

**Singer's [1]**   87/24

**sir [9]**   27/3 27/15 27/18 39/1 39/5 40/16 43/8 47/20 59/17

**sit [2]**   15/8 54/5

**sitting [4]**   36/20 62/9 62/10 62/11

**situation [1]**   33/12

**situations [1]**   20/7

**six [1]**   57/3

**size [1]**   91/22

**skills [1]**   46/17

**skin [1]**   74/3

**skip [1]**   19/11

**sleeping [1]**   20/14

**small [1]**   79/3

**smile [1]**   82/12

**Smith [1]**   6/18

**SMOAK [1]**   2/15

**smoother [1]**   12/6

**so [98]**

**soaking [1]**   71/24

**solely [1]**   63/18

**solemnly [1]**   59/22

**solicitation [1]**   86/23

**solicited [1]**   75/22

**some [20]**   16/2 18/8 19/15 21/22 25/12 33/6 42/9 42/14 46/17 47/15 62/22 65/11 65/15 65/23 66/13 70/17 76/24 78/15 79/16 82/3

**somebody [6]**   28/2 33/16 48/14 50/5 52/6 66/6

**somebody's [1]**   66/7

**something [20]**   6/1 6/13 6/19 7/10 7/17 9/17 20/12 42/16 44/17 44/18 45/15 49/22 71/24 76/6 76/8 87/19 87/19 88/24 88/25 89/1

**sometime [1]**   6/25

**sometimes [3]**   25/17 67/9 92/3

**soon [4]**   7/6 12/19 14/8 52/16

**sorry [17]**   11/16 13/5 13/20 14/12 17/11 17/13 17/14 17/20 19/4 35/13 37/22 54/23 55/12 56/3 57/8 59/17 80/11

**sort [1]**   10/7

**sought [1]**   75/11

**sounds [2]**   22/8 23/1

**south [3]**   2/8 26/1 28/13

**Spangler [1]**   17/4

**speak [3]**   53/19 81/19 91/10

**specific [5]**   20/5 20/17 24/19 71/22 73/16

**specifically [5]**   37/5 56/24 71/21 75/7 76/22

**SPI [26]**   18/24 18/25 82/8 82/11 83/4 83/11 83/14 84/22 84/22 85/1 85/22 86/13 86/14 86/15 86/20 86/21 87/18 88/2 88/5 88/16 89/1 89/4 89/16 90/16 90/22 91/14

**SPI's [1]**   83/19

**spirit [1]**   57/20

**spirits [1]**   57/15

**split [1]**   78/5

**spot [1]**   56/1

**spread [1]**   78/12

**springboard [1]**   25/16

**staff [2]**   74/1 80/11

**staffing [2]**   30/16 30/18

**stand [4]**   6/24 59/9 59/17 59/20

**standard [9]**   50/4 52/8 52/25 83/22 83/24 84/23 88/18 90/2 90/18

**standards [13]**   82/19 82/23 83/4 83/6 83/7 83/17 84/2 84/7 86/10 88/21 88/22 89/10 90/13

**start [12]**   4/18 5/6 22/1 22/20 25/19 34/23 61/12 62/3 62/4 69/16 85/11 92/5

**started [8]**   7/4 7/6 7/7 7/8 16/20 63/8 75/8 87/8

**starting [3]**   4/17 61/12 63/7

**startup [1]**   79/3

**state [2]**   4/9 13/6

## S

stated [1]   65/10
statement [15]   3/7 3/9
3/10 16/2 57/2 65/5 70/6
70/6 70/9 70/20 70/21
70/23 78/1 78/23 83/9
statements [5]   56/20 62/24
65/7 70/19 72/16
STATES [3]   1/1 93/4 93/8
status [1]   80/25
stay [3]   5/21 36/5 60/10
stay-at-home [1]   36/5
stenographically [1]   93/5
steps [1]   78/15
Steve [2]   17/16 73/5
STEWART [1]   2/15
stick [1]   47/16
still [5]   5/2 15/5 15/18
85/1 85/1
stipulated [1]   64/24
stipulation [2]   8/21 22/12
stock [1]   29/10
stopped [1]   66/7
store [1]   36/6
story [1]   78/25
strange [1]   24/8
STRATEGIC [49]   1/5 1/12
2/3 3/8 4/7 4/11 13/4 13/8
13/11 15/24 16/4 16/9
16/11 16/25 17/6 17/8
18/25 19/10 64/3 64/6 64/9
64/12 71/19 72/3 74/20
74/22 75/1 75/7 75/11
75/14 75/15 75/17 75/20
75/23 75/24 76/1 76/7 76/9
76/14 76/19 76/21 77/1
77/6 77/17 77/21 78/24
80/18 81/10 82/8
strategy [12]   18/14 80/16
82/17 82/23 82/25 84/13
86/6 86/16 86/17 87/11
88/16 89/3
street [3]   1/24 2/13 24/25
stricken [3]   65/20 67/9
67/12
strict [1]   61/10
Strombom [2]   18/15 80/22
strong [3]   33/10 47/6
47/17
struggle [1]   33/8
struggling [1]   33/2
studies [2]   84/18 84/19
study [8]   73/13 73/14
73/14 73/17 73/19 74/7
74/9 74/15
subjects [1]   27/24
submit [2]   58/6 85/19
submitted [2]   60/20 92/9
subsequent [1]   8/11
succeeded [1]   87/11
succeeding [1]   83/20
successful [2]   85/17 89/22
such [5]   66/16 69/1 76/17
81/16 82/18
sued [4]   48/19 48/19 74/19
74/21
suffered [1]   77/17
SUITE [4]   2/5 2/8 2/13
2/17
summary [1]   64/2
supervisor [3]   34/8 34/14

39/18
supplier [2]   85/7
support [4]   72/21 73/4
77/8 91/6
supported [1]   72/17
supposedly [1]   83/25
suppress [1]   82/11
sure [13]   8/12 9/12 17/21
33/7 33/15 39/24 47/19
52/19 58/24 59/11 68/25
69/23 89/11
survey [5]   17/16 18/15
73/6 80/17 80/19
suspected [1]   47/21
sustain [2]   67/4 67/6
swear [1]   59/22
sworn [4]   59/20 64/21
79/16 79/19
sympathy [3]   5/15 9/3
63/17
system [2]   60/25 61/5

## T

table [1]   22/19
take [18]   5/12 14/6 14/7
15/11 19/17 22/19 25/13
25/17 42/13 44/9 50/10
56/17 67/17 69/22 69/22
70/1 70/1 77/19
taken [1]   78/15
taking [1]   69/23
talk [20]   4/23 20/4 21/5
21/23 43/2 43/3 49/14 61/8
68/7 73/10 78/6 78/6 79/7
79/9 79/12 80/19 81/2
89/11 90/5 92/11
talked [19]   34/21 35/17
42/4 42/18 43/6 43/21
43/23 45/4 45/8 60/13 63/6
70/19 84/12 85/5 85/15
85/18 86/17 86/18 89/9
talking [21]   9/3 14/9
18/14 18/17 19/11 31/2
34/23 40/5 40/6 42/11
42/12 42/21 43/4 43/24
45/9 51/3 52/15 53/7 53/10
53/11 53/21
talks [2]   43/3 76/22
Tapalaga [1]   19/9
tape [1]   58/20
taped [2]   58/14 58/17
Target [1]   29/9
task [2]   89/24 89/25
teacher [1]   38/17
teaching [1]   25/18
team [2]   79/18 89/16
technical [2]   23/1 51/21
techniques [1]   80/8
technologies [18]   1/8 1/9
2/11 3/9 3/11 4/8 4/11
13/5 13/8 15/25 16/5 18/7
64/8 64/11 78/22 80/7 82/6
84/16
Technologies' [1]   64/13
technology [10]   11/23
11/24 17/14 64/4 75/25
76/2 76/3 84/17 85/11
85/24
tell [42]   4/20 5/6 5/9
6/18 7/11 7/21 9/7 12/9
15/25 21/24 23/5 23/10
23/13 23/13 25/5 25/6 28/4

28/24 30/4 30/4 31/3 32/4
32/4 33/1 41/13 41/18 33/10
33/2 35/3 36/23 39/2 41/3
41/14 41/23 44/21 47/2
52/20 53/11 57/2 60/10
68/16 78/25 89/4
telling [7]   32/22 32/23
32/24 32/25 84/8 87/5 87/7
Temple [1]   1/24
temporary [1]   5/25
ten [2]   23/21 23/22
tentatives [2]   5/20 5/21
tested [1]   74/7
testified [2]   67/19 68/3
testify [6]   72/20 72/25
73/3 74/15 80/23 80/24
testifying [3]   8/7 67/20
73/5
testimony [28]   18/11 22/10
27/23 45/6 58/13 58/14
64/22 65/1 65/20 66/16
67/14 67/14 67/17 67/24
67/25 68/4 69/19 69/21
73/2 73/23 73/25 74/2
76/24 77/12 79/16 79/19
79/23 81/5
testing [1]   91/6
textile [1]   75/2
than [26]   4/24 5/13 6/18
6/23 7/25 12/6 12/8 20/25
25/1 29/12 40/17 40/18
42/4 42/19 45/4 45/7 50/18
57/20 58/10 62/8 64/17
82/9 84/13 90/5 90/20 92/2
thank [47]   4/12 9/4 9/25
10/5 10/17 11/3 11/22 12/1
12/21 12/22 13/17 16/22
17/19 17/25 18/1 18/5
18/18 19/13 21/17 36/1
38/4 39/9 44/23 54/21 55/8
55/15 55/16 55/24 56/2
57/13 57/16 57/17 57/18
59/4 59/5 59/6 60/4 71/6
77/23 77/24 77/24 81/21
81/23 81/24 89/13 91/23
91/24
Thanksgiving [1]   20/8
that [506]
that's [58]   5/6 5/12 6/24
8/5 8/24 9/23 10/12 12/2
12/11 13/21 14/7 16/15
17/24 21/2 21/16 23/14
24/11 32/14 32/24 33/1
42/2 42/13 42/21 43/16
43/22 44/1 44/3 44/10
44/12 45/2 46/12 46/23
46/25 47/5 47/22 53/14
54/15 55/21 56/4 56/6
58/20 60/22 62/12 62/20
66/7 72/2 76/2 76/20 77/2
78/7 80/17 84/3 86/3 86/21
87/9 90/22 90/22 91/11
theft [6]   82/2 82/3 82/16
84/11 91/11 91/21
their [63]   8/10 8/23 16/6
16/10 19/2 19/4 19/6 25/9
34/23 36/16 48/12 50/9
62/10 63/5 65/6 65/16 66/8
68/4 70/15 71/15 72/8 72/9
72/11 72/15 72/24 74/8
74/9 74/20 75/9 75/12
75/24 76/22 78/7 79/8

**T**

**their... [29]** 79/22 79/22
79/24 80/1 80/5 80/6 80/10
80/13 80/18 81/8 81/18
82/22 84/4 85/2 85/3 85/15
86/10 87/8 88/16 89/16
89/19 90/2 90/4 90/6 90/8
90/14 90/15 90/24 91/4
**them [40]** 6/11 11/13 11/18
16/14 18/9 23/14 24/9
42/15 44/3 44/9 44/10
56/18 56/19 58/6 58/10
65/3 65/4 65/9 65/10 70/22
74/2 82/14 84/9 84/10 85/6
85/7 85/25 86/3 86/4 86/4
86/5 86/6 86/7 86/7 86/8
86/9 86/11 86/15 87/7 89/4
**themselves [2]** 11/20 82/21
**then [33]** 6/2 11/1 11/11
14/7 14/7 14/14 14/21 16/2
20/15 21/22 22/8 25/12
33/4 33/12 41/15 52/21
54/25 55/1 56/18 56/19
58/22 61/1 61/4 61/7 61/14
61/15 63/9 69/8 70/10
70/11 81/6 81/21 87/1
**there [54]** 5/5 6/23 7/25
9/13 11/20 15/9 15/13 18/3
20/14 22/20 22/20 23/7
25/8 27/13 27/23 28/18
29/11 29/18 32/22 34/20
36/16 36/20 40/14 40/18
42/18 46/3 50/3 52/5 53/22
54/13 60/3 61/10 65/23
66/24 72/6 72/6 74/15
74/16 74/24 75/21 75/21
76/17 77/24 78/11 80/12
86/1 86/13 86/13 87/1
88/24 89/17 89/18 89/20
89/21
**there'd [1]** 23/23
**there's [9]** 7/24 8/5 20/5
34/3 42/15 45/10 46/4
53/14 62/8
**thereafter [1]** 74/2
**therefore [1]** 76/11
**therein [1]** 59/24
**these [37]** 10/11 10/15
16/18 16/19 16/19 18/9
19/18 23/24 42/14 63/22
64/7 64/8 64/12 69/11
69/14 71/16 71/17 71/20
72/15 72/16 72/25 73/11
73/21 74/12 74/18 74/19
74/25 75/8 75/11 82/21
82/25 83/17 84/1 86/3 87/6
89/7 91/17
**they [127]**
**they'll [3]** 24/11 89/20
90/12
**they're [13]** 5/25 10/12
12/9 12/15 24/1 40/5 40/6
43/4 46/24 54/13 72/5 76/3
76/3
**they've [4]** 10/15 45/24
81/3 87/8
**thing [6]** 12/9 22/5 31/2
46/12 73/20 78/7
**things [20]** 4/18 8/4 22/9
22/13 22/14 22/21 27/25
37/11 37/12 43/4 45/7 45/7

45/9 46/9 47/12 61/9 65/2
65/7 67/22 75/6
**think [37]** 5/24 7/12 7/23
9/9 9/21 10/2 11/7 12/7
12/8 12/15 23/11 24/1
24/10 24/21 26/20 27/13
28/22 29/15 29/19 31/5
34/20 35/2 36/19 39/22
40/18 40/19 41/18 41/19
42/2 60/15 68/4 78/2 82/3
85/8 85/9 89/23 89/24
**thinking [1]** 15/16
**thinks [1]** 67/2
**third [2]** 2/13 25/3
**this [160]**
**those [36]** 5/21 10/21 15/4
22/13 22/14 22/18 23/9
23/14 24/1 24/2 24/13
25/11 34/21 43/7 45/21
48/15 50/22 62/3 63/13
69/13 70/1 70/17 71/18
72/5 72/21 74/14 75/12
76/10 77/10 77/20 81/2
83/6 83/7 84/7 89/4 90/23
**though [2]** 15/20 49/7
**thought [3]** 40/17 46/25
56/24
**threatening [1]** 82/11
**three [30]** 5/11 19/16 22/9
22/13 22/14 29/18 42/5
61/16 61/16 89/12
**three-hour [2]** 61/16 61/16
**through [21]** 5/3 5/10 6/22
20/7 20/18 21/20 21/21
24/20 49/7 49/11 54/8
61/23 62/16 62/16 70/24
76/2 79/19 80/9 83/10 88/1
88/17
**throughout [4]** 68/8 83/7
83/18 88/23
**throw [1]** 22/19
**thrown [1]** 51/18
**Thus [1]** 68/15
**Till [1]** 34/13
**tilting [1]** 50/10
**time [36]** 4/24 5/4 5/10
5/15 7/24 8/16 8/18 12/14
15/25 16/15 20/18 23/2
23/4 33/12 36/6 57/2 59/12
59/19 60/4 60/18 62/3 62/3
62/14 62/15 62/20 62/25
63/6 63/10 70/18 70/22
81/16 81/20 81/21 83/5
92/1 92/6
**times [3]** 65/7 82/9 89/4
**timing [2]** 7/10 61/11
**Title [1]** 93/4
**today [9]** 8/23 15/23 17/7
21/3 63/7 63/8 75/8 82/4
82/7
**together [13]** 5/16 7/14
7/16 22/18 22/21 23/1 44/3
61/1 84/18 85/5 87/1 88/20
89/18
**told [12]** 7/9 7/19 19/21
22/4 24/17 32/2 49/10
61/19 64/21 86/4 86/6 89/9
**tomorrow [5]** 61/11 61/12
63/7 63/9 92/2
**too [4]** 24/22 75/16 86/14
86/14
**took [3]** 63/19 84/14 88/19

**tool [1]** 25/18
**top [1]** 82/22
**topic [1]** 47/23
**total [1]** 57/24
**toward [1]** 57/1
**TOWER [1]** 2/17
**Towers [2]** 27/6 27/6
**town [2]** 2/16 34/4
**trade [9]** 16/12 48/14
64/11 74/20 76/6 76/8
76/16 86/1 88/15
**traffic [2]** 61/20 62/5
**training [2]** 45/5 86/8
**transcript [4]** 1/16 69/21
93/5 93/6
**transfer [2]** 82/22 83/2
**transform [1]** 83/23
**transmission [1]** 78/13
**transmissions [1]** 72/12
**travel [1]** 36/9
**treated [6]** 71/22 71/23
71/23 72/4 75/6 75/10
**treatment [1]** 79/11
**treatments [2]** 75/9 75/11
**trend [1]** 75/6
**trends [1]** 75/5
**trial [28]** 1/16 4/17 6/1
6/3 6/5 6/8 7/2 7/20 8/1
8/13 12/14 21/20 22/7
22/11 23/24 33/8 37/13
39/23 41/13 63/20 66/12
68/8 69/12 69/16 69/21
70/5 77/15 84/24
**tried [2]** 5/11 5/11
**trouble [1]** 24/22
**true [7]** 40/11 44/7 59/23
64/17 77/5 77/7 93/4
**truly [4]** 59/23 81/7 86/24
86/25
**truth [1]** 71/11
**try [9]** 5/13 7/15 9/2
32/19 40/12 53/14 57/14
59/23 69/3
**trying [3]** 10/10 21/2
65/12
**TUESDAY [3]** 1/18 4/1 7/1
**turn [2]** 53/8 84/14
**Twenty [1]** 57/24
**two [18]** 5/11 9/19 16/13
20/5 31/25 41/12 49/21
58/1 58/5 58/10 60/3 72/5
78/4 78/6 84/16 86/21
87/10 87/16
**two-sided [1]** 87/10
**twofold [1]** 34/21
**type [8]** 27/10 29/14 31/22
49/17 71/22 75/17 76/25
90/13
**types [6]** 72/5 72/15 75/11
75/18 87/6 89/7

**U**

**U.S [3]** 1/3 1/23 64/6
**ultimate [1]** 70/3
**ultimately [3]** 75/15 75/23
77/8
**under [5]** 22/10 64/22
65/17 88/2 92/17
**underlying [1]** 78/20
**understand [12]** 24/12
25/18 26/12 26/13 29/24
35/23 44/7 44/18 50/13

**U**

understand... **[3]** 52/12 70/8 71/25
understanding **[5]** 20/17 43/23 46/7 58/5 59/13
understood **[4]** 10/5 74/12 83/4 85/21
unfair **[2]** 16/7 64/4
uniforms **[1]** 75/3
UNITED **[3]** 1/1 93/4 93/8
unless **[8]** 5/3 8/16 15/15 38/9 54/22 54/24 55/1 68/16
unprincipled **[1]** 87/2
until **[14]** 8/16 12/4 21/20 60/20 61/14 61/15 61/19 61/21 68/9 68/15 81/16 81/21 91/18 92/9
untrue **[2]** 64/5 72/11
untruthful **[1]** 74/12
unwanted **[3]** 82/24 83/1 85/17
up **[44]** 5/1 6/1 7/24 9/22 9/23 9/24 11/20 14/6 14/7 14/8 15/11 20/12 22/20 23/18 25/12 25/14 26/7 32/8 37/11 46/10 48/23 59/9 59/17 59/20 61/25 63/24 78/5 81/6 83/6 83/22 85/6 86/15 86/25 89/7 89/20 89/21 89/22 90/3 90/6 90/8 90/9 90/13 90/23 90/25
upon **[4]** 73/13 77/1 77/5 83/19
urge **[1]** 69/19
us **[33]** 6/18 6/18 7/21 11/24 15/19 15/20 17/7 23/5 23/10 23/13 23/13 25/1 25/2 28/24 30/4 30/4 31/3 32/4 32/4 33/11 33/18 35/2 35/3 36/23 39/2 40/15 41/14 44/21 47/2 52/20 59/14 60/5 75/8
use **[13]** 22/14 46/6 46/17 78/16 78/18 80/8 82/10 82/17 84/14 88/1 88/3 88/7 88/17
used **[8]** 31/3 42/21 61/18 62/2 76/8 76/12 79/11 84/2
uses **[2]** 73/17 77/1
using **[14]** 25/16 25/18 69/2 73/16 74/5 74/6 74/6 76/3 76/3 76/4 82/9 85/7 85/11 87/11

**V**

valley **[2]** 30/13 35/9
value **[3]** 90/16 90/18 90/19
various **[1]** 81/9
vary **[1]** 6/3
Ventura **[1]** 37/2
VERDE **[7]** 2/15 3/11 4/13 13/13 18/20 54/1 82/7
verdict **[14]** 23/9 24/2 40/10 50/21 52/22 59/23 61/7 64/25 68/9 68/25 70/16 91/16 91/16 91/16
verge **[7]** 83/20 83/22 83/24 84/7 88/21 89/2

90/13
versus **[3]** 62/4 71/13 72/14
very **[27]** 7/10 9/12 12/14 12/16 15/17 16/18 17/25 18/5 19/13 20/9 21/17 22/2 22/5 23/5 23/10 26/11 36/1 42/25 50/4 60/5 60/14 60/14 60/16 61/10 73/16 75/18 77/23 78/23
VESTAGEN **[76]** 1/8 1/9 2/10 3/9 3/10 4/7 4/14 8/8 13/4 13/5 13/14 13/16 13/24 15/24 16/5 16/8 16/11 17/4 17/5 17/15 17/16 18/6 18/10 18/21 19/8 64/3 64/8 64/11 64/13 71/14 72/3 72/7 72/21 73/13 73/15 73/17 73/22 73/25 74/4 74/5 75/13 75/16 76/4 76/6 76/14 77/19 78/21 79/3 79/4 79/5 79/6 79/12 79/25 80/1 80/5 80/16 80/25 81/7 81/20 82/6 83/4 83/8 83/15 84/25 85/7 85/16 86/4 86/15 86/17 86/24 87/19 88/2 88/7 88/15 91/1 91/16
Vestagen's **[16]** 16/12 73/4 73/7 74/11 74/14 74/18 74/18 76/9 77/9 77/10 82/17 82/23 82/25 83/9 87/11 88/3
VESTEX **[14]** 72/9 73/16 74/10 74/16 79/14 79/25 80/10 80/21 81/1 84/12 84/12 84/17 85/5 87/13
VESTEX's **[1]** 84/19
Veterans **[1]** 35/12
vice **[1]** 18/12
Vickie **[1]** 19/6
victim **[1]** 45/21
victims **[1]** 91/2
video **[1]** 73/25
views **[1]** 61/6
VINCE **[6]** 2/15 4/13 13/13 18/20 54/1 82/7
violate **[1]** 74/13
violates **[1]** 69/14
violation **[1]** 64/5
vision **[1]** 86/14
visionary **[1]** 86/12
voir **[5]** 3/5 4/18 6/15 7/25 12/20
volume **[2]** 1/17 11/7
VON **[1]** 2/5

**W**

W-a-r-r-e-n **[1]** 14/18
WACKER **[1]** 2/8
wait **[1]** 86/19
waited **[1]** 91/18
waiting **[1]** 62/11
walk **[1]** 62/11
want **[29]** 8/12 8/18 10/2 10/24 12/3 12/10 12/12 15/4 15/19 18/4 23/8 24/18 24/24 25/13 33/7 33/15 33/16 34/18 41/21 42/16 47/5 47/6 52/16 52/19 53/10 58/22 58/24 69/8 69/23
wanted **[2]** 75/17 89/4
wants **[1]** 60/10

war **[2]** 5/8 5/14
Warren **[2]** 1/14 14/19
was **[91]** 4/18 8/8 18/12 18/23 19/1 19/9 25/6 43/24 46/11 46/25 48/4 48/7 49/11 49/17 49/17 50/5 51/7 51/18 51/25 52/1 52/5 52/5 56/5 57/4 57/14 58/24 73/14 73/16 74/7 74/23 75/13 75/15 75/16 75/21 76/6 76/17 79/3 80/1 80/16 80/18 80/19 82/18 82/22 83/5 83/8 83/16 83/20 83/22 83/25 84/7 84/13 84/13 84/16 84/16 85/1 85/16 85/18 85/20 86/1 86/12 86/13 86/13 86/14 86/18 86/22 86/23 87/1 87/1 87/3 87/4 87/5 87/5 87/6 87/10 87/19 87/24 87/25 88/5 88/5 88/16 88/24 88/25 89/3 89/18 90/1 90/2 90/3 90/12 90/22 91/1 91/4
washing **[2]** 78/17 80/7
Washington **[1]** 23/19
wasn't **[2]** 89/5 90/14
wasting **[1]** 62/14
way **[31]** 5/24 10/18 12/15 19/16 20/16 21/8 21/14 22/16 36/2 36/22 43/16 46/9 46/10 47/1 52/22 52/24 54/19 58/16 60/25 63/24 65/9 68/17 68/17 68/19 69/3 70/5 87/12 87/12 88/12 88/13 89/9
ways **[2]** 9/19 20/5
we **[127]**
we'd **[7]** 8/13 8/21 48/4 55/8 55/16 55/24 61/18
we'll **[35]** 4/17 7/7 7/23 8/18 9/8 12/18 12/19 16/25 17/2 17/5 17/9 17/11 17/12 17/13 17/13 17/16 17/17 18/22 18/24 19/4 19/17 56/19 61/13 62/23 62/25 63/8 63/9 70/21 70/22 73/2 73/9 73/18 73/24 89/11 92/11
we're **[51]** 7/4 7/5 8/12 8/24 14/4 14/9 15/6 16/2 16/18 17/2 17/4 17/7 21/24 21/25 22/24 23/3 23/12 23/24 27/24 31/2 32/12 32/16 35/19 35/21 35/21 39/13 41/12 41/17 42/21 43/22 44/1 44/2 44/4 45/6 45/9 46/12 53/7 53/8 53/9 53/10 53/13 54/4 56/1 62/6 62/14 70/19 72/19 78/1 91/8 91/25 92/1
we've **[11]** 19/14 19/22 19/22 24/8 24/8 29/17 34/19 34/21 35/17 37/10 42/17
wear **[3]** 43/19 74/1 79/25
wearing **[2]** 42/20 72/15
website **[1]** 76/22
week **[5]** 7/3 19/17 19/18 41/24 41/25
weight **[6]** 66/21 66/21 66/23 68/1 68/4 82/10

**W**

Weiner [3]   17/12 17/13
73/9
weird [1]   60/22
well [28]   7/1 9/19 18/22
19/17 21/19 22/3 22/5 22/8
23/21 28/3 32/9 33/15 35/4
44/6 44/14 44/19 46/4
46/22 54/24 59/22 60/13
60/22 61/18 72/24 73/18
80/11 80/15 86/12
well-respected [1]   80/15
Wendell [1]   19/2
went [4]   6/22 75/23 89/20
89/21
were [39]   8/9 10/10 46/9
47/21 48/14 50/2 50/21
51/10 51/13 53/11 68/4
74/3 74/5 74/6 74/6 75/10
77/13 79/24 80/2 83/5
83/21 83/23 84/8 84/18
85/20 86/24 87/7 87/16
88/21 88/22 89/2 89/10
89/21 90/4 90/9 90/10
90/15 90/23 91/2
weren't [1]   46/5
west [1]   25/2
WESTERN [1]   1/2
what [160]
what's [9]   15/9 22/8 22/22
22/24 23/12 24/2 24/23
29/8 90/16
whatever [7]   10/25 22/23
24/13 25/2 48/4 62/7 62/22
when [24]   4/25 5/15 6/4
6/15 6/17 9/23 10/11 12/15
21/18 22/25 44/3 46/17
46/18 64/14 64/14 65/16
66/10 66/25 81/18 83/23
86/21 87/17 87/20 88/4
Whenever [1]   67/6
where [16]   6/18 6/24 10/22
11/12 21/25 30/4 34/23
37/22 39/18 40/14 41/17
43/22 44/17 75/19 88/21
89/4
whether [20]   6/19 7/2 11/8
23/14 23/25 24/1 24/7
24/10 28/23 30/3 39/3 39/6
40/10 45/10 46/11 63/15
67/22 67/23 78/13 81/6
which [18]   5/9 5/23 7/13
41/21 52/23 55/19 64/19
64/23 66/19 67/14 67/14
71/14 72/10 80/11 81/9
82/23 84/6 88/18
while [6]   67/20 84/25
85/21 85/24 86/15 87/23
whispering [2]   53/8 53/9
who [24]   6/20 18/9 18/11
18/13 18/15 18/23 18/24
19/1 19/3 19/6 19/7 19/9
19/11 42/25 49/11 53/19
53/21 62/3 62/4 68/3 69/13
75/8 80/14 91/14
who's [3]   42/11 42/12
53/21
whoever [1]   91/22
whole [2]   34/4 61/4
whose [2]   19/24 44/2
why [11]   10/11 10/12 10/15

21/24 40/19 46/25 54/13
83/25 87/12 91/12 91/20
wicking [1]   80/3
widespread [1]   78/16
wife [8]   31/20 31/25 31/25
32/12 34/14 41/8 66/7 66/8
will [100]
willing [1]   85/25
Wilshire [1]   39/12
wish [2]   59/14 69/22
withdrawn [1]   87/15
within [2]   84/21 88/24
without [3]   11/10 24/22
88/3
witness [16]   6/18 8/5 8/5
8/7 8/16 10/1 10/21 10/25
11/10 17/20 18/22 66/17
66/17 67/15 67/17 67/18
witness's [7]   67/19 67/20
67/20 67/21 67/23 67/24
67/24
witnesses [30]   6/10 6/13
6/17 6/20 8/9 8/23 10/9
10/11 10/15 16/17 17/2
18/8 19/1 19/15 19/15
19/19 19/23 20/10 58/6
58/8 58/10 64/22 65/6 66/4
68/2 68/4 72/20 72/20
74/15 91/14
won't [2]   62/7 92/6
wooden [2]   62/2 62/4
Woodland [1]   35/9
word [1]   47/22
words [5]   11/9 68/6 87/24
90/6 90/24
work [19]   6/21 12/2 12/3
27/10 27/21 29/7 29/9 29/9
29/14 35/12 39/13 39/14
41/9 43/18 44/24 46/16
46/17 46/18 75/14
worked [3]   34/14 80/9
88/19
workers [3]   82/20 82/21
82/25
working [3]   7/14 7/16
84/15
works [23]   20/24 21/2 25/9
26/8 27/7 28/14 29/12
30/20 30/23 31/18 34/10
34/11 34/12 35/14 37/8
38/3 39/15 41/6 45/11
60/25 76/25 77/3 77/4
works outside [1]   34/11
world [2]   28/5 32/23
worn [1]   82/19
worth [1]   26/13
would [37]   15/14 15/16
20/13 21/8 23/22 25/3
28/19 29/19 32/20 33/7
33/9 33/10 34/20 37/15
38/25 41/24 46/24 47/1
47/9 49/1 49/4 52/3 52/25
58/1 58/17 59/3 69/15 80/6
80/12 82/21 82/24 83/5
83/6 83/8 86/10 90/14 92/4
wouldn't [5]   21/10 21/14
48/9 58/20 85/20
writing [1]   76/14
written [1]   58/23
wrong [4]   24/11 32/25
91/15 91/22

**Y**

Yaneth [1]   14/16
yeah [14]   32/20 34/24 42/3
42/3 42/23 46/19 50/16
50/16 52/4 54/9 54/16 58/3
59/1 59/3
years [6]   48/18 81/1 83/21
84/15 88/19 91/18
yes [53]   8/3 8/19 9/15
14/2 14/3 14/13 20/12
20/22 20/23 24/12 24/16
26/22 27/3 27/9 27/18
27/22 28/9 29/1 29/25 30/2
30/7 30/21 31/6 31/10 32/7
35/15 35/25 36/24 38/10
38/13 39/5 39/8 39/17
40/16 42/23 43/17 44/22
47/8 47/9 47/19 47/19 48/8
48/22 49/8 50/15 51/15
51/18 52/7 52/11 52/13
53/5 58/15 60/9
yet [1]   54/14
York [1]   17/17
you [598]
you'd [15]   14/6 23/22
29/22 32/21 32/21 33/8
33/18 38/11 43/12 47/2
49/3 53/12 59/9 60/2 61/19
you'll [24]   19/8 24/21
30/4 30/4 31/7 61/14 70/15
74/2 77/3 79/2 79/5 79/25
80/9 80/22 81/16 87/14
88/8 88/9 90/7 90/8 90/12
90/17 90/18 91/5
you're [46]   5/3 6/4 7/12
11/13 11/18 11/20 15/6
15/17 20/14 22/1 22/14
25/5 28/1 31/1 32/7 33/10
33/24 35/1 40/18 40/22
41/3 44/20 47/17 52/23
52/23 52/24 58/22 59/13
60/3 60/15 60/18 62/12
62/17 62/18 66/5 69/8 70/2
70/3 76/24 78/4 79/19 80/4
80/14 84/4 84/23 85/12
you've [24]   12/13 15/15
18/8 22/4 27/12 27/24 28/6
31/8 34/19 36/14 39/22
46/9 49/7 49/10 50/19 61/5
61/6 68/21 78/3 78/23 81/5
81/22 91/13 91/14
your [104]
Your Honor [4]   8/20 9/11
56/15 78/10
yours [1]   33/6
yourself [4]   24/5 28/23
31/7 45/20
yourselves [2]   60/19 92/8
Yvette [3]   14/17 29/4
30/10